**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------

|  |  |  |
|---|---|---|
|  | : |  |
| *In re* | : | Chapter 11 |
|  | : | Case No. 15-10573 (SCC) |
| Doral Financial Corporation[1] | | Jointly Administered |
|  | : |  |
| Debtor. | : | **Objection Deadline: October 14, 2015 at 4:00p.m. (ET)** |
|  | : | **Hearing Date:  October 20, 2015 at 10:00a.m. (ET)** |

-------------------------------------------------------------

**FINAL FEE APPLICATION OF CAPSTONE ADVISORY GROUP, LLC, FINANCIAL ADVISOR TO THE OFFICAL COMMITTEE OF UNSECURED CREDITORS OF DORAL FINANCIAL CORPORATION, FOR APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES FOR THE PERIOD MARCH 26, 2015 THROUGH MAY 31, 2015**

| | |
|---|---|
| **Name of Applicant:** | **Capstone Advisory Group, LLC** |
| Authorized to Provide Professional Services to: | The Official Committee of Unsecured Creditors (the "Committee") |
| Date of Retention: | June 16, 2015 *nunc pro tunc* to March 26, 2015 |
| Period for which Compensation and Reimbursement is Sought: | March 26, 2015 through May 31, 2015 (the "Final Fee Period") |
| Actual Amount of Compensation Sought as Actual, Reasonable and Necessary: | $140,235.60 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $1,202.23[2] |
| Total Amount of Final Fees and Expense Reimbursement Sought as Actual, Reasonable and Necessary: | **$141,437.83** |

---

[1] The last four digits of the taxpayer identification number of the Debtor are 2162.

[2] The date listed for expenses contained in Exhibit E does not necessarily reflect the date on which the expense was actually incurred by Applicant.

This is a(n): ____Interim Application _X_ Final Application

This is the first and final fee application filed by Capstone Advisory Group, LLC and its wholly owned subsidiary Capstone Valuation Services, LLC ("Capstone") in this Chapter 11 Case.  No prior applications for reimbursement of fees or expenses have been filed in this Chapter 11 Case.

**Doral Financial Corporation**



# CAPSTONE ADVISORY GROUP, LLC

## Attachment A: Fees By Professional

For the Period 3/26/2015 through 5/31/2015

| Professional | Title | Billing Rate | Hours | Fees |
|---|---|---|---|---|
| C. Kearns | Member | $895.00 | 14.4 | $12,888.00 |
| C. Ringer | Paraprofessional | $120.00 | 20.2 | $2,424.00 |
| J. Blum | Paraprofessional | $120.00 | 1.7 | $204.00 |
| J. Geraghty | Consultant | $250.00 | 2.8 | $700.00 |
| J. Salomon | Member | $825.00 | 35.9 | $29,617.50 |
| J. Surdoval | Executive Director | $675.00 | 185.4 | $125,145.00 |
| M. Haverkamp | Paraprofessional | $120.00 | 6.1 | $732.00 |
| N. Haslun | Managing Director | $640.00 | 5.6 | $3,584.00 |
| **Total** | | | **272.1** | **$175,294.50** |
| **Agreed Upon Discount** | | | | **($35,058.90)** |
| **Total Requested Fees** | | | | **$140,235.60** |
| **Blended Rate** | | | | **$515.38** |

Capstone Advisory Group, LLC

Invoice for the 3/26/2015 - 5/31/2015 Period

**Doral Financial Corporation**

# CAPSTONE ADVISORY GROUP, LLC

## Attachment B: Fees By Task Code

For the Period 3/26/2015 through 5/31/2015



| Task Code | Hours | Fees |
|---|---|---|
| 01. Asset Acquisition/Disposition | 99.8 | $69,590.00 |
| 02. Case Administration | 2.7 | $1,728.50 |
| 05. Professional Retention Fee Application Preparation | 39.2 | $11,151.50 |
| 06. Attend Hearings/Related Activities | 0.3 | $202.50 |
| 07. Interaction/Meetings with Debtors/Counsel | 23.9 | $16,325.00 |
| 08. Interaction/Meetings with Creditors | 25.7 | $19,785.50 |
| 09. Employee Issues/KEIP | 2.1 | $1,417.50 |
| 14. Executory Contracts/Leases | 2.0 | $1,350.00 |
| 18. Operating and Other Reports | 3.0 | $2,166.00 |
| 19. Cash Flow/Cash Management Liquidity | 4.2 | $2,835.00 |
| 20. Projections/Business Plan/Other | 3.4 | $2,295.00 |
| 22. Preference/Avoidance Actions | 0.5 | $412.50 |
| 26. Tax Issues | 20.1 | $16,266.50 |
| 28. Valuation Analysis | 41.7 | $27,001.50 |
| 32. Document Review | 3.5 | $2,767.50 |
| **Total** | **272.1** | **$175,294.50** |
| **Agreed Upon Discount** | | **($35,058.90)** |
| **Total Requested Fees** | | **$140,235.60** |
| **Blended Rate** | | **$515.38** |

Capstone Advisory Group, LLC

Invoice for the 3/26/2015 - 5/31/2015 Period

**Doral Financial Corporation**

# CAPSTONE ADVISORY GROUP, LLC

## Attachment C: Expenses By Category

For the Period 3/26/2015 through 5/31/2015



| Expense Category | Amount |
|---|---|
| 07. Mileage | $51.75 |
| 10. Parking/Tolls | $144.50 |
| 11. Research | $966.63 |
| 13. Telecom | $39.35 |
| **Total Expenses for the Period 3/26/2015 through 5/31/2015** | **$1,202.23** |

Capstone Advisory Group, LLC

Invoice for the 3/26/2015 - 5/31/2015 Period

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | Case No. 15-10573 (SCC) |
| Doral Financial Corporation [1] | | Jointly Administered |
| | : | |
| Debtors | : | |
| | : Objection Deadline:  October 14, 2015 at 4:00p.m. (ET) | |
| | : Hearing Date:  October 20, 2015 at 10:00a.m. (ET) | |

------------------------------------------------------------

**FINAL FEE APPLICATION OF CAPSTONE ADVISORY GROUP, LLC, FINANCIAL ADVISOR TO THE OFFICAL COMMITTEE OF UNSECURED CREDITORS OF DORAL FINANCIAL CORPORATION, FOR APPROVAL AND ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND FOR REIMBURSEMENT OF EXPENSES FOR THE PERIOD MARCH 26, 2015 THROUGH MAY 31, 2015**

Capstone Advisory Group, LLC and its wholly-owned subsidiary Capstone Valuation Services, LLC ("Capstone"), financial advisor for the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of Doral Financial Corporation (the "Debtor"), submits this application (the "Application") pursuant to sections 328(a) 330, and 1103 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2014-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), the Amended Guidelines for Fees and Disbursements for Professionals in the Southern District of New York Bankruptcy Cases, as amended, effective February 5, 2013, as adopted by General Order M-447 (the "Local Guidelines"), the United States Trustee's Guidelines for

---

[1] The last four digits of the taxpayer identification number of the Debtor are 2162.

Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330, effective January 30, 1996 (the "U.S. Trustee Guidelines" and together with the Local Guidelines, the "Guidelines") and the *Order Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals* [Docket No. 072] (the "Administrative Order") seeking the allowance, pursuant to the Administrative Order of, on a final basis, $140,235.60 as compensation for professional services rendered by Capstone to the Committee and $1,202.23 for reimbursement of actual and necessary expenses, for a total of $141,437.83 for the period commencing March 26, 2015 through and including May 31, 2015 (the "Final Fee Period"). In support of the Application, Capstone respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief sought herein are sections 328(a), 330, and 1103(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and 2016(b), and Local Rule 2014-1.

## BACKGROUND

3. On March 11, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Court"). The Debtor continues to manage and operate their business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

4. On March 23, 2015 (the "Formation Date"), the Office of the United States Trustee for the Southern District of New York appointed five of the Debtor's largest unsecured

creditors to serve as members of the Committee. The Committee is presently comprised of the following four members: (i) Eton Park Master Fund, Ltd. (co-chair) (ii) SL Puerto Rico Fund L.P. (co-chair) (iii) Citibank, N.A. and (iv) U.S. Bank, N.A.

5. On the Formation Date, the Committee selected Schulte Roth & Zabel LLP to serve as its lead counsel. Subsequently, on March 26, 2015, the Committee selected Capstone to serve as its financial advisor. On June 16, 2015, this Court entered an order authorizing retention of Capstone as the financial advisor to the Committee, nunc pro tunc to March 26, 2015.

6. Effective as of June 1, 2015, many of the Capstone members and employees, including the Capstone personnel involved in these chapter 11 cases joined Berkeley Research Group, LLC ("BRG"). To ensure continuity of representation, the Committee has requested that BRG substitute for Capstone as their financial advisors in these chapter 11 cases, effective as of June 1, 2015 (Dkt. No.207). On July 23, 2015, the Court approved this substitution, and required Capstone to file a final fee application for services rendered through May 31, 2015 (Dkt. No.258).

### FEE PROCEDURES ORDER

7. On April 1, 2015, this Court signed the Administrative Fee Order. Pursuant to the Administrative Fee Order, on or before the thirtieth (30th) day of each month, (the "Fee Filing Period"), following the month for which compensation and reimbursement is sought (the "Compensation Period"), each Professional seeking compensation under the Order (each a "Retained Professional") will serve a monthly fee statement (a "Monthly Statement") pursuant to sections 330 and 331 of the Bankruptcy Code for interim approval and allowance of compensation for services rendered and reimbursement of expenses during the Compensation Period. Each Notice Party shall have fifteen (15) days after receipt of the Monthly Statement to

review such statement (the "Review Period") and, in the event that the Notice Party has an objection, the Notice Party shall, by no later than the later of the last day of the Review Period and the forty-fifth (45) day following the last day of the month for which compensation is sought (the "Objection Deadline"), serve upon the Retained Professional whose statement is objected to and the other Notices Parties, a written "Notice of Objection to Fee Statement" setting forth the nature of the objection and the specific amount of fees and expenses in dispute.  At the expiration of the Objection Deadline, the Debtor shall promptly pay, (i) eighty percent (80%) of the undisputed fees and (ii) one hundred percent (100%) of the undisputed expenses identified in each Monthly Statement to which no objection has been served.

## SUMMARY OF SERVICES RENDERED

8. Capstone is a financial advisory firm specializing in insolvency, restructuring, valuation, forensic accounting and related matters.  Since being retained by the Committee, Capstone has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtor's estate.  Capstone respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of this case.

9. Capstone submits that the final fees applied for herein for professional services rendered in performing services for the Committee in this proceeding are fair and reasonable in view of the time spent, the extent of work performed, the nature of the Debtor's capitalization structure and financial condition, the Debtor's financial accounting resources and the results obtained.  Capstone's fees typically are based on the actual hours charged at Capstone's standard hourly rates, which are in effect when the services are rendered.  As discussed and agreed to with the Committee, for purposes of this engagement, Capstone has

agreed to a 20% discount off of Capstone's customary standard hourly rates in effect when services are performed by the Capstone professionals and paraprofessionals who provide services to the Committee.

10. Capstone expended an aggregate of 272.10 hours, substantially all of which was expended by the professional staff of Capstone. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task. The staff utilized sought to optimize efficiencies and avoid redundant efforts. The staff of the Debtors or their advisors has been utilized where practical and prudent.

11. Capstone's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost. In addition, Capstone's per diem rates for professionals of comparable experience, before the 20% discount Capstone agreed to in this proceeding, are 10% to 20% lower than its competitors, the "Big-Four" accounting firms and certain other nationally-recognized specialty firms. Capstone believes that the compensation in this Application is based on the customary compensation charged by comparably skilled professionals in cases other than cases under Title 11.

12. Because Capstone's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum. Additionally, because of the experience of Capstone's professionals, in many instances only three or fewer Capstone representatives attended meetings, hearings, or conference calls or performed specific functions.

13. Capstone believes that there has been no duplication of services between Capstone and any other consultants or accountants to the bankruptcy estates.

14. Capstone's travel time policy is for professional personnel to travel outside of business hours when possible. Such time is not charged to a client unless productive work is

performed during the travel period.  In this engagement, non-productive travel time is not being charged to the Debtors.

15.    No agreement or understanding exists between Capstone and any other person for the sharing of compensation received or to be received for services rendered in connection with the chapter 11 cases, except for internal agreements among members and employees of Capstone regarding the sharing of revenue or compensation.  Neither Capstone nor any of its members or employees has entered into an agreement or understanding to share compensation with any entity as described in Bankruptcy Rule 2016.

16.    The general summary of the services rendered by Capstone during the Fee Period based on tasks and number of hours is set forth below.

### Asset Acquisition/Disposition – Task Code 01

17.    This task code relates primarily to Capstone's preparation of analysis and negotiations related to disposition of assets including (i) pre-petition asset sale escrow accounts, (ii) Fannie Mae recourse portfolio and escrow, (iii) sale and auction of Doral Insurance Agency, (iv) owned mortgage loans, and (v) owned real estate.  In order to ensure that there was an efficient process and avoid redundancy of work, the Debtor and Capstone divided the lead responsibilities for the disposition of assets.  Capstone and Committee counsel took the lead as it related to asset sale escrows and Fannie Mae portfolio and escrow and provided supporting role related to Doral Insurance agency, owned mortgages and owned real estate.

18.    Capstone expended 99.80 hours on this category for a fee of $69,590.00.

### Case Administration – Task Code 02

19.    This task code relates primarily to Capstone's case administrative matters related to (i) various assets of the debtor, (ii) correspondence with debtor professionals on administrative matters, and (iii) discussions with Committee counsel on administrative matters.

20.  Capstone has expended 2.70 hours on this category for a fee of $1,728.50.

**Professional Retention Fee Application Preparation – Task Code 05**

21.  This task code relates primarily to Capstone's preparation of retention documents and Final Fee Application documents for the period March 26th to May 31, 2015 with associated detailed time records.

22.  Capstone expended 39.20 hours on this category for a fee of $11,151.50.

**Attend Hearings/Related Activities – Task Code 06**

23.  This task code principally related to telephonic attendance to bankruptcy court hearing establishing bid procedures for sale of Doral Insurance Agency.

24.  Capstone expended 0.30 hours on this category for a fee of $202.50.

**Interactions/Meetings with Debtors/Counsel – Task Code 07**

25.  This task code relates to time spent by Capstone participation in meetings with the Debtor, its advisors and Committee counsel regarding (i) asset sales, (ii) cased administration, (iii) tax matters, (iv) debtor budgets, (v) employee issues and staffing, and (vi) weekly cash flow reporting.  As discussed previously, in order to ensure efficient management of this Chapter 11 case, the Debtor and Committee advisors allocated lead responsibilities for analysis and disposition of certain assets with other parties providing supporting roles. Accordingly, this process necessitated coordination between the parties.

26.  Capstone expended 23.90 hours on this category for a fee of $16,325.00.

**Interaction/Meetings with Creditors – Task Code 08**

27.  This task code principally relates to Committee matters, Meetings, inquiry and responses with (i) the Committee as a whole and with individual Committee members, (ii) Committee counsel Schulte Roth & Zabel LLP, and (iii) other creditors. Capstone participated in regularly scheduled Meetings with Committee counsel and the full Committee to apprise all on

developments in the Chapter 11 Case, including discussions related to issues needed to be resolved to finalize a plan, disposition of assets, the Plan, and discussions to facilitate efficient administration of this Chapter 11 Case.  In preparation for these Meetings, Capstone reviewed pending matters to be discussed, as well as reviewed and reported on underlying documentation in connection therewith.  Capstone also attended Meetings with subsets of the Committee to discuss the status of case matters on a regular basis.  Also, as included herein, Capstone worked closely with counsel to the Committee in developing strategies for various case matters necessary to ensure enhanced creditor recoveries for creditors.  Additionally, Capstone, working with Committee counsel and other case professionals, assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in these Chapter 11 Cases and to closely monitor the Debtor's management of this proceeding.

28.    Capstone expended 25.70 hours on this category for a fee of $19,785.50.

**Employee Issues/KEIP – Task Code 09**

29.    This task code relates to time spent by Capstone preparing or assisting Committee counsel in evaluating employee related matters including (i) Debtor staffing requests, (ii) proposed retention payments, and (iii) provision for continuation of health care costs for employees.

30.    Capstone expended 2.10 hours on this category for a fee of $1,417.50.

**Executory Contracts/Leases – Task Code 14**

31.    This task code relates to time expended analyzing the Debtor's lease rejection motion and review of lease agreements.

32.    Capstone expended 2.00 hours on this category for a fee of $1,350.00.

**Operating and Other Reports – Task Code 18**

33.    This task code relates to time spent reviewing and providing comments to Debtor regarding its statement of financial affairs report.

34.    Capstone expended 3.00 hours on this category for a fee of $2,166.00.

**Cash Flow/Cash Management Liquidity – Task Code 19**

35.    This task code relates to time spent by Capstone's review and analysis of Debtor's weekly cash flow reporting with comparisons to budget.  Capstone kept the Committee apprised of the Debtor's performance related to cash management and adherence to budgets to preserve assets of the estate.

36.    Capstone expended 4.20 hours on this category for a fee of $2,835.00.

**Projections/Business Plan/Other – Task Code 20**

37.    This task code relates to time spent by regarding preparation of proposed budgets for Committee approval.

38.    Capstone expended 3.40 hours on this category for a fee of $2,295.00.

**Preference/Avoidance Actions – Task Code 22**

39.    This task code relates to time spent by Capstone in preliminary discussions with Committee and Debtor Counsel related to potential cause of action for the Debtor and division of responsibilities to avoid overlap of effort.

40.    Capstone has expended 0.50 hours on this category for a fee of $412.50.

**Tax Issues – Task Code 26**

41.    This task code relates to time spent by Capstone regarding (i) examination and analysis of Debtor's tax attributes, (ii) identification and interviews of potential tax experts, (iii) review of historical tax documents and closing agreements with the Puerto Rican tax authorities, and (iv) development of potential tax strategies to monetize tax attributes.  In order to

ensure efficient use of Debtor's assets and resources, it was agreed with the Debtor that the Committee's professionals would take lead responsibility related to the tax assets with Debtor's professionals and company personnel providing supporting role.

42. Capstone has expended 20.10 hours on this category for a fee of $16,266.50.

**Valuation Analysis – Task Code 28**

43. This task code relates to time spent by Capstone related to analysis of historical data regarding the Fannie Mae recourse loan portfolio. Analyses included creation of sortable access files taking disparate information received from the Debtor, its advisors and Fannie Mae to develop working file encompassing all of the loan data and respective attributes.

44. Capstone has expended 41.70 hours on this category for a fee of $27,001.50.

**Document Review – Task Code 32**

45. This task code relates to time spent by Capstone related to (i) review and analysis of the Debtor's D&O insurance policy and coverage limits and (ii) review of draft claim analysis.

46. Capstone has expended 3.50 hours on this category for a fee of $2,767.50.

**ACTUAL AND NECESSARY EXPENSES**

47. Capstone incurred $1,202.23 in out-of-pocket expenses. Capstone submits that such expenses were reasonable and were necessary to discharge its services and were in conformity with the Local Guidelines, and Capstone respectfully requests reimbursement in full.

48. The disbursements and expenses were incurred in accordance with Capstone's normal practice of charging clients for expenses clearly related to and required by particular matters.

49. Capstone's billing rates do not include charges for photocopying, telephone and telecopier charges, computerized research, travel expenses, non-professional and

paraprofessional overtime, postage and certain other office services, because Capstone charges each of its clients only for the costs actually incurred related to performing services for such client. Capstone has endeavored to minimize these expenses to the fullest extent possible and does not consider such charges to constitute "overhead".

50. Telephone charges relate to amounts incurred for specifically identifiable international phone charges as well as multiple party conference call charges incurred with respect to the Debtor's cases. There are no overhead charges included in any of Capstone's billed telecommunication expenses.

51. In providing a reimbursable service such as copying or telephone, Capstone does not make a profit on that service. In charging for a particular service, Capstone does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay. In seeking reimbursement for a service, which Capstone justifiably purchased or contracted for from a third party, Capstone requests reimbursement only for the amount billed to Capstone by such third party vendor and paid by Capstone to that vendor.

52. Capstone's policy with respect to word processing and document preparation and handling services provided by Capstone employees is to bill clients by the hour for such time, but only if the employees' time is clearly and exclusively devoted to work performed for that particular client, such as for the preparation, collation and binding of a report for a client. Such services are billed to the Debtors at a rate commensurate with that which would be charged by a third party provider such as a temporary employment agency.

53. As per the Guidelines and the Capstone Retention Order, Capstone has not requested reimbursement of expenses related to overhead charges, such as secretarial services.

54.   Capstone has adhered to allowable rates for expenses as fixed by the Local Guidelines.

55.   Capstone has made every effort to minimize its expenses in this case.  The actual expenses incurred in providing professional services were necessary, reasonable, and tailored to serve the specific needs of the Committee.

## AFFIDAVIT

56.   As required by the Guidelines, an affidavit that the facts set forth in this Application are true and correct, and that this Application complies substantially with the Guidelines, is attached hereto as **Exhibit A** and made part of this Application.

## COMPLIANCE WITH GUIDELINES

57.   Capstone believes that this Application substantially complies with the Guidelines.  To the extent there has not been exact compliance with any particular rule or guideline, Capstone respectfully requests a waiver or an opportunity to cure.

58.   With respect to amounts sought herein pursuant to sections 330 and 331 of the Bankruptcy Code for allowance of fees and reimbursement of expenses during the Final Fee Period, Capstone has made no prior or other application to this or any other Court for the relief requested herein.

**WHEREFORE**, the Applicant respectfully requests that this Court enter an order (i) granting on a final basis, pursuant to the Administrative Order, $140,235.60 as compensation for professional services rendered to and on behalf of the Committee, and $1,202.23 for reimbursement of actual and necessary expenses, for a total of $141,437.83 for the Final Period, (ii) that the Debtors be authorized and directed to immediately pay to Capstone the amount of $141,437.83 which is equal to the sum of 100% of Capstone's fees (after the 20% discount) and 100% of Capstone's expenses incurred during the Final Fee Period and (iii) granting such other further relief as the Court may deem just and proper.

Date: September 9, 2015                    Capstone Advisory Group, LLC


By:      /s/ Christopher J. Kearns
         Capstone Advisory Group, LLC
         104 West 40th Street, 16th Floor
         New York, NY 10018
         212-782-1400

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------

X

                                               :   Chapter 11

In re:                                   :

                                               :   Case No. 15-10573 (SCC)

Doral Financial Corporation,          :

                                             :

                       Debtor.        :

                                             :

                                             :

----------------------------------------------------------------

X

**AFFIDAVIT PURSUANT TO SECTION 504**
**OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2016**

STATE OF NEW YORK         )

                                 ) SS:

COUNTY OF NEW YORK     )

     Christopher J. Kearns being duly sworn, deposes and says:

     1.  At the time these services were performed, I was a Member of Capstone Advisory Group, LLC ("Capstone"), a professional services firm engaged in the business of providing financial advisory services located at 104 West 40th Street, 16th Floor, New York, NY 10018.

     2.  This affidavit is submitted in support of the foregoing Final Application for Allowance of Compensation and Reimbursement of Expenses Incurred for the Period March 26, 2015 through May 31, 2015 (the "Application") as financial advisor to the Official Committee of Unsecured Creditors ("Committee") appointed in the chapter 11 case of Doral Financial Corporation.

     3.  I have personally performed or supervised many of the services rendered by Capstone and am thoroughly familiar with all other services performed on behalf of the Committee by the professionals and paraprofessionals in my firm.

1

15-10573-jpm    Doc 293    Filed 09/11/15    Entered 09/11/15 15:43:46    Main Document
Pg 20 of 42

4.      The facts contained in the Application are true and correct to the best of my knowledge, information and belief.

5.      The fees and disbursements requested in the Application are in accordance with practices customarily employed by Capstone and generally accepted by Capstone's clients.

6.      To the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the guidelines set forth in the Bankruptcy Code, Bankruptcy Rules, Local Rules and Fee Guidelines.

7.      No agreement or understanding exists between Capstone and any other person or persons or parties to share in any compensation received in connection with this case except as with respect to the terms of membership agreements with members of Capstone.

8.      To the best of my knowledge, information and belief, the Application substantially complies with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Fee Guidelines.

By:  /s/ Christopher J. Kearns

Sworn to before me on
this 9 day of September, 2015

By:    /s/ Michelle Lutowski
        Notary Public of Morris County
        Commission Expires
        March 25, 2016

**Doral Financial Corporation**

# CAPSTONE ADVISORY GROUP, LLC

## Exhibit B: Time Detail

### For the Period 3/26/2015 through 5/31/2015



| Date | Professional | Hours | Description |
| --- | --- | --- | --- |
| **01. Asset Acquisition/Disposition** | | | |
| 3/27/2015 | J. Surdoval | 1.6 | Reviewed draft of the APA for the sale of the Debtor's Insurance agency business. |
| 3/27/2015 | J. Surdoval | 0.4 | Reviewed draft of the Insurance business sale Bidding Procedure Motion. |
| 3/27/2015 | J. Surdoval | 0.3 | Reviewed documents related to valuation, and alternatives, for Insurance business. |
| 3/30/2015 | J. Surdoval | 0.5 | Read and terms of the Debtor's 3rd Amendment to Fannie Mae Collateral Agreement. |
| 3/30/2015 | C. Kearns | 0.2 | Reviewed work plan related to insurance sale. |
| 3/31/2015 | J. Surdoval | 1.5 | Read terms of the Debtor's 2006 original pledge agreement for the Fannie Mae Collateral. |
| 3/31/2015 | J. Surdoval | 1.3 | Read terms of the Debtor's 1st amendment to pledge agreement for the Fannie Mae Collateral |
| 3/31/2015 | J. Surdoval | 0.8 | Read terms of the Debtor's 2nd amendment to pledge agreement for the Fannie Mae Collateral. |
| 3/31/2015 | J. Surdoval | 0.8 | Reviewed supporting master purchase agreements provided by the Debtor incorporated into the 2006 Original Pledge agreement with Fannie Mae. |
| 3/31/2015 | J. Surdoval | 0.6 | Read terms of the Debtor's 3rd amendment to pledge agreement for the Fannie Mae Collateral. |
| 4/1/2015 | J. Surdoval | 0.8 | Commenced review of Report prepared for DFC and Doral Bank by KPMG |
| 4/1/2015 | C. Kearns | 0.5 | Participated in portion of call with Debtor's advisors to discuss critical work streams. |
| 4/1/2015 | C. Kearns | 0.2 | Read status memo from Counsel in regards to Fannie Mae and insurance issues. |
| 4/2/2015 | J. Surdoval | 0.2 | Prepared outline of issues related to FNMA collateral. |
| 4/3/2015 | J. Surdoval | 0.8 | Commenced review of analysis on FNMA exposure. |

Capstone Advisory Group, LLC

Invoice for the 3/26/2015 - 5/31/2015 Period

| Date | Professional | Hours | Description |
|------|-------------|-------|-------------|
| **01. Asset Acquisition/Disposition** | | | |
| 4/6/2015 | J. Surdoval | 1.5 | Reviewed the KPMG report to develop questions related to the report. |
| 4/6/2015 | J. Salomon | 1.4 | Reviewed Doral Insurance Agency tax returns. |
| 4/6/2015 | J. Surdoval | 1.0 | Reviewed the Doral July Report on loan loss exposure to develop questions related to the report. |
| 4/7/2015 | C. Kearns | 0.5 | Reviewed the Debtor documents related to FNMA escrow account and Capstone draft analysis. |
| 4/7/2015 | J. Surdoval | 0.3 | Prepared e-mail plan out questions and discussion items for KPMG call. |
| 4/8/2015 | J. Surdoval | 0.8 | Reviewed TPG 1.0 asset sale Disbursement agreements (Residential Title Escrow). |
| 4/8/2015 | J. Surdoval | 0.7 | Reviewed First Bank-Doral Escrow Agreement and Citi Special Account Agreement related to Debtor escrow assets. |
| 4/8/2015 | J. Surdoval | 0.6 | Participated in call with B. Pfeiffer (Schulte Roth), C. Flaton (Zolfo Cooper) and A. Bastone (Debtor) to discuss escrow agreements with TPG and First Bank. |
| 4/8/2015 | J. Surdoval | 0.5 | Participated in call with B. Pfeiffer (Schulte) re: update on tasks performed and discussion on next steps including employee needs and Fannie Mae collateral. |
| 4/8/2015 | J. Surdoval | 0.3 | Reviewed bidding procedures motion and order for hearing on April 9th. |
| 4/8/2015 | J. Surdoval | 0.3 | Reviewed TPG 1.0 asset sale Disbursement agreements (Missing Documents Escrow). |
| 4/9/2015 | J. Surdoval | 0.9 | Reviewed TPG 2.0 asset sale Disbursement agreements (Master Escrow) re: Debtor escrow assets.. |
| 4/9/2015 | J. Surdoval | 0.3 | Reviewed TPG 1.0 asset sale Disbursement agreements (CRE Escrow) re: Debtor escrow assets.. |
| 4/9/2015 | J. Surdoval | 0.3 | Reviewed TPG 1.0 asset sale Disbursement agreements (Residential Tax Escrow) re: Debtor escrow assets. |
| 4/9/2015 | J. Surdoval | 0.3 | Reviewed TPG 1.0 asset sale Disbursement agreements (Residential Tax Escrow) re: Debtor escrow assets. |
| 4/9/2015 | J. Surdoval | 0.3 | Reviewed TPG 2.0 asset sale Disbursement agreements (Commercial Title Escrow) re: Debtor escrow assets. |
| 4/9/2015 | J. Surdoval | 0.3 | Reviewed TPG 2.0 asset sale Disbursement agreements (Residential Title Escrow) re: Debtor escrow assets. |

| Date | Professional | Hours | Description |
|---|---|---|---|
| **01. Asset Acquisition/Disposition** | | | |
| 4/9/2015 | J. Surdoval | 0.2 | Reviewed TPG 2.0 asset sale Disbursement agreements (Commercial Tax escrow) re: Debtor escrow assets. |
| 4/9/2015 | J. Surdoval | 0.2 | Reviewed TPG 2.0 asset sale Disbursement agreements (Residential Tax Escrow) re: Debtor escrow assets. |
| 4/10/2015 | J. Surdoval | 1.8 | Reviewed First Bank May 2014 Purchase Agreement re: Debtor escrow assets. |
| 4/10/2015 | J. Surdoval | 1.2 | Commenced review of Proposed Settlement re: escrow. |
| 4/10/2015 | J. Surdoval | 1.0 | Reviewed Debtor prepared Escrow Loan Recap summaries re: Debtor escrow assets. |
| 4/10/2015 | J. Surdoval | 0.9 | Drafted email with follow-up questions re: recent review of details related to claim on First Bank Escrow. |
| 4/10/2015 | C. Kearns | 0.2 | Reviewed status of FNMA and proposed employee staffing. |
| 4/13/2015 | J. Surdoval | 1.2 | Reviewed the Proposed Settlement re: Debtor escrow assets. |
| 4/13/2015 | J. Surdoval | 0.8 | Reviewed  Reconciliations of Escrows prepared by Debtor re: Debtor escrow assets. |
| 4/13/2015 | J. Surdoval | 0.4 | Reviewed September 29, 2014 Side Letter (Abbey 1.0) re: Debtor escrow assets. |
| 4/13/2015 | J. Surdoval | 0.3 | Reviewed  the July 18, 2014 Side Letter (Abbey 1.0) re: Debtor escrow assets. |
| 4/13/2015 | J. Surdoval | 0.3 | Reviewed the July 13, 2014 Side Letter (Abbey 1.0) re: Debtor escrow assets. |
| 4/13/2015 | J. Surdoval | 0.2 | Reviewed  Abbey 2.0 Commercial Tax Escrow re: Debtor escrow assets. |
| 4/13/2015 | J. Surdoval | 0.2 | Reviewed Abbey 2.0 Commercial Title Escrow re: Debtor escrow assets. |
| 4/14/2015 | J. Surdoval | 0.5 | Participated in meeting with S. Martinez (Zolfo Cooper) and A. Bastone (Doral Financial Corporation) to discuss TPG proposed claim file. |
| 4/15/2015 | J. Surdoval | 0.3 | Participated in call with B. Pfeiffer (Schulte Roth) related to issues re: Fannie Mae TPG Escrow and First Bank Escrow. |
| 4/16/2015 | J. Surdoval | 0.3 | Participated in call with T. Kim (Schulte Roth) to discuss Capstone prepared analysis of recourse loan exposure. |

| Date | Professional | Hours | Description |
|---|---|---|---|
| **01. Asset Acquisition/Disposition** | | | |
| 4/17/2015 | J. Surdoval | 0.7 | Participated in call with D. Hooston (Doral Financial Corporation) and D. Cauley (Zolfo Cooper) re: analysis prepared on FNMA recourse portfolio. |
| 4/20/2015 | J. Surdoval | 0.5 | Reviewed Doral Financial Corporation Fannie Mae master contract analysis. |
| 4/20/2015 | J. Surdoval | 0.3 | Commenced initial review of Insurance agency documents in data room related to upcoming 363 auction. |
| 4/20/2015 | J. Surdoval | 0.3 | Reviewed updated Insurance agency sale process documents provided by the Debtor. |
| 4/20/2015 | J. Surdoval | 0.1 | Drafted e-mail to TPG requesting meeting and outlining open issues re: resolution of escrow accounts. |
| 4/21/2015 | J. Surdoval | 1.1 | Reviewed Doral Insurance data room documents for Auction in order to prepare questions on certain information in data room from Debtor. |
| 4/21/2015 | J. Surdoval | 0.7 | Reviewed TPG Abbey 1.0  purchase agreements and relevant provisions. |
| 4/21/2015 | J. Surdoval | 0.2 | Participated in call with  N. Harbacek (TPG) to discuss escrow account balances, TPG claim analysis and schedule initial meeting. |
| 4/22/2015 | J. Surdoval | 0.8 | Participated in conference call with representatives from TPG, Davis Polk, Dentons, Rushmore, Zolfo Cooper, Debtor and Ropes & Gray to discuss claim analysis related to escrow account prepared by TPG. |
| 4/22/2015 | J. Surdoval | 0.6 | Reviewed TPG  Abbey 2.0 purchase agreements and relevant provisions. |
| 4/23/2015 | J. Surdoval | 0.5 | Participated in call with S. Martinez (Zolfo Cooper) and A. Bastone (Debtor) to follow-up on issues raised in call with TPG escrow accounts. |
| 4/23/2015 | J. Salomon | 0.4 | Participated in conference call with Banco Popular, Zolfo Cooper; Schulte Roth and Ropes & Gray re: potential sale of insurance business. |
| 4/23/2015 | J. Surdoval | 0.2 | Participated in call with R. Bloch (Zolfo Cooper) re: update on insurance sale. |
| 4/23/2015 | C. Kearns | 0.2 | Reviewed status of FNMA analysis and current company budget for staff. |
| 4/24/2015 | J. Surdoval | 1.1 | Participated in call with D. Hooston (Doral Financial Corporation) and D. Cauley (Zolfo Cooper) re: analysis prepared on Fannie Mae recourse portfolio. |
| 4/27/2015 | J. Surdoval | 0.3 | Participated in call with C. Flaton (Zolfo Cooper) to discuss asset sales, employees, FNMA collateral and issues relating to data. |

Capstone Advisory Group, LLC

Invoice for the 3/26/2015 - 5/31/2015 Period

| Date | Professional | Hours | Description |
|------|--------------|-------|-------------|
| **01. Asset Acquisition/Disposition** | | | |
| 4/29/2015 | C. Kearns | 0.8 | Participated in call with UCC counsel, Schulte, and discussed FNMA analysis and Debtor's current budget. |
| 4/29/2015 | C. Kearns | 0.5 | Reviewed detail analysis of FNMA escrow and underlying potential exposure. |
| 4/30/2015 | J. Surdoval | 2.9 | Reviewed TPG Abbey 1.0 and 2.0 information received from FDIC. |
| 4/30/2015 | J. Surdoval | 1.1 | Continued reviewing TPG Abbey 1.0 and 2.0 information received from FDIC. |
| 5/1/2015 | J. Surdoval | 2.9 | Reviewed TPG Abbey 1.0 and 2.0 information received from FDIC. |
| 5/1/2015 | J. Surdoval | 1.2 | Performed reconciliation of variance between Company and FDIC starting TPG escrow account balances. |
| 5/1/2015 | C. Kearns | 0.8 | Participated in call with Committee re: FNMA and related issues. |
| 5/4/2015 | J. Surdoval | 2.5 | Prepared analysis of roll-forward for all receipts and disbursements for TPG escrow accounts. |
| 5/4/2015 | J. Surdoval | 0.9 | Compared TPG escrow account disbursements to cash records of Debtor. |
| 5/5/2015 | J. Surdoval | 2.4 | Commenced review of Debtor analysis of status of loan remediations. |
| 5/5/2015 | J. Surdoval | 1.1 | Prepared analysis of TPG claims. |
| 5/5/2015 | J. Surdoval | 0.5 | Participated in conference call with S. Martinez (Zolfo Cooper) and A. Bastone (Doral Financial Corporation) re: TPG escrow accounts. |
| 5/6/2015 | J. Salomon | 1.3 | Compared Popular Insurance bid for Doral Insurance Agency, LLC to stalking horse bid for 363 auction. |
| 5/6/2015 | J. Surdoval | 0.4 | Drafted questions related to TPG. |
| 5/7/2015 | J. Surdoval | 1.3 | Reviewed Debtor analysis comparing bids for Doral Insurance agency. |
| 5/7/2015 | J. Surdoval | 0.9 | Participated in conference call with Schulte Roth, Zolfo Cooper and Ropes & Gray related to status of Doral Insurance Agency bids. |
| 5/7/2015 | J. Surdoval | 0.5 | Participated in call with B. Pfeiffer and T. Kim (Schulte Roth) and C. Flaton (Zolfo Cooper) to discuss bids. |
| 5/7/2015 | J. Surdoval | 0.5 | Participated in conference call with A. Greenberg and J. Henkes (FDIC), S Martinez (Zolfo Cooper) and A. Bastone (Doral Financial Corporation) re: TPG claims on Escrow accounts. |
| 5/7/2015 | J. Surdoval | 0.5 | Participated in conference call with J. Sturm (Ropes & Gray) re: TPG escrow accounts issues and process to settle escrow accounts. |

| Date | Professional | Hours | Description |
|---|---|---|---|
| **01. Asset Acquisition/Disposition** | | | |
| 5/7/2015 | C. Kearns | 0.1 | Read email from Counsel re: qualifying bids. |
| 5/8/2015 | J. Surdoval | 2.6 | Reviewed Debtor analysis of bid comparisons for Doral insurance bid from Banco Popular purchase agreement |
| 5/8/2015 | J. Surdoval | 0.5 | Conducted correspondence with TPG related to escrow accounts and coordinating meeting for following week. |
| 5/8/2015 | J. Surdoval | 0.5 | Participated in conference call with S. Martinez (Zolfo Cooper) and A. Bastone (Doral Financial Corporation) re: TPG escrow accounts. |
| 5/8/2015 | J. Surdoval | 0.5 | Participated in conference call with S. Martinez (Zolfo Cooper) to discuss Doral properties and retention of property marketer and manager. |
| 5/8/2015 | J. Surdoval | 0.3 | Participated in call with Schulte Roth in relation to the process of release of escrow accounts. |
| 5/11/2015 | J. Surdoval | 1.1 | Reviewed updated Debtor analysis on comparison of Doral Insurance bids and correspondence related to items requiring further clarification. |
| 5/11/2015 | C. Kearns | 0.5 | Participated in call with Zolfo Cooper and Schulte Roth, to discuss qualifying bids and next steps. |
| 5/11/2015 | J. Surdoval | 0.5 | Participated in conference call with TPG, Zolfo Cooper, Doral Financial Corporation and Ropes and Gray related to TPG escrow accounts. |
| 5/11/2015 | J. Surdoval | 0.3 | Prepared agenda and list of items to discuss with TPG related to their claims on escrow accounts. |
| 5/11/2015 | C. Kearns | 0.3 | Reviewed comparative analysis of bids. |
| 5/11/2015 | C. Kearns | 0.2 | Reviewed email correspondence with Counsel re: upcoming auctions. |
| 5/12/2015 | C. Kearns | 2.9 | Attended 363 auction on insurance business. |
| 5/12/2015 | J. Surdoval | 2.9 | Participated in auction for Doral Insurance agency and follow-up. |
| 5/12/2015 | J. Surdoval | 1.0 | Continued participation in auction for Doral Insurance agency. |
| 5/12/2015 | C. Kearns | 0.1 | Continued attending 363 auction on insurance business. |
| 5/13/2015 | J. Surdoval | 1.3 | Reviewed Fannie Mae loan recourse analysis. |
| 5/14/2015 | J. Surdoval | 1.0 | Prepared updated analysis on Fannie Mae loan exposure for review by Fannie Mae employees. |
| 5/14/2015 | J. Surdoval | 0.5 | Participated in conference call with Schulte Roth, Zolfo Cooper and Fannie Mae in relation to loan recourse escrow and collateral. |

| Date | Professional | Hours | Description |
|---|---|---|---|
| **01. Asset Acquisition/Disposition** | | | |
| 5/14/2015 | J. Surdoval | 0.4 | Corresponded with Debtor related to TPG escrow, inquiry from FDIC re: escrow release. |
| 5/15/2015 | J. Surdoval | 1.3 | Updated analysis on Fannie Mae loan exposure for review by Fannie Mae employees. |
| 5/15/2015 | J. Surdoval | 1.2 | Reviewed analysis of loan defects related to TPG escrow. |
| 5/15/2015 | J. Surdoval | 0.4 | Participated in call with J. Sturn (Ropes & Gray) related to TPG escrow accounts. |
| 5/15/2015 | J. Surdoval | 0.3 | Corresponded with TPG related to the escrow accounts. |
| 5/20/2015 | J. Surdoval | 1.8 | Commenced review of Debtor analysis of interest only strips. |
| 5/20/2015 | J. Surdoval | 1.6 | Commenced review of Debtor analysis of OREO loans. |
| 5/21/2015 | J. Surdoval | 1.5 | Analyzed insert interest only strip file. |
| 5/22/2015 | J. Surdoval | 1.6 | Reviewed Debtor OREO analysis. |
| 5/26/2015 | J. Surdoval | 2.6 | Reviewed revised TPG claims analysis and escrow account balances. |
| 5/26/2015 | J. Surdoval | 0.4 | Participated in conference call with S. Martinez (Zolfo Cooper) and A. Bastone (Doral Financial Corporation) re: revised TPG claims analysis received. |
| 5/27/2015 | J. Surdoval | 2.3 | Reviewed updated schedule from FDIC re: escrow releases from TPG escrow accounts. |
| 5/27/2015 | J. Surdoval | 1.3 | Updated analysis on TPG claims and escrow account balances. |
| 5/27/2015 | J. Surdoval | 0.5 | Participated in conference call with S. Martinez (Zolfo Cooper) re: TPG escrow. |
| 5/27/2015 | J. Surdoval | 0.4 | Participated in conference call with S. Martinez (Zolfo Cooper), A. Bastone (Doral Financial Corporation) and FDIC re: TPG escrow. |
| 5/28/2015 | J. Surdoval | 2.4 | Prepared updated analysis of Doral Financial Corporation and FDIC re: TPG escrow accounts. |
| 5/28/2015 | J. Surdoval | 0.9 | Revised Debtor provided analysis related to First Bank escrow account. |
| *Task Code Total Hours* | | *99.8* | |
| **02. Case Administration** | | | |
| 3/27/2015 | J. Surdoval | 0.3 | Participated in call with B. Pfeiffer (Schulte Roth) re: documents requests and establishing initial call with Debtor advisor re: the estate. |

| Date | Professional | Hours | Description |
|---|---|---|---|
| **02. Case Administration** | | | |
| 3/30/2015 | N. Haslun | 1.1 | Updated Capstone's work plan. |
| 4/1/2015 | J. Blum | 0.1 | Ran a partial list of names through the conflict check system. |
| 4/20/2015 | J. Surdoval | 0.2 | Prepared responses to various correspondence items from the Debtor's related to insurance and employees. |
| 4/20/2015 | J. Surdoval | 0.1 | Participated in call with B. Pfeiffer (Schulte Roth) re: tax attributes and budgets. |
| 4/21/2015 | J. Surdoval | 0.3 | Prepared update to actual cost analysis versus budget for UCC work through 4/17/15. |
| 4/23/2015 | J. Surdoval | 0.6 | Participated in call with B. Pfeiffer, T. Kim and N. Begley (Schulte Roth) to discuss case matters including fraudulent transfers and employee budget, TPG escrow and Fannie Mae status. |
| ***Task Code Total Hours*** | | **2.7** | |
| **05. Professional Retention Fee Application Preparation** | | | |
| 3/27/2015 | M. Haverkamp | 2.0 | Processed parties-in-interest through the conflict check system. |
| 3/27/2015 | J. Blum | 0.7 | Ran list of parties provided by professionals through conflict check system. |
| 3/27/2015 | J. Surdoval | 0.3 | Prepared Capstone Conflict Check and Client engagement form for distribution to Capstone and employees and submission for conflict check procedures. |
| 3/30/2015 | C. Ringer | 2.9 | Ran list of parties provided by professionals through conflict check system. |
| 3/30/2015 | C. Ringer | 1.0 | Continued running list of parties provided by professionals through conflict check system. |
| 3/30/2015 | J. Blum | 0.9 | Ran list of parties provided by professionals through conflict check system. |
| 3/30/2015 | M. Haverkamp | 0.3 | Processed parties-in-interest through the conflict check system. |
| 3/31/2015 | C. Ringer | 2.9 | Ran list of parties provided by professionals through conflict check system. |
| 3/31/2015 | J. Surdoval | 1.6 | Drafted the engagement letter for retention agreements. |
| 3/31/2015 | J. Surdoval | 0.7 | Continued drafting the engagement letter for retention agreements. |
| 4/1/2015 | C. Ringer | 2.5 | Ran list of entities provided by Capstone professionals through the conflict check system. |

Capstone Advisory Group, LLC

Invoice for the 3/26/2015 - 5/31/2015 Period

| Date | Professional | Hours | Description |
|---|---|---|---|
| **05. Professional Retention Fee Application Preparation** | | | |
| 4/1/2015 | M. Haverkamp | 2.4 | Processed parties in interest through the conflict check system. |
| 4/1/2015 | J. Surdoval | 1.6 | Preparation of Capstone retention document (engagement letter and retention application). |
| 4/1/2015 | C. Ringer | 1.3 | Continued running list of entities provided by Capstone professionals through conflict check system. |
| 4/1/2015 | J. Surdoval | 0.2 | Participated in call with J. Schwartz (Hahn & Hessen) to discuss Capstone retention documents and retention of Puerto Rico tax expert. |
| 4/2/2015 | J. Surdoval | 1.6 | Prepared Capstone's retention document (Affidavit and conflict check results). |
| 4/3/2015 | J. Surdoval | 0.8 | Revised draft of Capstone engagement letter |
| 4/3/2015 | J. Surdoval | 0.6 | Revised draft of Capstone Affidavit for retention documents |
| 4/8/2015 | C. Kearns | 0.2 | Finalized Capstone Affidavit retention document. |
| 4/15/2015 | M. Haverkamp | 0.1 | Edited the first monthly fee application data. |
| 4/24/2015 | C. Ringer | 1.2 | Prepared the March monthly fee application. |
| 4/30/2015 | C. Ringer | 1.0 | Prepared the first monthly fee application. |
| 4/30/2015 | M. Haverkamp | 0.7 | Reviewed bankruptcy court local rules and interim fee order to determine the format and timing of the fee applications. |
| 4/30/2015 | M. Haverkamp | 0.6 | Edited the March fee application data. |
| 4/30/2015 | J. Surdoval | 0.1 | Participated in conference call with T. Kim (Schulte Roth) re: comments to retention agreements and suggested revisions. |
| 5/4/2015 | J. Surdoval | 1.6 | Prepared time sheet record for April. |
| 5/5/2015 | C. Kearns | 0.2 | Reviewed UST comments to retention documents for incorporation in revised documents. |
| 5/7/2015 | C. Kearns | 0.2 | Finalized retention documents (application and Affidavit) to address UST comments. |
| 5/12/2015 | C. Ringer | 1.0 | Prepared the first monthly fee application. |
| 5/13/2015 | J. Surdoval | 1.4 | Finalized retention documents for filing with the Bankruptcy court. |
| 5/13/2015 | C. Ringer | 1.3 | Prepared the first monthly fee application. |
| 5/13/2015 | C. Kearns | 0.2 | Finalized Capstone retention documents. |

Capstone Advisory Group, LLC

Invoice for the 3/26/2015 - 5/31/2015 Period

| Date | Professional | Hours | Description |
|------|-------------|-------|-------------|
| **05. Professional Retention Fee Application Preparation** | | | |
| 5/14/2015 | C. Ringer | 2.1 | Prepared the first monthly fee application. |
| 5/18/2015 | C. Ringer | 2.0 | Prepared the first monthly fee application. |
| 5/20/2015 | C. Ringer | 1.0 | Prepared the first interim fee application. |
| **Task Code Total Hours** | | **39.2** | |
| **06. Attend Hearings/Related Activities** | | | |
| 4/9/2015 | J. Surdoval | 0.3 | Attended (via dial in) Bankruptcy Court Hearing on bid procedures. |
| **Task Code Total Hours** | | **0.3** | |
| **07. Interaction/Meetings with Debtors/Counsel** | | | |
| 3/27/2015 | J. Surdoval | 0.8 | Participated in call with Zolfo Cooper, Ropes & Gray and Schulte Roth during which we discussed the Debtor's proposals re: the insurance agency, employees and NY leases. |
| 3/27/2015 | N. Haslun | 0.8 | Participated in call with Zolfo Cooper, Ropes & Gray and Schulte Roth during which we discussed the Debtor's proposals re: the insurance agency, employees and the NY lease. |
| 3/27/2015 | J. Surdoval | 0.3 | Participated in call with Debtor's CRO, C. Flaton, to discuss topics and critical issues to be reviewed by the Committee. |
| 3/30/2015 | N. Haslun | 2.7 | Participated in meeting with C. Flaton, D. Cauley and R. Blokh (Zolfo Cooper) re: plans for asset sales and leases as well as a general case update. |
| 3/30/2015 | J. Surdoval | 2.7 | Participated in meeting with C. Flaton, S. Martinez, D. Cauley and R. Blokh (Zolfo Cooper) to discuss background of company, preliminary plans for assets sales and lease rejections as well as a general case update. |
| 4/1/2015 | J. Surdoval | 1.3 | Participated in Doral professionals call (Schulte Roth, Zolfo and Ropes & Gray) to discuss tasks to be performed and firms that would perform tasks to ensure division of analyses and avoid duplication of efforts. |
| 4/1/2015 | J. Salomon | 1.3 | Participated on conference call with Zolfo Cooper, Schulte Roth, and Ropes & Gray re: updates to work streams to avoid duplication of efforts. |
| 4/1/2015 | J. Surdoval | 0.5 | Participated in call with C. Flaton (Zolfo Cooper) to discuss issues related to employees and FNMA collateral. |
| 4/1/2015 | J. Salomon | 0.3 | Review of email from B. Pfeiffer (Schulte Roth) re: updates on UCC matters. |
| 4/2/2015 | J. Surdoval | 0.5 | Participated in call with D. Cauley (Zolfo Cooper) and D. Hooston (DFC) in discussion related to FNMA. |

Invoice for the 3/26/2015 - 5/31/2015 Period

| Date | Professional | Hours | Description |
|---|---|---|---|
| **07. Interaction/Meetings with Debtors/Counsel** | | | |
| 4/2/2015 | J. Surdoval | 0.4 | Participated in call with D. Cauley and C. Flanton (Zolfo Cooper) re: FNMA collateral and preliminary requests for additional information. |
| 4/7/2015 | J. Surdoval | 0.8 | Participated in call with D. Hooston (Doral Financial Corporation) and D. Cauley (Zolfo Cooper) to discuss outstanding questions related to the loan tapes. |
| 4/8/2015 | J. Surdoval | 0.6 | Participated in call with B. Bouchard (KPMG), D. Hooston (Debtor), and D. Cauley (Zolfo Cooper) re: recourse portfolio. |
| 4/9/2015 | J. Surdoval | 0.4 | Participated in call with C. Flaton (Zolfo Cooper) and discussed insurance business data room, marketing, employees and work streams. |
| 4/10/2015 | J. Surdoval | 0.8 | Participated in call with C. Flaton (Zolfo Cooper) to discuss Debtor employee needs. |
| 4/16/2015 | J. Surdoval | 0.3 | Participated in call with R. Martin and M. Martir (Ropes & Gray) and B. Pfeiffer and N. Begley (Schulte Roth) to discuss TPG escrow balance. |
| 4/16/2015 | J. Surdoval | 0.2 | Drafted e-mail to D. Hooston (Doral Financial Corporation) and D. Cauley (Zolfo Cooper) including a draft analysis of potential liability, outstanding questions and request for time to set up call to discuss. |
| 4/17/2015 | J. Surdoval | 0.5 | Participated in call with C. Flaton (Zolfo Cooper) to discuss case matters including asset sales, employees. FNMA collateral and issues related to the data. |
| 4/20/2015 | J. Surdoval | 2.5 | Participated in meeting with C. Flaton (Zolfo Cooper) to discuss next steps for employees including budgets, Fannie Mae and other asset sales. |
| 4/21/2015 | J. Surdoval | 0.2 | Participated in call with S. Martinez and D. Cauley (Zolfo Cooper) and A. Bastone (Doral Financial Corporation) re: status of TPG and First Bank Escrows. |
| 4/22/2015 | J. Surdoval | 0.5 | Participated in call with S. Martinez (Zolfo Cooper) and A. Bastone (Doral Financial Corporation) re: TPG escrow claim schedule. |
| 4/22/2015 | J. Surdoval | 0.5 | Participated in call with Zolfo D. Cauley (Zolfo Cooper) and D. Hooston (Doral Financial Corporation) to discuss additional information received from Fannie Mae and next steps. |
| 4/22/2015 | J. Surdoval | 0.3 | Participated in call with professionals from Zolfo Cooper, Schulte Roth, Ropes & Gray, and Antilles to discuss issues. |
| 4/22/2015 | J. Surdoval | 0.3 | Participated in call with S. Martinez and D. Cauley (Zolfo Cooper) to discuss draft budget and employee support required by Debtor. |

| Date | Professional | Hours | Description |
|---|---|---|---|
| **07. Interaction/Meetings with Debtors/Counsel** | | | |
| 4/28/2015 | J. Surdoval | 0.5 | Participated in conference call with S. Martinez (Zolfo Cooper) and A. Bastone (DFC) to discuss updates on case matters including assets to be sold, receipts for March, TPG escrow and topics for discussion with FDIC. |
| 4/28/2015 | J. Surdoval | 0.2 | Participated in conference call with S. Martinez (Zolfo Cooper), A. Bastone (DFC) and B. Pfeiffer and N. Begley (Schulte Roth) to discuss open issues related to First Bank Escrow agreement. |
| 4/30/2015 | J. Surdoval | 0.5 | Participated in conference call with D. Cauley (Zolfo Cooper) and D. Hooston (DFC) re: preliminary views re: FNMA, open items to be reviewed by company and requests of information from KPMG. |
| 5/1/2015 | J. Surdoval | 1.1 | Participated in conference call with S. Martinez (Zolfo Cooper) and A. Bastone (Doral Financial) re: analysis of information received from FDIC related to TPG escrows. |
| 5/1/2015 | J. Surdoval | 0.2 | Participated in call within S. Martinez (Zolfo Cooper) re: case issues including 13 week budget, employee approvals and requested information from Committee. |
| 5/7/2015 | J. Salomon | 0.5 | Participated in a portion of conference call with the C. Flaton (Zolfo Cooper) and B. Pfeiffer (Schulte) re: bids received for sale of insurance subsidiary. |
| 5/8/2015 | J. Surdoval | 0.6 | Reviewed various correspondence and inquiries from Debtor related to Insurance sale. |
| 5/13/2015 | J. Surdoval | 0.4 | Replied to various correspondence with Debtor and Counsel related to Fannie Mae meeting. |
| 5/22/2015 | J. Surdoval | 0.4 | Participated in call with Schulte, Zolfo Cooper and Ropes & Gray in relation to draft Statement of financial affairs schedules. |
| *Task Code Total Hours* | | *23.9* | |
| **08. Interaction/Meetings with Creditors** | | | |
| 3/26/2015 | J. Salomon | 1.0 | Participated in call with Counsel and the Committee re: proposals from the Debtor re: employees, the insurance agency sale and proposed committee advisor on Puerto Rico tax matters. |
| 3/26/2015 | J. Salomon | 0.5 | Participated in call with B. Pfeiffer (Schulte Roth) re: retention of tax expert. |
| 3/27/2015 | J. Surdoval | 1.0 | Participated in call with Counsel and the Committee re: proposals from the Debtor in regards to employees, the insurance agency sale and proposed Committee advisors on Puerto Rico tax matters. |
| 3/27/2015 | N. Haslun | 1.0 | Participated in call with Counsel and the Committee to discuss Committee advisor on Puerto Rico tax matters and proposals from the Debtor's regarding employees and the insurance agency. |

| Date | Professional | Hours | Description |
|------|--------------|-------|-------------|
| **08. Interaction/Meetings with Creditors** | | | |
| 3/27/2015 | C. Kearns | 1.0 | Participated in kick off call with UCC to discuss various case issues including employee needs to support bankruptcy and pending sale of insurance brokerage business. |
| 3/27/2015 | J. Salomon | 0.3 | Participated in conference call with Counsel re: potential tax experts in Puerto Rico. |
| 3/30/2015 | J. Surdoval | 0.2 | Participated in call with J. Brass (Stone Lion) re: issues on Fannie Mae loan portfolio. |
| 3/30/2015 | J. Salomon | 0.1 | Participated in call with B. Pfeiffer (Schulte Roth) re: tax work stream. |
| 4/2/2015 | J. Salomon | 1.0 | Participated in call with UCC Committee members and Schulte Roth to discuss case matters including updates in court hearing, Doral insurance sale, tax professionals, retention agreements and budgets/work plans. |
| 4/2/2015 | J. Surdoval | 0.9 | Participated in call with UCC Committee members and Schulte Roth to discuss case matters including updates in court hearing, Doral insurance sale, Tax professionals, retention agreements and budgets/work plans. |
| 4/2/2015 | C. Kearns | 0.9 | Participated in call with UCC on case status including work streams and FDIC related matters. |
| 4/2/2015 | C. Kearns | 0.4 | Reviewed preliminary version of the  Fannie Mae analysis. |
| 4/2/2015 | J. Surdoval | 0.2 | Participated in call with B. Pfeiffer (Schulte Roth) re: case issues related to tax, FNMA, Retention and UCC requests. |
| 4/2/2015 | J. Surdoval | 0.2 | Participated in call with L. Kreuger (Drivetrain Associates) to discuss requests for information, budgets and questions related to the January financial information. |
| 4/9/2015 | J. Surdoval | 1.0 | Participated in weekly UCC update call with B. Pfeiffer, D. Kusnetz and T. Kim (Schulte Roth) re: case matters including bid procedures update, tax analysis and FNMA collateral. |
| 4/9/2015 | J. Salomon | 0.6 | Participated in weekly UCC update call with B. Pfeiffer, D. Kusnetz and T. Kim (Schulte Roth) re: case matters including bid procedures update, tax analysis and FNMA collateral. |
| 4/9/2015 | J. Salomon | 0.6 | Reviewed update materials in preparation for Committee call. |
| 4/14/2015 | J. Surdoval | 1.1 | Participated in call with L. Krueger (Drivetrain Associates) to discuss status of work streams and Committee requests. |
| 4/14/2015 | J. Salomon | 1.0 | Participated in call with L. Krueger (Drivetrain Associates) to discuss status of work streams and Committee requests. |

| Date | Professional | Hours | Description |
|------|--------------|-------|-------------|
| **08. Interaction/Meetings with Creditors** | | | |
| 4/14/2015 | C. Kearns | 0.8 | Participated in portion of UCC weekly status conference call with the Committee to discuss case issues including FNMA and insurance broker sale. |
| 4/16/2015 | J. Salomon | 0.8 | Participated in call with Committee and Counsel to discuss various case issues including Puerto Rico tax experts, Debtor request for extension and update on employees. |
| 4/16/2015 | J. Surdoval | 0.8 | Participated in call with Committee and Counsel to discuss various issues including Puerto Rico tax experts, Debtor request for extension, and update on employees. |
| 4/16/2015 | C. Kearns | 0.3 | Participated in portion of UCC weekly status conference call with the Committee to discuss case issues including tax and FDIC issues |
| 4/23/2015 | J. Salomon | 1.0 | Participated in weekly status update call with Committee and Counsel including Puerto Rico tax experts, update on insurance sale, employee budget and retention applications. |
| 4/23/2015 | J. Surdoval | 0.9 | Participated in weekly status update call with Committee and Counsel to discuss Puerto Rico tax experts, update on insurance sale, and employee budget and retention applications. |
| 4/24/2015 | J. Surdoval | 0.7 | Participated in portion of call with Counsel (Schulte Roth) and Committee call re: tax and FDIC related issues. |
| 4/29/2015 | J. Surdoval | 0.7 | Participated in conference call with B. Pfeiffer and T. Kim (Schulte Roth) re: preliminary views from analysis of FNMA issues and open items needed to be reviewed and completed. |
| 5/1/2015 | J. Surdoval | 0.8 | Participated in weekly Committee call to discuss case updates including tax professionals, insurance, FNMA, FDIC, Board requests and 13 week budget. |
| 5/7/2015 | J. Surdoval | 0.8 | Participated in weekly Committee call to discuss updates re: tax professionals, Insurance sale and FDIC. |
| 5/7/2015 | J. Salomon | 0.8 | Participated in weekly Committee call to discuss updates re: tax professionals, insurance sale and FDIC. |
| 5/7/2015 | C. Kearns | 0.7 | Participated in call with Committee to discuss bids and other case matters. |
| 5/11/2015 | J. Surdoval | 0.6 | Participated in conference call with Committee re: update to Doral Insurance bids. |
| 5/11/2015 | J. Salomon | 0.5 | Participated in conference call with Committee to discuss bids on insurance subsidiary. |
| 5/14/2015 | C. Kearns | 0.6 | Participated in call with the Committee and Schulte Roth re: insurance sale, tax and FNMA issues. |

| Date | Professional | Hours | Description |
|------|-------------|-------|-------------|
| **08. Interaction/Meetings with Creditors** | | | |
| 5/14/2015 | J. Salomon | 0.6 | Participated in call with the Committee and Schulte Roth re: insurance sale, tax and FNMA issues. |
| 5/14/2015 | J. Surdoval | 0.6 | Participated in weekly conference call with the Committee including discussions on tax, Fannie Mae and Insurance sale. |
| 5/18/2015 | C. Kearns | 0.2 | Corresponded with Committee member advisor (Drivetrain) and Counsel and tax related issues. |
| 5/21/2015 | J. Salomon | 0.5 | Participated in weekly status update conference call with Committee. |
| *Task Code Total Hours* | | *25.7* | |
| **09. Employee Issues/KEIP** | | | |
| 3/27/2015 | J. Surdoval | 1.2 | Reviewed the Debtor's employee motion and supporting schedule prepared by the Debtor's financial advisor. |
| 3/30/2015 | J. Surdoval | 0.2 | Drafted e-mail response on questions related to Debtor's employee motion. |
| 3/30/2015 | J. Surdoval | 0.2 | Participated in call with B. Pfeiffer (Schulte Roth) re: Debtor's draft analysis for employee needs and timing. |
| 4/9/2015 | J. Surdoval | 0.5 | Reviewed employment agreements and amendments. |
| *Task Code Total Hours* | | *2.1* | |
| **14. Executory Contracts/Leases** | | | |
| 3/27/2015 | J. Surdoval | 1.8 | Reviewed Debtor's draft of the Lease Rejection Motion, related summary Lease Schedule and pertinent Lease excerpts. |
| 3/30/2015 | J. Surdoval | 0.2 | Drafted e-mail response on questions related to Debtor's lease rejection motion. |
| *Task Code Total Hours* | | *2.0* | |
| **18. Operating and Other Reports** | | | |
| 4/17/2015 | J. Salomon | 0.5 | Reviewed draft Debtor's Statement of Financial Assets. |
| 4/30/2015 | C. Kearns | 0.2 | Reviewed Debtor's Statement of Financial Assets. |
| 5/1/2015 | C. Kearns | 0.1 | Reviewed Debtor's Monthly Operating Report |
| 5/22/2015 | J. Surdoval | 2.2 | Reviewed Debtor prepared notes and analysis for Draft Statement of financial affairs. |
| *Task Code Total Hours* | | *3.0* | |
| **19. Cash Flow/Cash Management Liquidity** | | | |

| Date | Professional | Hours | Description |
|------|-------------|-------|-------------|
| **19. Cash Flow/Cash Management Liquidity** | | | |
| 4/23/2015 | J. Surdoval | 0.9 | Participated in call with S. Martinez and D. Cauley (Zolfo Cooper) re: Debtor's proposed budget. |
| 4/23/2015 | J. Surdoval | 0.7 | Reviewed the Debtor's proposed budget including employee tasks. |
| 4/29/2015 | J. Surdoval | 0.6 | Participated in conference call with C. Flaton, S. Martinez and D. Cauley (Zolfo Cooper) to discuss 13 week budget preparation, assumptions and changes related to employee staffing timing. |
| 5/12/2015 | J. Surdoval | 0.6 | Reviewed various Debtor analyses including weekly cash flow report and budget. |
| 5/18/2015 | J. Surdoval | 0.8 | Reviewed weekly cash flow reporting and comparison to budget. |
| 5/26/2015 | J. Surdoval | 0.6 | Reviewed Debtor weekly cash flow reporting. |
| **Task Code Total Hours** | | **4.2** | |
| **20. Projections/Business Plan/Other** | | | |
| 5/6/2015 | J. Surdoval | 0.6 | Responded to various questions related to Debtor budget. |
| 5/14/2015 | J. Surdoval | 0.5 | Corresponded with Debtor related to budget and provided estimates for professional fees. |
| 5/18/2015 | J. Surdoval | 0.7 | Reviewed Debtor revised budget requests. |
| 5/19/2015 | J. Surdoval | 0.8 | Reviewed Debtor analysis supporting requests for extension of employment of Doral Financial employees. |
| 5/19/2015 | J. Surdoval | 0.4 | Corresponded with Counsel related to Debtor employee budget requests. |
| 5/21/2015 | J. Surdoval | 0.4 | Reviewed Debtor prepared professional fee analysis for Debtor advisors compared to budget. |
| **Task Code Total Hours** | | **3.4** | |
| **22. Preference/Avoidance Actions** | | | |
| 5/13/2015 | J. Salomon | 0.5 | Participated in conference call with B. Pfeiffer and A. Glickman (Schulte Roth) and M. Bane (Ropes & Gray) re: potential causes of action for Debtor. |
| **Task Code Total Hours** | | **0.5** | |
| **26. Tax Issues** | | | |
| 3/30/2015 | J. Salomon | 0.3 | Prepared tax work plan. |
| 4/1/2015 | J. Salomon | 0.5 | Participated on call with potential tax advisor re: potential retention and possible conflict issues. |

Capstone Advisory Group, LLC

Invoice for the 3/26/2015 - 5/31/2015 Period

| Date | Professional | Hours | Description |
|---|---|---|---|
| **26. Tax Issues** | | | |
| 4/1/2015 | J. Surdoval | 0.3 | Participated in call with potential tax advisor to discuss tax experience with Doral and potential conflicts re: retention to serve as tax advisor to Debtor. |
| 4/1/2015 | J. Salomon | 0.2 | Commenced vetting of potential tax advisor for tax retention purposes. |
| 4/1/2015 | J. Salomon | 0.2 | Correspondence with B. Pfeiffer (Schulte Roth) re: potential retention of tax advisor . |
| 4/1/2015 | J. Salomon | 0.1 | Scheduled conference call with potential tax advisor regarding potential conflicts. |
| 4/2/2015 | J. Salomon | 0.8 | Reviewed various candidates for tax services in Puerto Rico. |
| 4/2/2015 | J. Surdoval | 0.2 | Reviewed update related to search and retention of tax professional for estate. |
| 4/3/2015 | J. Salomon | 1.1 | Reviewed the February 2006 closing agreement between Doral and Puerto Rico Treasury. |
| 4/3/2015 | J. Surdoval | 1.0 | Participated in call with Debtor employees, general Counsel, Schulte Roth and Ropes & Gray re: retention of tax professionals, varying skills needed and work streams that would be required. |
| 4/3/2015 | J. Salomon | 1.0 | Participated in conference call  with E. Ubarri (DFC), B. Pfeiffer and D. Kuznetz (Schulte Roth) and M. Bane (Ropes & Gray) re: potential tax advisors for the Debtor and Committee. |
| 4/3/2015 | J. Salomon | 1.0 | Reviewed September 2006 closing agreement between the Company and Puerto Rico Tax authority. |
| 4/6/2015 | J. Salomon | 1.2 | Reviewed closing agreement between the Company and Puerto Rico treasury dated June 2005. |
| 4/6/2015 | J. Salomon | 1.0 | Examined potential advisor for potential tax retention for the Committee. |
| 4/6/2015 | J. Salomon | 0.8 | Reviewed memo relating to interest only strips. |
| 4/7/2015 | J. Salomon | 0.7 | Participated in conference call with D. Kusnetz and M. Levine (Schulte Roth) to interviewpotential advisor for the tax work in Puerto Rico. |
| 4/7/2015 | J. Salomon | 0.5 | D. Kusnetz and M. Levine (Schulte Roth) relating to evaluation of potential candidates for tax roles in Puerto Rico. |
| 4/7/2015 | J. Salomon | 0.5 | Participated in conference call with D. Kusnetz and B. Pfeiffer (Schulte Roth), E. Ubarri and G. Scopetta (Doral Financial Corporation) and M. Bane (Ropes & Gray) relating to possible retention of tax expert. |
| 4/7/2015 | J. Salomon | 0.3 | Participated in conference call with D. Kusnetz (Schulte Roth) re: interview of potential advisor. |

| Date | Professional | Hours | Description |
|------|------|------|------|
| **26. Tax Issues** | | | |
| 4/13/2015 | J. Salomon | 0.6 | Commenced vetting of potential advisor re: potential tax retention in Puerto Rico. |
| 4/13/2015 | J. Salomon | 0.5 | Recommenced search for tax professional in Puerto Rico. |
| 4/14/2015 | J. Salomon | 0.6 | Interviewed potential advisor for tax work in Puerto Rico. |
| 4/16/2015 | J. Salomon | 0.8 | Participated in conference call with D. Kusnetz and M. Levine (Schulte Roth), M. Bane (Ropes & Gray) and interested party re: sale of tax assets. |
| 4/16/2015 | J. Salomon | 0.3 | Participated in conference call with D. Kusnetz and M. Levine (Schulte Roth) and M. Bane (Ropes & Gray) re: sale of tax assets. |
| 4/21/2015 | J. Salomon | 0.4 | Participated in conference call with D. Cusnetz and M. Levine (Schulte Roth) and interested party re: sale of tax assets. |
| 4/21/2015 | C. Kearns | 0.2 | Reviewed status of tax related issues. |
| 4/23/2015 | J. Salomon | 0.4 | Interviewed A. Garcia with D. Kusnetz (Schulte Roth), E. Ubarri and G. Scopetta (Doral Financial Corp) for consideration of retention of potential advisor. |
| 4/23/2015 | J. Salomon | 0.3 | Participated in conference call with M. Levine and D. Kusnetz (Schulte Roth) and E. Ubarri and G. Scopetta (Doral Financial Corporation) re: retention of tax expert and possible conflicts. |
| 4/23/2015 | J. Salomon | 0.2 | Reviewed CV of potential advisor for potential retention as tax advocate in Puerto Rico. |
| 4/30/2015 | J. Salomon | 0.5 | Participated in conference call with R. Blokh and Carol Flaton (Zolfo Cooper), D. Kusnetz and M. Levine (Schulte Roth); G. Scopetta and E. Ubarri (Doral Financial Corp) and A. Sakari and M. Barnett (Och-Ziff) re: potential sale of tax assets. |
| 5/15/2015 | J. Salomon | 0.8 | Held discussion with interested party to discuss assets of the estate. |
| 5/19/2015 | J. Surdoval | 0.3 | Reviewed correspondence from Committee member regarding inquiries related to tax attributes. |
| 5/20/2015 | J. Salomon | 0.4 | Participated in conference call with Zolfo Cooper, Schulte Roth, Goldman Sachs and Doral Financial to discuss potential sale of assets. |
| 5/20/2015 | J. Surdoval | 0.4 | Received update on potential strategies for tax attributes. |
| 5/22/2015 | J. Salomon | 0.5 | Participated in conference call with Schulte Roth, tax advisor, and E. Ubarri and G. Scopetta (Doral Financial Corp.) re: tax assets. |
| 5/28/2015 | J. Salomon | 1.2 | Participated in conference call with Schulte Roth, tax advisor, and E. Ubarri and G. Scopetta (Doral Financial Corp.) re: tax assets. |

| Date | Professional | Hours | Description |
|------|--------------|-------|-------------|
| **26. Tax Issues** | | | |
| *Task Code Total Hours* | | *20.1* | |
| **28. Valuation Analysis** | | | |
| 4/3/2015 | J. Surdoval | 1.2 | Commenced review of report which relates to potential loss exposure. |
| 4/6/2015 | J. Surdoval | 2.9 | Reviewed the company provided loan tape related to Fannie Mae collateral loans. |
| 4/6/2015 | J. Surdoval | 1.3 | Continued reviewing the company provided loan tape. |
| 4/13/2015 | J. Surdoval | 1.2 | Commenced review of KPMG excel files related to assessment of potential exposure. |
| 4/14/2015 | J. Surdoval | 2.2 | Commenced initial Review of 4 of 11 KPMG excel files. |
| 4/14/2015 | J. Surdoval | 2.0 | Commenced initial review of Recourse-Delinquent loan file. |
| 4/14/2015 | J. Surdoval | 2.0 | Prepared analysis of $245M loan portfolio. |
| 4/14/2015 | C. Kearns | 0.2 | Reviewed status of draft Capstone FNMA analysis. |
| 4/15/2015 | J. Surdoval | 2.6 | Prepared analysis of recourse portfolio for DFC and Doral Bank. |
| 4/15/2015 | J. Surdoval | 2.2 | Prepared analysis on FNMA Pledge Agreement. |
| 4/15/2015 | J. Surdoval | 1.5 | Reviewed Debtor'sexcel loan file. |
| 4/15/2015 | J. Surdoval | 0.8 | Prepared analysis on amendment to FNMA Pledge agreement. |
| 4/24/2015 | J. Surdoval | 1.2 | Commenced review of Loan Recourse portfolio received from FNMA. |
| 4/27/2015 | J. Surdoval | 2.9 | Commenced review of FNMA look up table for individual loans. |
| 4/27/2015 | J. Geraghty | 2.8 | Reconciled data between Doral and Fannie Mae recourse portfolio databases. |
| 4/27/2015 | J. Surdoval | 2.3 | Participated in call with Schulte B. Pfeiffer (Schulte Roth) re: tax attributes and budgets. |
| 4/27/2015 | J. Surdoval | 1.2 | Drafted e-mail to TPG requesting meeting to outline open issues including resolution of escrow accounts. |
| 4/27/2015 | J. Surdoval | 0.9 | Reviewed updated Insurance agency sale process documents provided by the Debtor. |
| 4/28/2015 | J. Surdoval | 2.8 | Commenced analysis of completed Fannie Mae look up file. |
| 4/28/2015 | J. Surdoval | 2.6 | Reviewed the FNMA look up table. |

| Date | Professional | Hours | Description |
|------|-------------|-------|-------------|
| **28. Valuation Analysis** | | | |
| 4/28/2015 | J. Surdoval | 2.1 | Continued to Commence analysis of completed Fannie Mae look up file. |
| 4/29/2015 | J. Surdoval | 2.8 | Finalized FNMA Loan recourse portfolio analysis. |
| *Task Code Total Hours* | | *41.7* | |
| **32. Document Review** | | | |
| 4/7/2015 | J. Surdoval | 0.8 | Reviewed company provided documents related to its D&O Policy to assess coverage limits. |
| 5/29/2015 | J. Salomon | 2.7 | Reviewed draft Addendum to FDIC Proof of Claim dated May 28, 2015. |
| *Task Code Total Hours* | | *3.5* | |
| **Total Hours** | | **272.1** | |

**Doral Financial Corporation**

# CAPSTONE ADVISORY GROUP, LLC



| Exhibit C: Expense Detail |
|---|

For the Period 3/26/2015 through 5/31/2015

| Date | Professional | Amount | Description |
|---|---|---|---|
| **07. Mileage** | | | |
| 3/30/2015 | J. Surdoval | $17.25 | Roundtrip mileage from NJ Office to NY Office for meeting with Zolfo |
| 4/20/2015 | J. Surdoval | $17.25 | Roundtrip mileage from NJ office to NY office for meeting |
| 5/12/2015 | J. Surdoval | $17.25 | Roundtrip mileage fomr NJ office to NY for Doral Insurance auction. |
| **Expense Category Total** | | **$51.75** | |
| **10. Parking/Tolls** | | | |
| 3/30/2015 | J. Surdoval | $35.00 | Parking in NY for meeting with Zolfo |
| 3/30/2015 | J. Surdoval | $13.00 | Toll to NYC For meeting with Zolfo |
| 4/20/2015 | J. Surdoval | $35.00 | Parking in NYC for Doral meeting |
| 4/20/2015 | J. Surdoval | $13.00 | Toll for NY for Doral meeting |
| 5/12/2015 | J. Surdoval | $35.00 | parking in NYC for Doral Insurance Auction |
| 5/12/2015 | J. Surdoval | $13.50 | toll to NYC for DOral Insurance Auction |
| **Expense Category Total** | | **$144.50** | |
| **11. Research** | | | |
| 3/26/2015 | CAG Direct | $89.54 | Bloomberg - March 2015 |
| 3/27/2015 | CAG Direct | $156.69 | Capital IQ - March 2015 |
| 3/28/2015 | CAG Direct | $34.40 | PACER - March 2015 |
| 4/14/2015 | CAG Direct | $10.00 | PACER - April 2015 |
| 5/7/2015 | CAG Direct | $676.00 | Hahn & Hessen Inv.#161554 |
| **Expense Category Total** | | **$966.63** | |
| **13. Telecom** | | | |

Capstone Advisory Group, LLC

Invoice for the 3/26/2015 - 5/31/2015 Period

| Date | Professional | Amount | Description |
|------|-------------|--------|-------------|
| **13. Telecom** | | | |
| 4/3/2015 | CAG Direct | $7.85 | Intercall Inv. #1742865792 |
| 5/4/2015 | CAG Direct | $31.50 | Intercall Inv.#1742924871 |
| *Expense Category Total* | | *$39.35* | |
| **Total Hours** | | **$1,202.23** | |