ROPES & GRAY LLP
Mark I. Bane
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

-and-

James A. Wright III
Meredith S. Tinkham (*pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617) 951-7050

*Counsel to Doral Financial Corporation and*
*Proposed Counsel to Doral Properties, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Doral Financial Corporation, et al.,[1] | : | Case No. 15-10573 (SCC) |
| | : | |
| Debtors. | : | (Joint Administration Requested) |

--------------------------------------------------------x

## MOTION FOR ORDER APPROVING
## USE OF CASH COLLATERAL BY DORAL PROPERTIES, INC.

Doral Financial Corporation ("Doral Financial") and Doral Properties, Inc. ("Doral Properties" and, together with Doral Financial, the "Debtors") submit this motion (the "Motion") for entry of an order, substantially in the form attached as Exhibit A (the "Interim Order"), authorizing Doral Properties to use cash collateral and granting adequate protection to UMB Bank, N.A. ("UMB"), in its capacity as trustee for the Trust Agreement (as defined below) (the

---

[1] The last four digits of the taxpayer identification number of the Debtors are: Doral Financial Corporation (2162); Doral Properties, Inc. (2283).

"Indenture Trustee").

In accordance with Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-2 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), a summary of the material terms of the Interim Order, which Doral Properties and the Indenture Trustee (as defined below) negotiated in good faith and at arm's-length, follows:

| Entities with an Interest in the Cash Collateral | Doral Properties, the Indenture Trustee, and AFICA (as defined below) |
| --- | --- |
| The Cash Collateral | The cash proceeds of the Prepetition Collateral (as defined below), including such cash proceeds held in the Debtors' deposit accounts with financial institutions. |
| Purpose of Use of Cash Collateral | To fund Doral Properties' business and the costs and expenses of administering the Doral Properties' chapter 11 case, both in a manner consistent with the 13-week budget attached as Exhibit A to the Interim Order (as such budget may be modified from time to time by Doral Properties with the prior written consent of the Indenture Trustee, the "Budget"). The Budget includes a payment of $470,000 to Doral Financial to reimburse Doral Financial for professional fees incurred by Doral Financial with respect to past efforts on behalf of Doral Properties as was necessary to facilitate the anticipated auction and sale. |
| Duration | The date hereof through and including February 19, 2016 (the "Budget Period"). |
| Adequate Protection | Adequate Protection Liens. The Indenture Trustee is granted additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected postpetition liens on and security interests in (the "Adequate Protection Liens") the Prepetition Collateral and any postpetition cash proceeds thereof (collectively, the "Collateral") to the extent of any Diminution (as defined below).

Superpriority Claim. The Indenture Trustee is granted, to the extent provided in Bankruptcy Code sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in Doral Properties' chapter 11 case (the "Superpriority Claim") |

2

|  | |
| --- | --- |
|  | to the extent of any Diminution; <u>provided</u>, that the Superpriority Claim shall be subject to the Carve Out (as defined below).<br><br><u>Other Adequate Protection</u>. Doral Properties shall pay (1) the reasonable fees and expenses of the Indenture Trustee, including the reasonable fees and expenses of Eckert Seamans Cherin & Mellott, LLC, incurred by the Indenture Trustee under the Loan Documents arising subsequent to the Petition Date and (2) up to $120,000 as reimbursement for fees and expenses of legal counsel for the holders of the AFICA Bonds (as defined below). |
| Carve Out | The sum of: (i) all fees required to be paid to the Clerk of the Court and to the United States Trustee under 28 U.S.C. § 1930(a); (ii) if Doral Properties' chapter 11 case is converted to chapter 7, fees and expenses of a chapter 7 trustee up to $50,000; (iii) all allowed unpaid fees and expenses incurred by persons or firms retained by Doral Properties pursuant to Bankruptcy Code sections 327, 328, or 363 ("<u>Professional Persons</u>") at any time before the first business day following delivery by the Indenture Trustee to Ropes & Gray LLP, the United States Trustee, and Schulte, Roth & Zabel LLP of a written notice (the "<u>Carve Out Notice</u>"), which notice may be delivered at any time following the delivery of a notice of default, stating that an Event of Default (as defined below) has occurred; and (iv) the allowed unpaid fees and expenses incurred by Professional Persons in an aggregate amount not to exceed $150,000 (the "<u>Post-Notice Cap</u>") incurred after the first business day following delivery by the Indenture Trustee of the Carve Out Notice. |
| Event of Default | • Doral Properties (1) use of Cash Collateral in a manner inconsistent with the Interim Order; or (2) failure to perform, in any material respect, its obligations under the Interim Order.<br><br>• Dismissal, conversion to chapter 7, or the appointment of a chapter 11 trustee or examiner with expanded powers in Doral Properties' chapter 11 case.<br><br>• Any stay, reversal, vacatur, or rescission of the terms of the Interim Order.<br><br>• Entry of an order of this Court modifying, without consent of the Indenture Trustee, the Adequate |

3

| | |
|---|---|
| | Protection Liens, the Superpriority Claim, or the other provisions of the Interim Order.<br><br>• Entry of an order of this Court authorizing Doral Properties to obtain credit or incur debt that is secured by a security interest in or lien on all or any portion of the Collateral which is equal or senior to the Prepetition Liens or the Adequate Protection Liens. |
| Stipulations by Doral Properties | Doral Properties stipulates to the amount of the secured claims under the Loan Agreement (as defined below) prior to the Petition Date, subject to certain reservations, and that the secured claim under the Loan Agreement is valid and not subject to avoidance or setoff.<br><br>Doral Properties also stipulates to the validity, perfection, and enforceability of the liens against the collateral for the Loan Agreement, which constitutes substantially all of Doral Properties' assets. |
| Challenge Period & Release | Parties in interest have a challenge period of the earlier of 60 days or the date of a sale order to seek to challenge the claims and liens under the Loan Agreement and/or assert any other claims against the Indenture Trustee or AFICA. Absent a challenge, Doral Properties' stipulations will become binding on all parties in interest and Doral Properties shall be deemed to have released the Indenture Trustee and AFICA from any claims. |

In support of this Motion, Doral Properties submits the *Declaration of Scott Martinez in Support of Cash Collateral Usage*, attached as <u>Exhibit B</u>, and respectfully represents and sets forth as follows:

### <u>Jurisdiction and Venue</u>

1.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

4

2.      The statutory bases for the relief requested herein are sections 105(a), 361, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rule 4001 of the Bankruptcy Rules, and Local Rule 4001-2 of the Local Rules.

### Background

3.      On March 11, 2015, Doral Financial filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. On the date hereof, Doral Properties filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. Sections 1107(a) and 1108 of the Bankruptcy Code authorize the Debtors to continue to operate their businesses and manage their properties as debtors in possession. No request for the appointment of a trustee or examiner has been made in the Debtors' chapter 11 cases. An official Committee of Unsecured Creditors (the "UCC") was appointed on March 23, 2015 in the Doral Financial Case. Contemporaneously herewith, the Debtors have requested joint administration of their chapter 11 cases.

4.      A summary of Doral Financial's business and capital structure, and the events leading to its chapter 11 case, are set forth in the *Declaration of Carol Flaton in Support of First Day Motions* [Dkt. No. 8] filed in the Doral Financial Case (the "First Day Declaration"). Doral Financial owns 100% of the equity in Doral Properties. A summary of Doral Properties' business and assets is set forth in the First Day Declaration.

### The Cash Collateral

5.      Doral Properties, Doral Financial, and the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA") are parties to a Loan and Guaranty Agreement, dated November 3, 1999 (the "Loan Agreement"). AFICA and UMB are parties to a related Trust Agreement, dated November 3, 1999 (the "Trust Agreement"), under which AFICA issued certain bonds secured by AFICA's interest in the Loan

54068551_2

Agreement (the "AFICA Bonds"). Doral Properties, AFICA, and the Indenture Trustee are also parties to a Pledge and Security Agreement, dated November 3, 1999 (the "Pledge and Security Agreement"). AFICA's rights under the Loan Agreement and the Pledge and Security Agreement have been assigned to the Indenture Trustee under the terms of those documents.

6.      Pursuant to the Pledge and Security Agreement, a Deed of Constitution of First Mortgage, dated November 3, 1999 (the "Mortgage Deed"), and a note issued thereunder (the "Mortgage Note", and together with the Mortgage Deed, the Pledge and Security Agreement, and the Loan Agreement, the "Loan Documents"), Doral Properties has granted first priority liens upon and security interests in (the "Prepetition Liens") the land, building, structures, and related assets located at 1451 FDR Avenue, San Juan, Puerto Rico, including Doral Properties' rights as landlord and cash flows related to such assets (collectively, the "Prepetition Collateral").

7.      The cash proceeds of the Prepetition Collateral, including cash proceeds held in Doral Properties' deposit accounts with financial institutions, is "cash collateral" within the meaning of Bankruptcy Code section 363(a) (the "Cash Collateral").

### Relief Requested

8.      Doral Properties requests approval of the Interim Order authorizing Doral Properties to use the Cash Collateral and granting the Indenture Trustee adequate protection with regard to such Cash Collateral. Doral Properties has an immediate need to obtain use of the Prepetition Collateral, including the Cash Collateral, to preserve and maintain the value of its assets and maximize the return to creditors. An immediate and critical need exists for Doral Properties to use the Cash Collateral, consistent with the Budget (as defined below), for working capital purposes and for the costs and expenses of administering Doral Properties' chapter 11 case.

6

9.      The Indenture Trustee is entitled to adequate protection of its interest in the Prepetition Collateral, including the Cash Collateral, for any diminution resulting from the imposition of the automatic stay under Bankruptcy Code section 362 or Doral Properties' use of the Prepetition Collateral under Bankruptcy Code section 363 ("Diminution").

### Basis for Relief

10.     Section 363 of the Bankruptcy Code governs a debtor's use of property of the estate, such as the Prepetition Collateral. The cash proceeds of the Prepetition Collateral fall within the type of assets that are defined as "cash collateral" under the Bankruptcy Code. See 11 U.S.C. § 363(a).

11.     The Indenture Trustee is entitled to adequate protection of its interest in the Prepetition Collateral, including the Cash Collateral, for any Diminution. See 11 U.S.C. § 361(1); In re Residential Capital, LLC, 501 B.R. 549, 589 (Bankr. S.D.N.Y. 2013).

12.     Courts conduct a "fact specific inquiry" on a case-by-case basis to determine what constitutes adequate protection. In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996). Section 361 of the Bankruptcy Code provides a non-exhaustive list of acceptable forms of adequate protection, including cash payments, additional liens, replacement liens, and the "indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361.

13.     Adequate protection protects a secured creditor from "diminution in the value of its collateral during the reorganization process," In re Beker Indus. Corp., 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986), and ensures that the secured creditor "receives the value for which the creditor bargained for prior to the debtor's bankruptcy." In re WorldCom, Inc., 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004); see In re YL W. 87th Holdings I LLC, 423 B.R. 421, 442 n.46 (Bankr. S.D.N.Y. 2010). The Court is not required, however, "to protect a creditor beyond what was bargained for by the parties." Worldcom, 304 B.R. at 619.

7

14.     Doral Properties submits that the proposed protection of the Indenture Trustee's interest in the Prepetition Collateral is appropriate, a reasonable exercise of Doral Properties' business judgment, and more than adequate to protect the Indenture Trustee from any Diminution.

15.     For the foregoing reasons, Doral Properties submits that it is necessary and appropriate to authorize Doral Properties to use the Prepetition Collateral, to the extent such authorization is necessary pursuant to sections 363(c) and (e) of the Bankruptcy Code, and that the terms of the Interim Order provide the Indenture Trustee with sufficient adequate protection from any Diminution.

### Notice

16.     Notice of this Motion has been provided to: (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to the UCC; (c) counsel to the Indenture Trustee; (d) upon the Master Service List as defined in the *Order Establishing Certain Notice, Case Management, and Administrative Procedures and Omnibus Hearing Dates* [Docket No. 74] (the "Case Management Order") previously entered in Doral Financial's chapter 11 case; and (e) upon the top 25 unsecured creditors listed in Doral Properties' chapter 11 petition.

WHEREFORE, Doral Properties requests that this Court enter the Interim Order, in the form attached hereto as Exhibit A: (i) authorizing Doral Properties to use the Cash Collateral and granting the Indenture Trustee adequate protection with regard to such Cash Collateral; and (ii) granting such other and further relief as is just and proper.

Dated: November 25, 2015
New York, New York

_/s/ Mark I. Bane_____
ROPES & GRAY LLP
Mark I. Bane
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Email: mark.bane@ropesgray.com

-and-

James A. Wright III
Meredith S. Tinkham (*pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617) 951-7050
Email: james.wright@ropesgray.com
meredith.parkinson@ropesgray.com

*Counsel to the Doral Financial Corporation and Proposed Counsel to Doral Properties, Inc.*

**Exhibit A**

**INTERIM ORDER APPROVING USE OF
CASH COLLATERAL BY DORAL PROPERTIES, INC.**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Doral Financial Corporation, et al.,[1] | : | Case No. 15-10573 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------x

## INTERIM ORDER APPROVING
## USE OF CASH COLLATERAL BY DORAL PROPERTIES, INC.

Upon the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (the "Debtors") for entry of an order (this "Order") approving the use of cash collateral by Doral Properties, Inc. ("Doral Properties") under Bankruptcy Code section 363, and providing adequate protection; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors have provided all notices required by the title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and that no other or further notice is needed or necessary; and the Court having reviewed the Motion and having heard the proffers and other statements in support of the Motion at an interim hearing held on December [3], 2015 (the "Interim Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and any

---

[1] The last four digits of the taxpayer identification number of the Debtors are: Doral Financial Corporation (2162); Doral Properties, Inc. (2283).

objections to the relief requested in the Motion having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.      <u>Notice</u>. Under the circumstances, the notice provided of the Motion and the Interim Hearing constitutes due and sufficient notice thereof, and no other notice is required or need be given.

B.      <u>Need to Use Cash Collateral</u>. Doral Properties has an immediate need to obtain use of the Prepetition Collateral (as defined below), including the Cash Collateral (as defined below), to preserve and maintain the value of its assets and maximize the return to creditors. An immediate and critical need exists for Doral Properties to use the Cash Collateral, consistent with the Budget (as defined herein), for working capital purposes and for the costs and expenses of administering Doral Properties' chapter 11 case.

C.      <u>Secured Bonds</u>. Doral Properties, Doral Financial Corporation ("<u>Doral Financial</u>"), and the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("<u>AFICA</u>") are parties to a Loan and Guaranty Agreement, dated November 3, 1999 (the "<u>Loan Agreement</u>"). AFICA and UMB Bank, N.A. ("<u>UMB</u>") are parties to a related Trust Agreement, dated November 3, 1999 (the "<u>Trust Agreement</u>" and UMB in its capacity as trustee under the Trust Agreement, the "<u>Indenture Trustee</u>"). Doral Properties, AFICA, and the Indenture Trustee are also parties to a Pledge and Security Agreement, dated November 3, 1999 (the "<u>Pledge and Security Agreement</u>"). AFICA's rights under the Loan Agreement and the Pledge and Security Agreement have been assigned to the Indenture Trustee under the terms of those documents.

D.      <u>Doral Properties Stipulations</u>. Subject to the limitations described in paragraph 8

2

herein, Doral Properties admits, stipulates, and agrees that:

a. As of November 25, 2015, the petition date for Doral Properties' chapter 11 case (the "Petition Date"), Doral Properties was liable under the Loan Agreement (i) in the aggregate principal amount of $30,835,000 for loans made under the Loan Agreement, plus (ii) accrued and unpaid interest of $1,552,884.86, plus default interest to the extent permitted by the Loan Agreement and applicable law, plus (iii) interest accruing postpetition, to the extent permitted by the Bankruptcy Code and applicable law, plus (iv) an estimated $95,000 for fees, costs, and expenses, including, without limitation, attorney's fees and expenses, which is subject to final determination, plus (v) fees, costs, and expenses, including, without limitation, attorney's fees and expenses, accruing postpetition, to the extent permitted by the Loan Agreement, the Bankruptcy Code, and applicable law ((i) – (v), collectively, the "Secured Debt"). No portion of the Secured Debt is subject to avoidance, subordination (equitable or otherwise), recharacterization, recovery, attack, offset, counterclaim, defense, challenge or Claim (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

b. The Indenture Trustee has also asserted an additional claim for $4,476,500 under the Mortgage Deed and Mortgage Note (both as defined below) for "costs and expenses" of a "foreclosure or judicial proceeding," (the "Damages Claim") which the Indenture Trustee asserts should be included in the Secured Debt. Doral Properties and the Indenture Trustee reserve their respective rights with respect to the Damages Claim, and Doral Properties makes no stipulations with respect to

the Damages Claims; _provided_, that Doral Properties' admits, stipulates, and agrees that, for purposes of the Damages Claim in Doral Properties' chapter 11 case, the Indenture Trustee shall be deemed to have commenced foreclosure proceedings against the Prepetition Collateral under the laws of the Commonwealth of Puerto Rico immediately prior to the Petition Date;

c.  The Loan Agreement and the Pledge and Security Agreement are valid, binding, and subject to applicable bankruptcy law, enforceable against Doral Properties in accordance with their terms.

d.  Pursuant to the Pledge and Security Agreement, a Deed of Constitution of First Mortgage, dated November 3, 1999 (the "Mortgage Deed"), and a note issued thereunder (the "Mortgage Note", and together with the Mortgage Deed, the Pledge and Security Agreement, and the Loan Agreement, the "Loan Documents"), Doral Properties has granted valid, binding, perfected and enforceable first priority liens upon and security interests in (the "Prepetition Liens") the land, building, structures, and related assets located at 1451 FDR Avenue, San Juan, Puerto Rico, including Doral Properties' rights as landlord and other cash flows related to such assets (collectively, the "Prepetition Collateral").

e.  The Prepetition Liens are not subject to avoidance, subordination (equitable or otherwise), recharacterization, recovery, attack, offset, counterclaim, defense, challenge or Claim (as defined in section 101(5) of the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

f.  All cash proceeds of the Prepetition Collateral, including all such cash proceeds held in any of the Doral Properties' deposit accounts with financial institutions,

4

are cash collateral within the meaning of Bankruptcy Code section 363(a) (the "Cash Collateral").

g. The Indenture Trustee is entitled to adequate protection of its interest in the Prepetition Collateral, including the Cash Collateral, for any diminution resulting from the imposition of the automatic stay under Bankruptcy Code section 362 or Doral Properties' use of the Prepetition Collateral under Bankruptcy Code section 363 ("Diminution").

E.      Arm's-Length, Good Faith Negotiations. The terms of this Order were negotiated in good faith and at arm's-length between Doral Properties and the Indenture Trustee.

Based on the foregoing findings and conclusions, it is

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      Relief Granted. The Motion is GRANTED on an interim basis to the extent provided herein.

2.      Authorization to Use Cash Collateral. Doral Properties is authorized to use Cash Collateral from the Petition Date through and including February 19, 2016 (the "Budget Period"), in a manner consistent with the 13-week budget attached as Exhibit A (as such budget may be modified from time to time by the Debtors with the prior written consent of the Indenture Trustee, the "Budget"); provided, that Doral Properties is authorized to use Cash Collateral to pay all fees and expenses of attorneys, financial advisors, and other professionals authorized to be retained by final order of the Court by Doral Properties and authorized to be paid by orders of the Court and applicable law as they accrue, and such payments are deemed to be consistent with and in accordance with the Budget; provided, further, that (a) the actual amount for each line item for expenses in the Budget may exceed the budgeted amount by up to fifteen percent (15%)

so long as, for each week, the aggregate actual amount of all such line items does not exceed the aggregate budgeted amount by more than fifteen percent (15%) and (b) the actual amount for cash receipts in the Budget may be less than the budgeted amount by up to fifteen percent (15%), in each case measured on the close of business on each Friday for the preceding one-week period ending on such Friday. Any Cash Collateral authorized to be used in one week shall be available for use in subsequent weeks. The authorization to use Cash Collateral in accordance with the Budget includes, without limitation, authorization for Doral Properties to reimburse Doral Financial for professional fees incurred by Doral Financial with respect to past efforts on behalf of Doral Properties, as expressly listed in the Budget.

3.      <u>Authorization to Use Cash Collateral Following Sale Order</u>. Upon the effective date of a sale of all or substantially all of the Prepetition Collateral on the terms of the proposed sale order attached as Exhibit F to the Debtors' motion filed November 25, 2015 (Docket No. [-]) (the "<u>Proposed Sale Order</u>") or such other terms agreed to by the Indenture Trustee, such agreement not to be unreasonably withheld, the Indenture Trustee consents to Doral Properties' use of the Reserve (as defined in the Proposed Sale Order) to pay (i) the allowed fees and expenses provided for by the Carve Out, (ii) the fees and expenses of the Indenture Trustee (as provided in this Order) incurred after the effective date of the sale of the Prepetition Collateral, and (iii) allowed administrative expenses incurred by Doral Properties, including, without limitation, administrative expenses incurred on or after the effective date for the sale of the Prepetition Collateral in connection with a chapter 11 plan for Doral Properties' estate.

4.      <u>Adequate Protection</u>.

a.      <u>*Adequate Protection Liens*</u>. As adequate protection for any Diminution in the Prepetition Collateral, the Indenture Trustee is granted additional and

replacement valid, binding, enforceable, non-avoidable, and automatically perfected postpetition liens on and security interests in (the "Adequate Protection Liens") the Prepetition Collateral and any postpetition cash proceeds thereof (collectively, the "Collateral") to the extent of any such Diminution. The Adequate Protection Liens shall be junior only to the Prepetition Liens, the Carve Out (as defined below), and any other valid, binding, enforceable, non-avoidable, and perfected liens on or security interests in the Collateral existing as of the Petition Date ("Other Prepetition Liens").

b.    *Superpriority Claim*. As further adequate protection for any Diminution in the Prepetition Collateral, the Indenture Trustee is granted, to the extent provided in Bankruptcy Code sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in Doral Properties' chapter 11 case (the "Superpriority Claim") to the extent of any such Diminution; provided, that the Superpriority Claim shall be subject to the Carve Out.

c.    *Other Adequate Protection*. As further adequate protection for any Diminution in the Prepetition Collateral, Doral Properties shall pay (1) the reasonable fees and expenses of the Indenture Trustee, including the reasonable fees and expenses of Eckert Seamans Cherin & Mellott, LLC as counsel to the Indenture Trustee, incurred by the Indenture Trustee under the Loan Documents arising subsequent to the Petition Date and (2) up to $120,000 as reimbursement for the reasonable fees and expenses of legal counsel for the holders of bonds issued under the Trust Agreement (the "Bondholders"). The Indenture Trustee or the Bondholders, as applicable, must submit an invoice (redacted or summarized for privilege purposes) containing a summary of the work performed and expenses incurred to the Debtors, Official Committee of Unsecured Creditors for Doral Financial, and United States Trustee, each

of whom shall have ten (10) business days to object to the invoice in question by written notice

to counsel to the Debtors and counsel to the Indenture Trustee. If no timely objection is received,

Doral Properties shall pay such invoice within thirteen (13) business days after it was delivered.

If an objection is timely received, Doral Properties shall only be required to pay the undisputed

amount of the invoice and the Court shall have jurisdiction to determine the disputed portion.

5.    Carve Out. As used in this Order, "Carve Out" means the sum of: (i) all fees

required to be paid to the Clerk of the Court and to the United States Trustee under 28 U.S.C.

§ 1930(a) (collectively, "U.S. Trustee Fees"); (ii) in the event that Doral Properties' case is

converted to chapter 7, the fees and expenses of a chapter 7 trustee up to an amount of $50,000;

(iii) all allowed unpaid fees and expenses (whether allowed before or after the delivery of a

Carve Out Notice (as defined below)) incurred by persons or firms retained by Doral Properties

pursuant to Bankruptcy Code sections 327, 328, or 363 ("Professional Persons") at any time

before the first business day following delivery by the Indenture Trustee to Ropes & Gray LLP,

the United States Trustee, and Schulte, Roth & Zabel LLP of a written notice (the "Carve Out

Notice"), which notice may be delivered at any time following the delivery of a Default Notice

(as defined below), stating that an Event of Default has occurred; and (iv) the allowed unpaid

fees and expenses incurred by Professional Persons in an aggregate amount not to exceed

$150,000 (the "Post-Notice Cap") incurred after the first business day following delivery by the

Indenture Trustee of the Carve Out Notice. Upon delivery of a Carve Out Notice, Doral

Properties shall establish a reserve account with the Indenture Trustee (the "Carve Out Reserve")

of cash in an amount equal to the sum of (i) all accrued U.S. Trustee Fees; (ii) all billed and

unpaid monthly fees and expenses of Professional Persons (including any outstanding

holdbacks); (iii) all unbilled fees and expenses of Professional Persons incurred prior to delivery

8

of the Carve Out Notice; and (iv) the Post-Notice Cap (collectively, the "Carve Out Fees"). The

Carve Out Reserve shall be used exclusively to pay the allowed amount of the fees and expenses

covered by the Carve Out, until such fees and expenses have been paid in full.

6.    Events of Default. The occurrence of any of the following events, unless waived

by the Indenture Trustee, shall constitute a "Event of Default":

a.    Doral Properties' use of Cash Collateral in a manner inconsistent

with Paragraph 2;

b.    Doral Properties' failure to perform, in any material respect, its

obligations under this Order;

c.    Dismissal or conversion to chapter 7 of Doral Properties'

chapter 11 case, or the appointment of a chapter 11 trustee or examiner with expanded powers in

Doral Properties' chapter 11 case;

d.    Any stay, reversal, vacatur, or rescission of the terms of this Order;

e.    Entry of an order of this Court modifying, without consent of the

Indenture Trustee, the Adequate Protection Liens, the Superpriority Claim, or the other

provisions of this Order;

f.    Entry of an order of this Court authorizing Doral Properties to

obtain credit or incur debt that is secured by a security interest in or lien on all or any portion of

the Collateral which is equal or senior to the Prepetition Liens or the Adequate Protection Liens.

Upon the occurrence and during the continuance of an Event of Default, the Indenture Trustee

may deliver a written notice of such Event of Default (a "Default Notice"), which Default Notice

shall be given by email, facsimile, or other electronic means to Ropes & Gray LLP, the United

States Trustee, and Schulte, Roth & Zabel LLP. Upon receipt of a Default Notice, Doral

9

Properties shall immediately cease using Cash Collateral. Doral Properties shall have five (5) business days following delivery of a Default Notice to cure such Event of Default (the "Cure Period"). Following the expiration of the Cure Period, to the extent such Event of Default remains uncured, the Indenture Trustee may, absent further order of the Court, exercise the rights and remedies available under the Loan Documents, this Order, and applicable law. The automatic stay under Bankruptcy Code section 362 shall be deemed modified to the extent necessary to permit such actions. In any hearing regarding the exercise of remedies by the Indenture Trustee, the only issues that may be raised by Doral Properties in opposition thereto shall be (1) whether, in fact, an Event of Default shall have occurred and (2) what is the quantum of the Diminution.

7.    Sections 552(b) and 506(c); Marshaling. Doral Properties' rights to assert claims against the Indenture Trustee or the Prepetition Collateral under Bankruptcy Code section 506(c) or the "equities of the case" doctrine under Bankruptcy Code section 552(b) are hereby waived. In no event shall the Indenture Trustee be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the Prepetition Collateral.

8.    Challenge Period; Release. Other than Doral Properties, any party in interest approved by the Court to act as an estate representative for Doral Properties' estate may timely commence a proceeding (a "Challenge") to (x) challenge the amount, validity, enforceability, priority or extent of the Secured Debt or the Prepetition Liens or (y) assert any other claims or causes of action on behalf of Doral Properties' estate against AFICA or the Indenture Trustee, until the earlier of (i) sixty (60) days from the Petition Date or (ii) the date of the entry of an order of this Court approving a sale of all or substantially all of the Prepetition Collateral (the "Challenge Period"). Any party in interest seeking authorization to pursue a Challenge as an

10

estate representative must file a motion before the end of the Challenge Period. If such motion is allowed, the Challenge Period shall be tolled and extended only for such party in interest by fourteen (14) days, or such other amount of time as determined by the Court to be reasonable. If no such Challenge is timely commenced as of the end of the Challenge Period, then (i) Doral Properties and its estate shall be deemed to have released AFICA and the Indenture Trustee of and from any and all claims and causes of action of any nature whatsoever, both at law or in equity, whether known or unknown, which arose prior to the date hereof, including any claims under Chapter 5 of the Bankruptcy Code, and (ii) the foregoing release shall be binding upon Doral Properties, its estate, and its successors and assigns (including any chapter 7 or chapter 11 trustee appointed or elected for Doral Properties) and all other parties in interest.

9.    <u>No Stay; Order Immediately Effective</u>. Notwithstanding any applicable Bankruptcy Rules, the terms and conditions of this Order shall be effective and enforceable upon its entry.

10.    <u>Retention of Jurisdiction</u>. This Court has and will retain jurisdiction to enforce this Order in accordance with its terms.

Dated: _____, 2015
        New York, New York

_____
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

53941202_6

**<u>Exhibit A</u>**

**BUDGET**

**Doral Properties Inc.**
**13 Week Cash Flow Forecast**
**Summary**

| Week Ending | 11/27/15 Forecast | 12/4/15 Forecast | 12/11/15 Forecast | 12/18/15 Forecast | 12/25/15 Forecast | 1/1/16 Forecast | 1/8/16 Forecast | 1/15/16 Forecast | 1/22/16 Forecast | 1/29/16 Forecast | 2/5/16 Forecast | 2/12/16 Forecast | 2/19/16 Forecast | Total Thru 2/19/15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Actual/Forecast Week Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| **Cash Sources:** | | | | | | | | | | | | | | |
| Rent | $ - | $ 20,067 | $ - | $ - | $ - | $ - | $ 20,067 | $ - | $ - | $ - | $ - | $ - | $ - | 40,133 |
| Asset Sales | - | - | - | - | - | - | - | - | - | 20,300,000 | - | - | - | 20,300,000 |
| Other | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Sub Total - Cash Receipts** | $ - | $ 20,067 | $ - | $ - | $ - | $ - | $ 20,067 | $ - | $ - | $ 20,300,000 | $ - | $ - | $ - | $ 20,340,133 |
| **Cash Uses:** | | | | | | | | | | | | | | |
| Building Related Expenses | $ 91,250 | $ 37,600 | $ 106,250 | $ 10,250 | $ 1,250 | $ 36,350 | $ 91,250 | $ 16,250 | $ 1,250 | $ 36,350 | $ 2,750 | $ 106,250 | $ 132,350 | 669,400 |
| Taxes | - | - | - | - | - | - | - | - | - | 245,000 | - | - | - | 245,000 |
| Professional Services | - | - | - | - | - | - | - | - | - | - | 30,000 | - | - | 30,000 |
| AFICA Related Fees & Expenses | - | - | 150,000 | - | - | - | 30,000 | - | - | - | 30,000 | - | 30,000 | 240,000 |
| DFC Estate | - | - | 470,000 | - | - | - | - | - | - | - | - | - | - | 470,000 |
| Building Sale Related Expenses | - | - | - | - | - | - | - | - | - | 529,875 | - | - | - | 529,875 |
| Bankruptcy Related | - | - | - | 5,000 | - | - | - | 44,875 | - | - | - | 5,000 | 351,500 | 406,375 |
| **Sub Total - Cash Disbursements** | $ 91,250 | $ 37,600 | $ 726,250 | $ 15,250 | $ 1,250 | $ 36,350 | $ 121,250 | $ 61,125 | $ 1,250 | $ 811,225 | $ 62,750 | $ 111,250 | $ 513,850 | $ 2,590,650 |
| **Opening Book Cash** (Net of Estimated Float) | $ 2,849,435 | $ 2,758,185 | $ 2,740,651 | $ 2,014,401 | $ 1,999,151 | $ 1,997,901 | $ 1,961,551 | $ 1,860,368 | $ 1,799,243 | $ 1,797,993 | $ 21,286,768 | $ 21,224,018 | $ 21,112,768 | $ 2,849,435 |
| Operating Cash Generation / (Use) | (91,250) | (17,533) | (726,250) | (15,250) | (1,250) | (36,350) | (101,183) | (61,125) | (1,250) | 19,488,775 | (62,750) | (111,250) | (513,850) | 17,749,483 |
| **Ending Book Cash** (Net of Estimated Float) - Unrestricted | **$ 2,758,185** | **$ 2,740,651** | **$ 2,014,401** | **$ 1,999,151** | **$ 1,997,901** | **$ 1,961,551** | **$ 1,860,368** | **$ 1,799,243** | **$ 1,797,993** | **$ 21,286,768** | **$ 21,224,018** | **$ 21,112,768** | **$ 20,598,918** | **$ 20,598,918** |

**Exhibit B**

ROPES & GRAY LLP
Mark I. Bane
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090

-and-

James A. Wright III
Meredith S. Tinkham (*pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617) 951-7050

*Counsel to Doral Financial Corporation and
Proposed Counsel to Doral Properties, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Doral Financial Corporation, et al.,[1] | : | Case No. 15-10573 (SCC) |
| | : | |
| Debtors. | : | (Joint Administration Requested) |

-----------------------------------------------x

## DECLARATION OF SCOTT MARTINEZ IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF THE INTERIM ORDER APPROVING USE OF CASH COLLATERAL BY DORAL PROPERTIES, INC.

I, Scott Martinez, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct to the best of my knowledge:

1.        I am the Chief Restructuring Officer for Doral Properties, Inc. ("Doral Properties") and an employee and director of Zolfo Cooper, LLC, the direct parent of Zolfo Cooper Management, LLC, a New Jersey limited liability company (collectively, "Zolfo

---

[1] The last four digits of the taxpayer identification number of the Debtors are: Doral Financial Corporation (2162); Doral Properties, Inc. (2283).

Cooper"). The information included in this declaration (the "Declaration") concerning the Debtors is based upon my personal knowledge, information supplied to me by members of the Debtors' management or its professionals, my review of relevant documents, or my opinion based upon my personal experience and knowledge of the Debtors' operations and financial condition.

2.      I make this Declaration in support of the Debtors' *Motion for Entry of the Interim Order Approving Use of Cash Collateral by Doral Properties, Inc.* (the "Motion").[2] By the Motion, the Debtors seek entry of an interim order (the "Interim Order") authorizing Doral Properties to use cash collateral and granting adequate protection to UMB Bank, N.A. ("UMB"), in it is capacity as trustee under the Trust Agreement (as defined below) (the "Indenture Trustee").

3.      Doral Properties has an immediate and critical need to use the Cash Collateral for working capital purposes and for the costs and expenses of administering its chapter 11 case, both in a manner consistent with the 13-week budget included as Exhibit A to the Interim Order (as such budget may be modified from time to time by the Debtors with the prior written consent of the Indenture Trustee, the "Budget").

4.      By the Motion, Doral Properties proposes granting protection to the Indenture Trustee through (a) additional and replacement valid, binding, enforceable, non-avoidable, and automatically perfected postpetition liens on and security interests in the prepetition collateral and any postpetition cash proceeds thereof to the extent of any Diminution, (b) an allowed superpriority administrative expense claim, to the extent provided in Bankruptcy Code sections 503(b) and 507(b) of the Bankruptcy Code, in Doral Properties' chapter 11 case to

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

54145888_3

the extent of any Diminution, <u>provided</u>, that the superpriority claim shall be subject to the carve out provided for in the proposed cash collateral order, and (c) a right to payment of the reasonable postpetition fees and expenses of the Indenture Trustee, including the reasonable fees and expenses of Eckert Seamans Cherin & Mellott, LLC, the Indenture Trustee's counsel, incurred by the Indenture Trustee under the Loan Documents.

5.      Approval to use cash collateral will permit Doral Properties to pursue an auction sale of substantially all of its assets, which I believe will produce the best possible value for those assets.

6.      I believe the proposed package of adequate protection is appropriate, a reasonable exercise of Doral Properties' business judgment, and will provide adequate protection to the Indenture Trustee from any Diminution. I further believe the relief requested in the Motion is necessary and appropriate and is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest.

Dated: November 24, 2015

Scott Martinez
Chief Restructuring Officer

54145888_3