## **Exhibit E**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Doral Financial Corporation, et al. [1] | : | Case No. 15-10573 (SCC) |
| | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------x

**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE
OF CERTAIN REAL ESTATE ASSETS, (II) APPROVING BREAKUP FEES
AND EXPENSE REIMBURSEMENTS (III) APPROVING THE FORM AND MANNER
AND NOTICE, AND (IV) SCHEDULING AN AUCTION AND A SALE HEARING**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-

possession (the "Debtors"), dated November 25, 2015 [Docket No. [ ]], for entry of an order

(a) authorizing and approving the bidding procedures for the Sales, (b) approving Breakup Fees

and Expense Reimbursements, (c) approving the form and manner of notice of the Auction and

Sale Hearing, and (d) scheduling an Auction and a Sale Hearing, as more fully set forth in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

pursuant to 28 U.S.C. § 1334; and consideration of the Motion being a core proceeding pursuant

to 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408

and 1409; and the Court having found that no other or further notice is needed or necessary; and

the Court having reviewed the Motion and the Flaton Declaration and having heard statements in

support of the Motion at a hearing held before the Court (the "Bid Procedures Hearing"); and

upon the entire records of these chapter 11 cases; and the Court having determined that the legal

and factual bases set forth in the Motion and at the Bid Procedures Hearing establish just cause

---

[1] The last four digits of the taxpayer identification number of the Debtors are: Doral Financial Corporation (2162);
Doral Properties, Inc. (2283).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

for the relief granted herein; and the relief requested in the Motion being in the best interests of
the Debtors' estates, their creditors, and other parties in interest; and any objections to the relief
requested in the Motion having been withdrawn or overruled on the merits; and after due
deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, THAT:**

1.      The Motion is GRANTED to the extent provided herein.

2.      The Debtors' entry into each of the Stalking Horse Agreements with Banco
Popular de Puerto Rico (the "Stalking Horse") is hereby approved.

3.      Payment of the Breakup Fees and Expense Reimbursements in accordance with
the Stalking Horse Agreements is hereby approved, and the Breakup Fees and Expense
Reimbursements are authorized and directed to be paid at the time and under the circumstances
set forth in the Stalking Horse Agreements, without further order of the Court. The Breakup Fees
and Expense Reimbursements shall be entitled to priority under Bankruptcy Code sections
503(b) and 507(a)(2).

4.      At and during the Auction, the amount of the applicable Breakup Fees and
Expense Reimbursements shall be considered as if added to the Stalking Horse's bids for the
Buildings and OA Parking Lot, as applicable, in determining whether any bid of the Stalking
Horse for either the Buildings or OA Parking Lot is a higher or better offer.

5.      The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**,
are hereby approved. The Bidding Procedures shall govern the submission, receipt and analysis
of all bids relating to the Sales of the Buildings and the OA Parking Lot, and any party desiring
to submit a higher or better offer for the Buildings or OA Parking Lot shall do so strictly in
accordance with the terms of the Bidding Procedures and this Order.

53842743_10

6.      As described in the Bidding Procedures, if the Debtors do not receive any bids other than from the Stalking Horse, or if no bidder other than the Stalking Horse indicates its intent to participate in the Auction, the Debtors will not hold the Auction, the Stalking Horse will be named the Successful Bidder and the Debtors will seek approval of the Stalking Horse Agreement at the Sale Hearing. If one or more bids is timely received from a bidder (other than the Stalking Horse) in accordance with the Bidding Procedures, the Debtors shall conduct the Auction as set forth herein.

7.      If the Auction is conducted, each bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the proposed Sales. The Auction will be conducted openly and shall be transcribed, audiotaped or videotaped.

8.      Any entity submitting a bid to the Debtors at or before the Auction shall be deemed to have reviewed the Bid Procedures and to have submitted to the jurisdiction of this Court, and the submission of such a bid shall be the submitting entity's consent to entry of a final order or judgment by the Court, for the adjudication of all disputes relating to the Motion, the Bid Procedures, this Order, or the sale of the Buildings and OA Parking Lot.

9.      The Auction and Sale Notice, substantially in the form attached hereto as **Exhibit 2**, and the manner of service of the same as proposed in the Motion are hereby approved.

10.      Within two (2) business days of entry of this Bidding Procedures Order, the Debtors shall serve the Auction and Sale Notice by email or first class mail upon the following parties: (i) the Office of the United States Trustee for the Southern District of New York, (ii) the Internal Revenue Service, (iii) the United States Attorney for the Southern District of New York, (iv) counsel to the UCC, (v) the U.S. Securities and Exchange Commission, (vi) any party

3

known or reasonably believed to have asserted any lien, claim, or encumbrance or other interest in the Buildings or the OA Parking Lot, (vii) counsel to the indenture trustees for the Doral Notes and AFICA Bonds (including UMB Bank, N.A.), (viii) parties required by Bankruptcy Rule 2002(a), and (ix) any parties who have expressed interest in any of the Buildings or the OA Parking Lot.  Such service shall be deemed to be adequate and sufficient notice of the Auction and Sales.

11.     Nothing in this Order shall impact the *Stipulation and Order Providing for Preservation of Documents and Other Evidence* [Dkt. No. 249] (the "<u>Preservation Order</u>") or the Debtors' obligations under the Preservation Order.

12.     The Debtors are authorized, empowered, and directed to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

13.     Notwithstanding any Bankruptcy Rules to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     The Court retains jurisdiction with respect to all matters arising from, or related to, the implementation and interpretation of this Order.

Dated: _____, 2015
   New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

4

## Exhibit 1 to Bidding Procedures Order

**Bidding Procedures**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

In re                                              :          Chapter 11
                                                   :
Doral Financial Corporation, et al.[1]             :          Case No. 15-10573 (SCC)
                                                   :
                     Debtors.                      :          (Jointly Administered)

------------------------------------------------------x

## BIDDING PROCEDURES

The following bidding procedures shall apply in connection with any initial overbids or counteroffers for the Buildings and the OA Parking Lot:[2]

1.  Any initial counteroffer or overbid for the Buildings (a "Building Counteroffer") or the OA Parking Lot (a "Parking Lot Counteroffer" and together with a Building Counteroffer, each a "Counteroffer") shall comply with the following requirements:

    1.1.  Any Building Counteroffer shall provide for a purchase price with a minimum cash or cash equivalent component payable at closing equal to the sum of (i) $20,300,000 plus (ii) $850,000.00, on account of the Breakup Fee and Expense Reimbursement, plus (iii) $450,000,000;

    1.2.  Any Parking Lot Counteroffer shall provide for a purchase price with a minimum cash or cash equivalent component payable at closing equal to the sum of (i) $1,500,000 plus (ii) $80,000;

    1.3.  Counteroffers may not include a requirement for a breakup fee, topping fee, expense reimbursement, or similar bid protection; and

    1.4.  A Parking Lot Counteroffer may be conditioned upon the bidder winning the auction for the Building and being approved by the Court as the successful purchaser of the Building. A Building Counteroffer, however, may not be conditioned upon the bidder winning the auction for the OA Parking Lot.

    1.5.  Any Counteroffer shall be accompanied by a deposit in the amount of five percent of the initial bid, delivered to the Debtors, by certified or cashier's check or wire transfer, so as to be received on or before January 11, 2016, the last business day prior to the first scheduled date of the Auction (as defined below).

---

[1] The last four digits of the taxpayer identification number of the Debtors are: Doral Financial Corporation (2162); Doral Properties, Inc. (2283).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the order approving these bidding procedures.

1.6. Any Building Counteroffer shall include agreement by the proposed buyer to, upon and continuing after Closing, accept the assignment of (and the proposed buyer's assumption of Doral Properties, Inc.'s obligations under) the Lease Agreement, dated July 31, 2015, between Doral Properties, Inc., and Banco Popular de Puerto Rico (as amended, the "Lease"), which lease agreement provides for the lease of the bank branch and certain related space at the Building through April 30, 2016. A copy of the Lease is available upon request.

2. Any Counteroffer shall further comply with all of the following requirements; provided, that the Debtors may, in their discretion exercised in good faith and in consultation with counsel to the official committee of unsecured creditors (the "UCC") and in the case of the Building, counsel to UMB Bank, N.A., the trustee for the 1999 AFICA Bonds (the "Indenture Trustee") and without further order of the Court, waive any such requirements:

2.1. Any Counteroffer shall:

2.1.1. be in writing and be served on counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Mark I. Bane; Ropes & Gray LLP, so as to be received on or before 12:00 noon (Prevailing Eastern Time) on January 8, 2016 (the "Bid Deadline"), two business days prior to the first scheduled date of the Auction; and

2.1.2. be accompanied by (ii) executed asset purchase agreement(s) (the "Counteroffer Asset Purchase Agreement") and executed copies of all other transaction documents necessary to effect the proposed transaction (including all schedules) and a copy of the relevant Stalking Horse Agreements marked to show all changes requested by the bidder (including those related to purchase price); (ii) an executed confidentiality agreement; and (iii) written evidence of a commitment for financing or other evidence of the party's ability to consummate the transaction and payment of the purchase price at the Closing.

2.2. The terms and conditions of any Counteroffer must be, in aggregate, not materially more burdensome to Seller than provisions contained in the relevant Stalking Horse Agreement.

2.3. Any entity submitting a Counteroffer shall demonstrate, to the Debtors' satisfaction and in the Debtors' sole discretion exercised in good faith, that such entity is able to consummate the transaction(s) on the date and on the terms contemplated by the Counteroffer Asset Purchase Agreement(s).

2.4. Any entity submitting a Counteroffer shall agree to serve as a back-up bidder (the "Back-up Bidder") if such entity is designated as the second highest bidder at the Auction (as defined below). The Back-up Bidder's deposit shall be held until the earlier of (x) the closing of a transaction with the winning bidder and (y) twenty (20) days from the date of the Auction. Notwithstanding the foregoing, the Stalking Horse shall not be required to serve as the Back-up Bidder, and in the event that the

2

Stalking Horse is designated as the second highest bidder at auction, then the third highest bidder, if any, will serve as the Back-up Bidder.

3.  Auctions (the "Auctions") for the Buildings and the OA Parking Lot will be conducted in order as described in the Motion by the Debtors at the offices of their counsel, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY, on January 12, 2016 at 10:00 a.m. (Prevailing Eastern Time), or at such other date and time as determined by the Debtors in their sole discretion, exercised in good faith and after consultation with the UCC. The Debtors will send notice by electronic mail to the Notice Parties and counsel to any entity that has submitted a Counteroffer if the date, time, or place of the Auctions changes.

3.1.  The Debtors and their professionals will direct and preside over the Auctions.

3.2.  If the Debtors select a Counteroffer as the highest and best bid at the commencement of either Auction, the Debtors must disclose such bid (including a copy of the Counteroffer Asset Purchase Agreement) to the Stalking Horse and its counsel no later than two (2) business days before the Auctions.

3.3.  Each Stalking Horse Agreement and Stalking Horse bid at the Auction shall be deemed to be a qualified bid at the relevant Auction.

3.4.  At the Auctions, the Debtors, after consultation with counsel to the UCC, may announce additional procedural or bidding rules for an Auction so long as the rules are not inconsistent with these Bid Procedures. The Debtors shall maintain a transcript of all bids made and announced at the Auctions. Bidding at the Auctions shall be conducted on an open basis with all bidders entitled to be present.

3.5.  Each bidder participating at the Auctions must attend in person through a duly authorized representative and certify on record at the commencement of the Auctions that it has not and will not engage in any collusion with respect to the bidding or the sale.

3.6.  The Debtors will continue the Auctions until there is one bid, or a collection of bids, for the Buildings or OA Parking Lot, as the case may be, that the Debtors determine in their sole discretion, exercised in good faith and after consultation with counsel to the UCC, and (in the case of the Building) with the Indenture Trustee, to be the highest or otherwise best bid for the subject Asset.

3.7.  The applicable Breakup Fees and Expense Reimbursements will be credited to the Stalking Horse's bid(s) at the Auction for the Building.

3.8.  Each subsequent bid at an Auction must comply with the requirements for a Counteroffer set forth herein.

4.  A hearing to consider approval of the sales of the Buildings and the OA Parking Lot pursuant to the Stalking Horse Agreements or to other bidders submitting higher and better offers at the Auctions, and any objections to such sales, will be held on [January 14, 2016],

3

at [--]:00 p.m. (Prevailing Eastern Time) at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10002.

## Exhibit 2 to Bidding Procedures Order

**Form of Auction and Sale Notice**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x

In re                                          :        Chapter 11
                                               :
Doral Financial Corporation, et al.[1]         :        Case No. 15-10573 (SCC)
                                               :
                                               :
                 Debtors.                      :        (Jointly Administered)

------------------------------------------------------x

## NOTICE OF SALES BY AUCTION AND SALE HEARING

       PLEASE TAKE NOTICE that, on November 25, 2015, Doral Financial Corporation and Doral Properties, Inc. (collectively, the "Debtors") in the above-captioned chapter 11 cases filed a motion [Docket No. [ ]] (the "Bid Procedures Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (a) authorizing and approving the bidding procedures for the sale of the building and land located at 1451 F. D. Roosevelt Avenue, San Juan, Puerto Rico, and two (2) warehouse buildings and land located in the Desarollo Industrial Constituciòn, San Patricio Ward, San Juan, Puerto Rico (collectively, the "Buildings"), and an open air parking lot adjacent to the Buildings (the "OA Parking Lot"), (b) approving the form and manner of notice of the Auction and Sale Hearing, and (c) scheduling an Auction and a Sale Hearing and setting other related dates and deadlines all as further described in the Bid Procedures Motion. On December [ ] 2015, the Bankruptcy Court entered an order (the "Bidding Procedures Order")[2] approving certain bidding procedures attached thereto as Exhibit 1 (the "Bidding Procedures").

       Copies of the Bid Procedures Motion, Bidding Procedures Order, and other documents related thereto are available free of charge on the website of the Debtors' noticing and claims agent, Garden City Group, at http://cases.gcginc.com/dor/.

       PLEASE TAKE FURTHER NOTICE that the Debtors are soliciting offers for the purchase of the Buildings and the OA Parking Lot. All interested bidders should carefully read the Bid Procedures Motion, Bidding Procedures and Bidding Procedures Order. To the extent there are any inconsistencies between this notice and the Bidding Procedures, the latter shall govern in all respects.

       PLEASE TAKE FURTHER NOTICE that, if the Debtors receive competing bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct auctions (the "Auctions") for the sale of the Buildings and OA Parking Lot on January 12, 2016,

---

[1] The last four digits of the taxpayer identification number of the Debtors are: Doral Financial Corporation (2162); Doral Properties, Inc. (2283).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order.

2015 at 10:00 a.m. (prevailing Eastern Time) at the offices of counsel to the Debtors: Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036.

PLEASE TAKE FURTHER NOTICE that the Debtors will seek approval of the sales of the Buildings and OA Parking Lot at a hearing scheduled to commence on [January 14, 2016], 2015 at [--]:00 p.m. (prevailing Eastern Time) (the "Sale Hearing") or as soon thereafter as counsel may be heard, before the Honorable Shelley C. Chapman, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections to the proposed Sales if any, must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and the Case Management Order [Docket No. 74] entered in this chapter 11 case; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) filed with the Court and served so the objection is actually received no later than 4:00 p.m. on January 7, 2016 (prevailing Eastern Time) (the "Sale Objection Deadline") by the following parties (the "Notice Parties"): (i) counsel to the Debtors, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Mark I. Bane, (ii) counsel to the UCC, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022, Attn: Brian D. Pfeiffer; (iii) counsel to UMB Bank, N.A., Eckert Seamans Cherin & Mellott, LLC, 10 Bank Street, Suite 700, White Plains, NY 10606, Attn: Chris Graham; and (iv) parties required by Bankruptcy Rule 2002(a).

## CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION

Any party or entity who fails to timely file and serve an objection to the Sale of the Buildings and the OA Parking Lot on or before the Sale Objection Deadline in accordance with the Bidding Procedures Order shall be forever barred from asserting any objection to such Sale, including with respect to the transfer of property free and clear of all liens, claims, encumbrances and other interests.

Dated: December [ ], 2015
New York, New York

/s/ DRAFT

ROPES & GRAY LLP
Mark I. Bane
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
Email: mark.bane@ropesgray.com

-and-

James A. Wright III
Meredith S. Tinkham (*pro hac vice*)

Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617) 951-7050
Email: james.wright@ropesgray.com
meredith.parkinson@ropesgray.com

*Counsel to the Debtors*