**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
| In re | : | Chapter 11 |
| | : | |
| Doral Financial Corporation, et al.,[1] | : | Case No. 15-10573 (SCC) |
| | : | |
| Debtors. | : | (Jointly Administered) |
------------------------------------------------------x

**ORDER AUTHORIZING AND APPROVING THE SALE OF**
**CERTAIN REAL ESTATE ASSETS FREE AND CLEAR OF LIENS, CLAIMS,**
**ENCUMBRANCES AND INTERESTS AND GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors-in-possession (the "Debtors"), dated November 25, 2015 (Docket No. 400), for entry of an order approving the sale (i) by Doral Properties, Inc. ("Doral Properties") of an office building, parking deck, related land and other related assets located at 1451 Franklin D. Roosevelt Avenue in San Juan, Puerto Rico and recorded in the Registry of Property of Puerto Rico, Third Section of San Juan (the "Registry") at volume ("tomo móvil") 17 of Monacillos, property number 26,053, and (ii) by Doral Properties of two (2) adjacent but independent warehouse buildings, related land and other related assets located in the Desarrollo Industrial Constitución, San Patricio Ward, San Juan, Puerto Rico and recorded, respectively, in the Registry at page 22 of volume 914 of Monacillos, property number 16,696 and page 6, overleaf, of volume 466 of Monacillos, property number 17,301 ((i) and (ii), together, the "Buildings"), and (iii) by Doral Financial Corporation ("Doral Financial") of an open air parking lot which is adjacent to the Buildings and recorded in the Registry at volume ("tomo móvil") 25 of Monacillos, property number 26,086 (the "OA Parking Lot", and together with the Buildings, the "Assets", and each

---

[1] The last four digits of the taxpayer identification number of the Debtors are: Doral Financial Corporation (2162); Doral Properties, Inc. (2283).

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

individually, an "Asset"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Debtors have provided all notices required by title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and that no other or further notice is needed or necessary; and the Court having reviewed the Motion, the declaration of Carol Flaton submitted in support of the Motion (the "Flaton Declaration"), and the declaration of Jorge A. Rivera in support of the Motion; and the Court having heard the proffers and other statements in support of the Motion at a hearing held before the Court on January 14, 2016 (the "Sale Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors, and other parties in interest; and any objections to the relief requested in the Motion having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

      A.    Notice. As shown by the certificates of service filed with the Court and the representations or proffers made on the record at the Sale Hearing, proper, timely, adequate, due and sufficient notice of the Motion, the Court's previous order approving bid procedures (Docket No. 414) (the "Bid Procedures Order"), the auction for the Assets (the "Auction"), the Sale Hearing, and the proposed sales of the Assets (the "Sales") has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006 and 9007,

the procedural due process requirements of the United States Constitution, and the Bid Procedures Order to all persons and entities entitled to such notice, including, without limitation: (i) the Office of the United States Trustee for the Southern District of New York, (ii) the Internal Revenue Service, (iii) the United States Attorney for the Southern District of New York, (iv) counsel to the Official Committee of Unsecured Creditors (the "Committee"), (v) the U.S. Securities and Exchange Commission, (vi) any party known or reasonably believed to have asserted any lien, claim, or encumbrance or other interest in the Buildings or the OA Parking Lot, (vii) counsel to the indenture trustees for any of the Doral Notes and AFICA Bonds (both as defined in the Motion), (viii) parties required by Bankruptcy Rule 2002(a), and (ix) any parties who have expressed interest in any of the Assets. No other or further notice of the relief granted herein, including, without limitation, with respect to the Motion, the Bid Procedures Order, the Auction, the Sale Hearing or the Sales, is necessary or shall be required.

B.     Opportunity to Object. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all parties in interest.

C.     Title to Assets. The Buildings are property of Doral Properties' estate and title thereto is vested in such estate within the meaning of section 541(a) of the Bankruptcy Code. Ownership of the OA Parking Lot is disputed between Doral Financial and the Federal Deposit Insurance Corporation, in its capacity as Receiver of Doral Bank Puerto Rico (the "FDIC-R"). Pursuant to a *Stipulation and Agreed order Regarding Proceeds of Proposed Sale of Certain Assets* (the "FDIC Stipulation"), (Docket No. 483), FDIC-R and Doral Financial have agreed and stipulated that the Purchaser (as defined below) will take title to the OA Parking Lot pursuant to this Order free and clear of any ownership interest, liens, claims, encumbrances or other interests of FDIC-R. As a result, regardless of whether Doral Financial or FDIC-R is ultimately

3

determined to have ownership of the OA Parking Lot prior to entry of this Order, upon the entry of this Order title shall be transferred to the Purchaser.

   D.  Opportunity to Bid. The Debtors and their professionals marketed the Assets and conducted the marketing and sale process as set forth in the Sale Motion and the Flaton Declaration and in accordance with the Bid Procedures Order. Any party interested in bidding on any Asset was provided, upon request, sufficient information by the Debtors and their professionals to make an informed judgment as to whether to bid on such Asset, subject only to entry into a reasonable confidentiality agreement. Several parties conducted diligence regarding the Assets. Ultimately, one counteroffer was received for the Assets, but the bid was withdrawn prior to the Auction due to the bidder's inability to resolve a condition to its bid. As a result, and in accordance with the Bid Procedures Order, the Auction was cancelled and the stalking horse bidder was declared the winner. Based upon the record of these proceedings, all parties in interest and all prospective bidders or purchasers have been afforded a full, fair, and reasonable opportunity to bid for the Assets, and the process employed by the Debtors and their professionals, including, without limitation, the process set forth in the Bid Procedures Order, in connection with the Sales was adequate and reasonable to obtain the highest and best price for each Asset.

   E.  Highest and Best Bid. Banco Popular de Puerto Rico (the "Purchaser"), the stalking horse bidder, submitted the highest and best bid for the Buildings pursuant to the asset purchase agreement attached as Exhibit A (the "Building APA"). Banco Popular de Puerto Rico also submitted the highest and best bid for the OA Parking Lot pursuant to the asset purchase agreement attached as Exhibit B (the "Parking Lot APA", and together with the Building APA, the "APAs").

F. <u>Business Justification</u>. The Debtors have demonstrated good and sufficient cause to sell the Assets to the Purchaser, enter into the APAs, and consummate the Sales. Such actions are an appropriate and reasonable exercise of the Debtors' business judgment and are in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

G. <u>Good Faith Purchaser; Sale Price Not Controlled</u>. The APAs and the Sales have been negotiated by the Debtors and Purchaser and entered into in good faith, at arm's length, and without collusion or fraud. The Assets were fully marketed, all interested bidders had a full and fair opportunity to bid on each Asset, and the Debtors were free to deal with any other party interested in purchasing the Assets. The terms and conditions of the APAs and the Sales, including the total consideration realized by the Debtors pursuant to the APAs, are fair and reasonable, and the Sales are in the best interests of the Debtors, their estates, and their creditors. All payments to be made by the Purchaser in connection with the Sales have been disclosed. The Purchaser is a purchaser for value and in "good faith," as that term is used in the Bankruptcy Code and decisional law thereunder, will be acting in good faith pursuant to section 363(m) in closing the respective Sale at any time on or after entry of this Order, and is entitled to the protections of section 363(m) of the Bankruptcy Code.

H. <u>No Collusion</u>. The sale price of the Assets was not controlled by an agreement between potential or actual bidders within the meaning of section 363(n) of the Bankruptcy Code. None of the Debtors or the Purchaser have engaged in any conduct that would cause or permit the APAs or the consummation of the Sales to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

I. <u>Free and Clear</u>. Except with respect to Permitted Exceptions (as defined in the respective APAs), each of the Sales of the Assets to the Purchaser will be, as of the respective

closing, a legal, valid and effective transfer of such Assets, and each such transfer and assignment vests or will vest the Purchaser with all right, title and interest of the Debtors to the respective Asset, as applicable, free and clear of all liens, claims, interests, and encumbrances, including, without limitation, the Mortgage described in <u>Exhibit C</u> attached hereto and any rights or claims of any alleged tenants regarding the OA Parking Lot (collectively, "<u>Encumbrances</u>"), with any Encumbrances to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as of the Effective Date (as defined below) of the respective Sale. Except with respect to Permitted Exceptions, the Purchaser would not enter into the APAs to acquire the Assets if the Sales of the Assets were not free and clear of all Encumbrances, or if the Purchaser would, or in the future could, be liable for any such Encumbrances. A sale of the Assets other than one free and clear of all Encumbrances (except Permitted Exceptions) would adversely impact the Debtors' estates and would likely yield substantially less value for the Debtors' estates, with less certainty than the proposed Sales. Without expeditious Sales of the Assets free and clear of all Encumbrances (except Permitted Exceptions), there will be a substantial diminution in the value of the Assets to the detriment of the Debtors and their estates and creditors.

    J.  <u>Satisfaction of Section 363(f)</u>. The Debtors may sell the Assets free and clear of Encumbrances (except Permitted Exceptions) as provided in this Order and the APAs because one or more of the provisions set forth in section 363(f) of the Bankruptcy Code have been satisfied with respect to each of the Encumbrances. Those holders of Encumbrances who did not object or who withdrew their objections to the Motion are deemed to have consented to the Motion, the Sales of the Assets, and the consummation of the Sales pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances who did object, if any, fall within one

or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Encumbrances, if any, attach to the proceeds of the Sales ultimately attributable to the Assets in which such holders allege Encumbrances, in the same order of priority, with the same validity, force and effect that such holder had before the Sales, and subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

      K.      <u>No Insiders; Successor Liability</u>.  The Debtors and the Purchaser do not have any common controlling shareholders or senior management.  The Purchaser is not an insider, as that term is defined in section 101 of the Bankruptcy Code and the decisional law thereunder. The Purchaser is not a mere continuation of the Debtors; there is no continuity of enterprise between the Debtors on the one hand, and the Purchaser on the other hand; the Purchaser is not a successor to the Debtors; and the Sales under the APAs do not amount to, or otherwise constitute, a consolidation, merger, or *de facto* merger of the Purchaser on the one hand and the Debtors on the other hand.

      L.      <u>No Fraudulent Transfer</u>.  The Sales are transfers for reasonably equivalent consideration and fair value, are not for the purpose of hindering, delaying or defrauding creditors, and none of the Debtors or the Purchaser is or will be entering into the Sales fraudulently.

      M.      <u>Fair Consideration</u>.  The terms and conditions of the APAs, including the total consideration to be realized by the Debtors' estates pursuant to the APAs, are fair and reasonable, and together with the Purchaser's payment of the purchase prices under the APAs, constitute full, adequate and fair consideration and reasonably equivalent value for the transfer and Sale to the Purchaser of the Assets, including for purposes of sections 544 and 548 of the Bankruptcy Code. The APAs represent fair and reasonable offers to purchase the Assets under

7

the circumstances of the Debtors' cases. Approval of the APAs and consummation of the transactions described therein is in the best interest of the Debtors, their creditors, the Debtors' estates, and all other parties in interest.

N.        Final Order; No Stay. This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). The Sales of the Assets must be approved and completed promptly so as to maximize the value of the assets to the Debtors' estates. Consistent with Bankruptcy Rule 6004(h), and to the extent necessary under Bankruptcy Rule 9014 and any rule of procedure made applicable thereby, the Court finds that there is no just reason for delay in implementation of this Order and that waiver of any applicable stay or other waiting period is appropriate.

O.        Compliance with Bankruptcy Code. The consummation of the Sales is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation, sections 363(b), 363(f), and 363(m), and all of the applicable requirements of such sections have been or will be complied with in respect of the Sales.

Based on the foregoing findings and conclusions, it is

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.        Relief Granted. The Motion is GRANTED to the extent provided herein.

2.        Approval and Authorization. The APAs and the Sales are approved in all respects. The Debtors are authorized to enter into the respective APAs, to perform their respective obligations under the APAs, and to execute such other documents and take such other actions as are necessary to effectuate the terms of the APAs and the sale transactions contemplated thereby, without further order of the Court.

3. <u>Payment of Buildings Purchase Price to Indenture Trustee; Reserve</u>. On the Effective Date of the Sale of the Buildings, the Purchaser shall pay (a) $1,000,000 of the Purchase Price (as defined in the Building APA) to Doral Properties, by wire transfer into the "Doral Properties Inc Debtor In Possession Account" at UMB Bank, N.A. (the "<u>Reserve</u>"), and (b) the remainder of the proceeds of the Building APA to the Indenture Trustee by wire transfer into an account designated by the Indenture Trustee, and such funds shall be applied by the Indenture Trustee first to the fees and expenses incurred through such date by the Indenture Trustee, and the balance to the Secured Debt (as defined in the Interim Order Approving Use of Cash Collateral by Doral Properties, Inc., dated December 4, 2015 (Docket No. 418) (the "<u>Cash Collateral Order</u>")) as provided in the Loan Documents (as defined in the Cash Collateral Order); <u>provided</u>, <u>however</u>, that such payment shall be subject to disgorgement in connection with a Challenge (as defined in the Cash Collateral Order) made by the Committee, which, notwithstanding the terms of the Cash Collateral Order, shall be considered timely if made by the Committee no later than 30 days after the entry of this Order. All amounts held in the Reserve shall be held by Doral Properties pending further order of this Court and remain subject to the liens of the Indenture Trustee and the Cash Collateral Order. The Indenture Trustee hereby consents to Doral Properties' use of the Reserve to pay (i) the allowed fees and expenses provided for by the Carve Out (as defined in the Cash Collateral Order), (ii) the fees and expenses of the Indenture Trustee (as provided in the Cash Collateral Order) incurred after the Effective Date of the Sale of the Buildings, and (iii) allowed administrative expenses incurred by Doral Properties, including, without limitation, administrative expenses incurred on or after the Effective Date for the Sale of the Buildings in connection with a chapter 11 plan for Doral Properties' estate. For the avoidance of doubt, the proceeds of the Parking Lot APA shall be paid

9

to Doral Financial. For the avoidance of doubt, on and after the Effective Date the Debtors shall pay promptly when due their respective Transfer Costs and Prorations in accordance with Article XIII of the APAs.

4. <u>Valid Transfers</u>. Pursuant to sections 105(a) and 363 of the Bankruptcy Code, each of the Sales and transfers of the Assets to the Purchaser pursuant to the respective APAs on the respective Sale closing dates (the "<u>Effective Dates</u>", and each an "<u>Effective Date</u>") is, and shall be, a legal, valid and effective disposition and transfer of the Assets, notwithstanding any requirement for approval or consent by any person, and shall vest the Purchaser with all right, title and interest of the Debtors and their estates to and in the respective Assets, free and clear of all Encumbrances (except Permitted Exceptions).

5. <u>Transfer of Title and Interests</u>. On the respective Effective Dates, this Order is and shall be considered and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the respective Asset, and/or a bill of sale or assignment transferring indefeasible title and interest in the respective Asset, to the Purchaser.

6. <u>Free and Clear</u>. Pursuant to section 363(f) of the Bankruptcy Code, the Sales of the respective Assets pursuant to the respective APAs and this Order shall be free and clear of any and all Encumbrances except the Permitted Exceptions. All such Encumbrances (except the Permitted Exceptions) on and in respect of the Assets shall attach to the proceeds of the Sale of the Assets pursuant to this Order to the same extent and with the same priority as such Encumbrances existed in respect of the Assets immediately before the Effective Date. In addition, pursuant to the FDIC Stipulation, the ownership interests of the FDIC-R in the OA Parking Lot, if any, will attach to the proceeds of the Sale of the OA Parking Lot, less (1) the brokerage fees incurred by Doral Financial related to the Sale of the OA Parking Lot, (2) the

professional fees and expenses incurred by Doral Financial in the Sale of the OA Parking Lot, and (3) any transfer taxes or other reasonable expenses incurred by Doral Financial in the Sale of the OA Parking Lot. For avoidance of doubt, the other terms of the FDIC Stipulation shall remain in full force and effect. Subject to the foregoing, the FDIC-R shall sign and deliver to the Purchaser an Agreement of Conveyance in form and substance reasonably requested by the Purchaser (and agreeable to the FDIC-R) that transfers and quitclaims to the Purchaser all of the ownership interests of the FDIC-R in the OA Parking Lot, if any.

7. Good Faith Purchaser. Each of the Sales of the respective Assets has been undertaken by the Purchaser and Debtors at arm's length, without collusion, in good faith and for value. The Purchaser shall acquire the Assets pursuant to the APAs in good faith within the meaning of 11 U.S.C. § 363(m), and the Purchaser is granted all of the protections under and in accordance therewith. Unless stayed pending appeal, the reversal or modification on appeal of any authorization provided herein shall not affect the validity or enforceability of the APAs or the Sales of the Assets to the Purchaser.

8. No Avoidance. The Sales of the Assets pursuant to the APAs may not be avoided under fraudulent transfer or any other provisions of the Bankruptcy Code.

9. No Assumed Liabilities. Except as expressly set forth in the APAs or this Order, the Purchaser shall not be liable or obligated, or assume or in any way be responsible for, any liabilities or obligations of the Debtors or their estates (whether direct or indirect, liquidated or unliquidated, choate or inchoate, or contingent or fixed) arising before or after the Effective Date, including, without limitation, any rights or claims of any alleged tenants regarding the OA Parking Lot. For avoidance of doubt, the assumption by the Purchaser of any liabilities or obligations pursuant to the APAs or this Order in accordance with the foregoing sentence are

assumed with any and all defenses or claims of the Debtors to the payment or performance of such liabilities or obligations.

10. <u>No Successor Liability</u>. The Purchaser is not and shall not be (a) deemed a "successor" in any respect to the Debtors or their estates as a result of the consummation of the Sales contemplated by any of the APAs or any other event occurring in the chapter 11 case under any theory of law or equity, (b) deemed to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d) deemed to have a continuity of enterprise with the Debtors, or (e) deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors; and the Purchaser shall not assume, or be deemed to assume, or in any way be responsible for, any liability or obligation of any of the Debtors or their estates including, but not limited to, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors, except as otherwise expressly provided in the APAs and this Order.

11. <u>Authorization to Release Encumbrances</u>. If any person or entity that has filed a deed of mortgage, financing statement or other deeds, documents or agreements evidencing an Encumbrance on an Asset shall not have delivered, in proper form for filing, deeds of cancelation of mortgage, termination statements, instruments of satisfaction, cancelation, termination, releases, and other deeds and documents to the Debtors before the respective Effective Date, then the Debtors and the Purchaser shall be and hereby are authorized to execute such deeds of cancelation, termination statements, instruments of satisfaction, cancelation, termination, releases, and other deeds and documents on behalf of such person or entity and to file the same with any appropriate registry or public filing office. Notwithstanding the foregoing, the provisions of this Order authorizing the Sale and assignment of the Assets free and clear of

12

Encumbrances shall be self-executing, and notwithstanding the failure of the Purchaser, the Debtors, or any other party to execute, file, or obtain releases, deeds of cancelation of mortgage, termination statements, assignment consents, or other deeds and instruments to effectuate, consummate, and/or implement the provisions hereof and the APAs with respect to the Sale of the Assets, all Encumbrances on the Assets shall be and hereby are deemed to be divested, canceled, terminated, and discharged.

12.     <u>Order Binding on Recording Offices</u>. This Order shall be binding upon each Registrar of the Property of Puerto Rico and all other filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, including governmental officials in Puerto Rico, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets. Each and every federal, state, Puerto Rico, and local governmental agency or department or office is hereby authorized to accept this Order and any and all documents and instruments necessary and appropriate to consummate the Sales contemplated by the APAs and to cancel, terminate and release the encumbrances (including, without limitation, the mortgage described in <u>Exhibit C</u> attached hereto).

13.     <u>Injunction Against Interference</u>. Except to the extent included in Assumed Liabilities or Permitted Exemptions, or to enforce the APAs, all entities, including all lenders, debt security holders, equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts and unexpired leases, contract counterparties, customers, licensors, litigation claimants, employees and former employees, dealers and sale representatives, and trade

13

or other creditors holding Encumbrances or claims (as defined in Section 101(5) of the Bankruptcy Code) of any kind or nature whatsoever against or in the Debtors or the Assets (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity, or otherwise), arising under or out of, in connection with, or in any way relating to, the Assets or the transfers of the Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting any Encumbrances or claims of any kind or nature whatsoever against the Purchaser and its successors, designees, permitted assigns, or property, or the Assets conveyed in accordance with the APAs.

14. Certain Additional Authorizations. The Debtors and the Purchaser are authorized and empowered to take all actions and execute and deliver any and all documents, deeds and instruments that either the Debtors or the Purchaser deems necessary or appropriate to implement and effectuate the terms of the respective APA and this Order, including, without limitation, deeds of sale, bills of sale, assignments, releases, affidavits and similar deeds and documents required of the Debtors pursuant to the APAs. The Debtors and each other person having duties or responsibilities under the APAs, any agreements related thereto or this Order, and their respective directors, officers, managing partners or members, general partners, agents, representatives, and attorneys, are authorized and empowered, subject to the terms and conditions contained in the APAs and the schedules annexed thereto, to carry out all of the provisions of the APAs and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the deeds and documents necessary to effect closing under the APAs, and any

14

related agreements; and to take any and all actions contemplated by the APAs, any related agreements or this Order.

15. <u>Binding Order</u>. This Order and the APAs shall inure to the benefit of and be binding on the Purchaser, the Debtors, the Debtors' estates and their creditors, and each such person's respective successors and assigns, and any trustees, if any, subsequently appointed in the Debtors' chapter 11 cases or upon a conversion to Chapter 7 under the Bankruptcy Code.

16. <u>Interpretation; Headings</u>. To the extent of any inconsistency between this Order and the APA, this Order shall control. Headings of the provisions of this Order are included for reference purposes only and are not to be given any substantive effect.

17. <u>No Stay; Order Immediately Effective</u>. Notwithstanding the provisions of Bankruptcy Rule 6004(h) or any other rule providing for a stay of the effectiveness of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. The Debtors and the Purchaser are free to close under the APAs in accordance herewith. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being rendered moot.

18. <u>Retention of Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order, the Bid Procedures Order, and the APAs, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects; and (b) to decide any disputes concerning this Order and the APAs, or the rights and duties of the parties hereunder or thereunder or any issues relating to the APAs and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Assets and all issues and disputes arising in connection with the

relief authorized herein, inclusive of those concerning the transfer of the Assets free and clear of all Encumbrances.

19. Nothing in this Order shall impact the Stipulation and Order Providing for Preservation of Documents and Other Evidence (Docket No. 249) (the "Preservation Order") or the Debtors' obligations under the Preservation Order.

Dated: January 15, 2016
      New York, New York

                              /S/ Shelley C. Chapman
                              UNITED STATES BANKRUPTCY JUDGE