ROPES & GRAY LLP
Mark I. Bane
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile:  (212) 596-9090

-and-

James A. Wright III
Meredith S. Tinkham (*pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile:  (617) 951-7050

*Counsel to the Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| Doral Financial Corporation, *et al.*,[1] | : | Case No. 15-10573 (SCC) |
|  | : |  |
| Debtors. | : | Jointly Administered |

------------------------------------------------------x

## <u>NOTICE OF DE MINIMIS ASSET SALE</u>

**PLEASE TAKE NOTICE** that, in accordance with the *Order Approving the Motion of the Debtor for an Order Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets* [Docket No. 254] (the "<u>Sale and Abandonment Order</u>"), Doral Financial Corporation (the "<u>Debtor</u>") intends to sell certain *de minimis* assets, specifically mortgage loans and real estate owned or "REO" properties (collectively, the "<u>De Minimis Mortgage Assets</u>"). The Debtor intends to sell the De Minimis Mortgage Assets pursuant to the Mortgage Loan

---

[1] The last four digits of the taxpayer identification number of the debtors are: Doral Financial Corporation (2162); Doral Properties, Inc. (2283).

Purchase Agreement (the "De Minimis Mortgage Asset APA"), dated as of February 17, 2016, by and between the Debtor, as seller, and Greengift Capital Corp., as purchaser (the "Purchaser"). A copy of the De Minimis Mortgage Asset APA, which specifies the De Minimis Mortgage Assets being sold, is attached hereto as Exhibit A. Pursuant to the De Minimis Mortgage Asset APA, the Debtor has agreed to sell the De Minimis Assets to Purchaser for $601,550.00, with $50,000 of the purchase price to be placed into escrow until March 18, 2016. The Debtor and Purchaser intend to consummate the sale on March 7, 2016. A declaration of Scott Martinez of Zolfo Cooper, LLC in support of the sale is attached hereto as Exhibit B.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale and Abandonment Order, objections, if any, to the sale of the De Minimis Mortgage Assets, must be filed and served on the Debtor so as to actually be received by 4:00 P.M. (Prevailing Eastern Time) on March 4, 2016 (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that, if no objection to the sale of the De Minimis Mortgage Assets is received by the Objection Deadline, then the Debtor may proceed with consummation of the sale of the De Minimis Mortgage Assets on the terms set forth in the De Minimis Mortgage Asset APA

2

Dated: February 19, 2016
      New York, New York

                           */s/ James A. Wright III* _____

                           ROPES & GRAY LLP
                           Mark I. Bane
                           1211 Avenue of the Americas
                           New York, NY 10036-8704
                           Telephone: (212) 596-9000
                           Facsimile: (212) 596-9090
                           Email: mark.bane@ropesgray.com

                           -and-

                           James A. Wright III
                           Meredith S. Tinkham (*pro hac vice*)
                           Prudential Tower
                           800 Boylston Street
                           Boston, MA 02199-3600
                           Telephone: (617) 951-7000
                           Facsimile: (617) 951-7050
                           Email: james.wright@ropesgray.com
                           meredith.parkinson@ropesgray.com

                           *Counsel to the Debtors*

## Exhibit A

**Asset Purchase Agreement**

# MORTGAGE LOAN PURCHASE AGREEMENT

This MORTGAGE LOAN PURCHASE AGREEMENT (this "*Agreement*"), dated as of February 17, 2016 (the "*Execution Date*"), is entered into by and between, as seller, **DORAL FINANCIAL CORPORATION**, a Puerto Rico corporation ("*Doral*" or the "*Seller*") and as purchaser, **GREENGIFT CAPITAL CORP.**, a Puerto Rico corporation ("**Greengift**" or "*Purchaser*"). Seller and Purchaser are each referred to herein as a "*Party*" and collectively as the "*Parties*."

## RECITALS

**WHEREAS**, on March 11, 2015, Seller commenced a chapter 11 case in the Bankruptcy Court, Case No. 15-10573 (SCC), and continues to administer its business as debtor-in-possession;



**WHEREAS**, Purchaser has agreed to purchase from Seller, and Seller has agreed to sell to Purchaser, pursuant to 11 U.S.C. § 363 and other applicable provisions of the Bankruptcy Code, a portfolio of residential mortgage loans and real estate owned or "REO" properties identified on **Exhibit A** attached hereto.

**WHEREAS**, Purchaser is purchasing the Mortgage Loans and Mortgage Assets on an **AS IS, WHERE IS** basis.

**NOW, THEREFORE**, in consideration of the foregoing, and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties hereby agree as follows:

1.     **Definitions.** Capitalized terms used, but not otherwise defined, in this Agreement shall have the meanings ascribed to them below:

"Applicable Law": means any law, regulation or order issued by a Governmental Authority exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory or taxing authority or power of any nature, over the pertinent party, action or transaction, which law, regulation or order is applicable to the pertinent party, action or transaction, including, without limitation, the Truth-in-Lending Act, the Real Estate Settlement Procedures Act, the USA Patriot Act of 2001, the Equal Credit Opportunity Act, the Fair Credit Reporting Act, the Fair Credit Billing Act, the Gramm-Leach-Bliley Act and the Fair Debt Collection Practices Act and all other applicable usury, consumer credit protection, equal credit opportunity, anti-money laundering and disclosure laws and regulations and any amendments thereto.

"Assignment and Assumption Agreement": A document in the form attached hereto as **Exhibit B** whereby Seller assigns its right to the Mortgage Loans to Purchaser.

"Bankruptcy Case" means the chapter 11 bankruptcy case, No. 15-10573 (SCC), pending in the Bankruptcy Court.

"Bankruptcy Code": The United States Bankruptcy Code of 1978, as amended from time to time, or any successor federal statute, and any regulations promulgated thereunder.

"Bankruptcy Court": The United States Bankruptcy Court for the Southern District of New York.

"Business Day": Any day other than (i) a Saturday, (ii) a Sunday or (iii) a legal holiday.

"Close of Business": means 5:00 PM Atlantic Time on the relevant Business Day.

"Commonwealth": means the Commonwealth of Puerto Rico.

"Deed of Transfer": has the meaning set forth in Section 2(c).

"Escrow Agent" means the escrow agent identified in the Escrow Deposit Agreement.

"Escrowed Amount" means the $50,000 placed into escrow as referenced in Section 2(g) hereof.

"Escrow Deposit Agreement" means an Escrow Deposit Agreement in the form attached hereto as **Exhibit D** or as otherwise agreed to by Buyer and Seller, such agreement not to be unreasonably withheld.

"Governmental Authority": means any federal, state, Commonwealth or other governmental department, agency, institution, authority, regulatory body, court or tribunal, foreign or domestic, and includes arbitration bodies, whether governmental, private or otherwise with jurisdiction.

"Mortgage": A deed of mortgage or other security instrument creating a lien on the related Mortgaged Property securing the related Mortgage Note.

"Mortgage Assets": All of Seller's rights in the Mortgage Loans, the Mortgaged Properties, and the REO Properties collectively, including, without limitation, (i) all of Seller's rights, title and interest to all agreements, instruments, invoices, and other documents evidencing, or relating to the Mortgage Assets and (ii) any actions, claims, lawsuits or rights of any nature whatsoever, whether against the Mortgagor or any other party, arising out of or in connection with the Mortgage Assets.

"Mortgage Loan": The mortgage loans identified on **Exhibit A**.

"Mortgage Loan Documents": With respect to any Mortgage Loan, the related Mortgage Note, Mortgage and other Mortgage Loan documents and instruments required to be delivered pursuant to this Agreement.

-2-

"Mortgage Note": A promissory note or other evidence of the indebtedness of a Mortgagor under a Mortgage Loan.

"Mortgaged Property": The real property subject to a Mortgage and constituting security for the repayment of the related Mortgage Note.

"Mortgagor": The obligor on and any guarantor of a Mortgage Note.

"Person":  Any individual, corporation, limited liability company, partnership, joint venture, association, joint stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

"Purchase Date": The date on which Seller actually sells its rights in the Mortgage Loans and/or REO Properties to Purchaser.

"Purchase Price":  has the meaning set forth in Section 2(b).

"Purchaser": Greengift and its successors and assigns.

"REO Property": The real property identified on **Exhibit A**.

"Seller": Doral Financial Corporation and its successors and assigns.

2.    **Purchase and Sale of Mortgage Assets.**

(a)    <u>Purchase and Sale</u>.  Subject to all of the terms and conditions of this Agreement, on the Purchase Date, Seller will sell, assign, deliver and transfer to Purchaser, and Purchaser will purchase, assume, receive and accept all of Seller's right, title and interest in and to the Mortgage Assets.

(b)    <u>Payment of Purchase Price</u>.  The price to be paid by Purchaser for the Mortgage Assets (the "***Purchase Price***") shall be SIX HUNDRED AND ONE THOUSAND FIVE HUNDRED AND FIFTY DOLLARS ($601,550.00), less the Escrowed Amount. All transfers of funds hereunder shall be by electronic transfer of U.S. Dollars in immediately available funds.  Purchaser shall pay to Seller the Purchase Price on the Purchase Date in accordance with the wire transfer instructions specified by Seller.

(c)    <u>Deed of Transfer.</u> On the Purchase Date, and following confirmation that Seller has received the full payment of the Purchase Price, Seller shall execute with Purchaser a Deed of Transfer pursuant to which Seller's rights and interest in each REO Property shall be transferred to Purchaser, without representations or warranties.

The Deed of Transfer with respect to each REO Property shall be in form attached as **Exhibit C** and shall be dully executed by an authorized representative of each Party, with the corresponding evidence of his authority to act in such capacity. The internal revenue stamps for the original and certified copy of the Deed of transfer, as well as the respective Notarial fee and

-3-

registry fees for the Deed of Transfer shall be for the account of and paid for solely by Purchaser. The executed original Deed of Transfer with respect to each REO Property shall be delivered to Purchaser by Seller on the Purchase Date.

(d)   <u>Delivery of Mortgage Loan Documents.</u>   Seller will, at Purchaser's expense, within three (3) business days of the Purchase Date, deliver all Mortgage Loan Documents in Sellers' custody or control to Purchaser or, at Purchaser's option and expense, to a custodian designated by Purchaser.

(e)   <u>Real Estate Taxes and Assessments and Expenses</u>.   Purchaser shall be responsible for, and assume liability for, all tax liabilities outstanding with respect to the Mortgage Assets.

(f)   <u>Legal and Other Expenses</u>.   Seller will be responsible for all legal expenses related to judicial proceedings (including, but not limited to, foreclosure attorney fees and related expenses), and, except as otherwise provided herein, all other expenses, that were accrued or incurred by Seller or any servicer, sub-servicer or other agent or representative of Seller prior to the Purchase Date in connection with the Mortgage Assets, regardless of whether such expenses have been adequately invoiced to Seller.   Purchaser shall be responsible for all such expenses accrued or incurred by Purchaser on or after the Purchase Date in connection with the Mortgage Assets.

(g)   <u>Escrowed Amount</u>.   The amount of $50,000 will be placed into escrow as set forth in the Escrow Deposit Agreement, attached hereto as **Exhibit D**, and will be released pursuant to the terms of the Escrow Deposit Agreement.

**3.**   **Judicial Proceedings**.   Seller agrees that with respect to any Mortgage Loans for which any judicial proceedings have been commenced and are ongoing as of the Purchase Date, Seller shall: (a) cooperate in good faith with Purchaser in making such filings in such judicial proceedings in order to substitute Purchaser as the party therein and shall deliver to Purchaser copies of such filings in order to comply with the provisions of this <u>Section 4</u> within thirty (30) days following the Purchase Date; and (b) assign all of Seller's rights, title and interest in and to such judicial proceedings to Purchaser.   In the event such substitutions are not completed for any judicial proceeding within such time period, Seller shall continue to use commercially reasonable efforts to: (i) complete such substitutions, and (ii) shall take all other actions in such judicial proceedings as reasonably directed by Purchaser; *provided, however*, that the third-party costs and expenses incurred by Seller (including, without limitation, reasonable attorneys' fees and expenses) in taking such other actions directed by Purchaser shall be paid by Purchaser; *provided, further*, that Purchaser shall indemnify, defend and hold harmless Seller for any losses, damages, penalties, fines, forfeitures, and judgments against Seller in connection with the taking of any actions directed by Purchaser.

**4.**   <u>**Conditions to Closing.**</u>

(a)   <u>Seller's Conditions to Closing</u>.   The obligation of Seller to consummate the transactions contemplated under this Agreement is subject to the satisfaction of the following

55343032_2

conditions:

(i)    the representations and warranties of Purchaser contained in this Agreement (A) that are not qualified as to "materiality" or a "material adverse effect" shall be true and correct in all material respects on and as of the date hereof and the Purchase Date, and (B) that are qualified as to "materiality" or a "material adverse effect" shall be true and correct on and as of the date hereof and the Purchase Date, except to the extent such representations and warranties are made as of another date, in which case such representations and warranties shall be true and correct in all material respects or true and correct, as the case may be, on and as of such other date

(ii)    there shall not be any injunction, judgment, order or decree in effect preventing consummation of any of the transactions contemplated by this Agreement;

(iii)    the Purchase Price shall have been delivered to Seller; and

(iv)    the Escrow Deposit Agreement shall have been executed and delivered by Purchaser, Seller, and the Escrow Agent, and Purchase shall have delivered the Escrowed Amount to the Escrow Agent pursuant to the terms of the Escrow Deposit Agreement.

Seller may waive any condition specified in this Section 6(a) if it executes a writing so stating at or before the Purchase Date.

(b)    Purchaser's Conditions to Closing.    The obligation of Purchaser to consummate the transactions contemplated under this Agreement is subject to the satisfaction of the following conditions:

(i)    representations and warranties of Seller contained in this Agreement (A) that are not qualified as to "materiality" or a "material adverse effect" shall be true and correct in all material respects on and as of the date hereof and the Purchase Date, and (B) that are qualified as to "materiality" or a "material adverse effect" shall be true and correct on and as of the date hereof and the Purchase Date, except to the extent such representations and warranties are made as of another date, in which case such representations and warranties shall be true and correct in all material respects or true and correct, as the case may be, on and as of such other date;

(ii)    Seller shall have performed and complied with all of its covenants in this Agreement in all material respects through the Purchase Date;

(iii)    there shall not be any injunction, judgment, order or decree in effect preventing consummation of any of the transactions contemplated by this Agreement; and

(iv)    Seller shall have executed and delivered all documents required to be executed and delivered pursuant to this Agreement including, without limitation, all of the Deeds of Transfer required by Section 2(c).

Purchaser may waive any condition specified in this Section 6(b) if it executes a writing so stating at or before the Purchase Date.

5.    **Representations and Warranties of Seller.**

(a)    <u>General Representations and Warranties</u>.    Seller hereby represents and warrants, for the benefit of Purchaser and its successors and assigns, as of the Purchase Date, that:

(i)    <u>Organization, Authority and Qualification</u>.    Seller is duly organized, validly existing and in good standing under the laws of the Commonwealth, except where the failure to so qualify and be in good standing would not have a material adverse effect on the business, operation or financial condition of Seller; has the requisite power and authority and has taken all institutional action necessary in order to execute and deliver this Agreement, to consummate the transactions contemplated hereby and to sell the Mortgage Assets; and

(ii)    <u>Sophisticated Seller</u>.    Seller (i) is sophisticated in transactions similar to the sale of the Mortgage Assets; (ii) has adequate information concerning the business and financial condition of the Mortgagors to make an informed decision regarding the sale of the Mortgage Assets; and (iii) has independently and without reliance upon Purchaser, and based on such information as Seller has deemed appropriate, made its own analysis and decision to enter into this Agreement. Seller acknowledges that Purchaser has not given Seller any investment advice, credit information or opinion on whether the sale of the Mortgage Assets is prudent.

6.    **Representation and Warranties of Purchaser.**    Purchaser represents and warrants to Seller as of the date hereof and as of Purchaser Date that:

(a)    <u>Organization, Authority and Qualification</u>. Purchaser is duly formed or organized and in good standing under the laws of its jurisdiction of organization, has the requisite power and authority and has taken all institutional action necessary in order to execute and deliver this Agreement, to consummate the transactions contemplated hereby and to own the Mortgage Loans and the Mortgage Notes. Purchaser is qualified to transact business in and is in good standing and in compliance with any and all applicable licensing and other requirements under the laws of [ ] and each state or jurisdiction in which the nature of the business transacted by it or the character of the properties owned or leased by it requires such licensing or qualification.

(b)    <u>Enforceability</u>. This Agreement is a valid and binding agreement of Purchaser enforceable in accordance with its terms subject, as to enforcement, to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles.

(c)    <u>No Conflict; Licenses and Permits; Compliance with Laws and Regulations</u>. The execution, delivery and performance of this Agreement by Purchaser does not, and will not, violate any provision of its constituent documents of Purchaser or constitute a breach or contravention of or default under any law, rule, regulation, order, judgment, decree or

-6-

filing of any Governmental Authority to which Purchaser is subject or under any agreement or instrument to which Purchaser is a party or to which Purchaser is otherwise bound, which violation, breach, contravention or default, individually or in the aggregate, (i) could be expected to prevent or impair the ability of Purchaser to perform its obligations under this Agreement in any material respect, or (ii) could impair the validity or consummation of this Agreement or the transactions contemplated hereby.

(d)  <u>Approvals and Consents</u>.  No notices, reports or other filings are required to be made by Purchaser with, and no consents, registrations, approvals, permits or authorizations are required to be obtained by Purchaser from, any governmental regulatory authorities of the United States of America, the Commonwealth or any other jurisdiction in connection with the execution and delivery of this Agreement by Purchaser and the consummation of the transactions contemplated hereby, the failure to make or obtain any or all of which could prevent, materially delay or materially burden the transactions contemplated by this Agreement.

(e)  <u>Sophisticated Buyer</u>.  Purchaser (i) is sophisticated in transactions similar to the purchase of the Mortgage Assets; (ii) has adequate information concerning the business and financial condition of the Mortgagors to make an informed decision regarding the purchase of the Mortgage Assets; and (iii) has independently and without reliance upon Seller, and based on such information as Purchaser has deemed appropriate, made its own analysis and decision to enter into this Agreement, including such independent investigations as it deems to be warranted into the extent, nature, validity, enforceability, collectability and value of the Mortgage Assets and all other facts it deems material to its purchase of the Mortgage Assets.  Purchaser acknowledges that Seller has not given Purchaser any investment advice, credit information or opinion on whether the purchase of the Mortgage Assets is prudent.

(f)  <u>Due Diligence</u>.  Purchaser has had the opportunity to conduct such due diligence review and analysis of the due diligence materials as Purchaser deemed necessary, proper or appropriate in order to make a complete informed decision with respect to the purchase and acquisition of the Mortgage Assets.

(g)  <u>Liquidity</u>.  Purchaser acknowledges that the Mortgage Assets may have limited or no liquidity and Purchaser has the financial wherewithal to own the Mortgage Assets for an indefinite period of time and to bear the economic risk of an outright purchase of the Mortgage Assets and a total loss of the Purchase Price for the Mortgage Assets.

**7.  Disclaimer.  PURCHASER ACKNOWLEDGES AND AGREES THAT THE SALE OF THE MORTGAGED ASSETS SHALL BE "AS IS AND WHERE IS" AND SELLER MAKES NO, AND HEREBY DISCLAIMS ANY, REPRESENTATION OR WARRANTY TO PURCHASER WITH RESPECT TO THE MORTGAGE ASSETS, INCLUDING, WITHOUT LIMITATION, THE EXTENT OF SELLER'S RIGHTS IN THE MORTGAGE ASSETS, OR THE TRANSACTIONS CONTEMPLATED HEREBY, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.**

-7-

55343032_2

**8.     Exclusive Benefit of Parties; Assignment.**  This Agreement is for the exclusive benefit of the Parties hereto and their respective successors and permitted assigns.  Except for the Parties respective successors and permitted assigns, nothing expressed or referred to in this Agreement shall be construed to give any person other than the Parties any legal or equitable right, remedy or claim under or with respect to this Agreement or any provision of this Agreement.   This Agreement may not be assigned by any Party without the prior written consent of the other Party.

**9.     Sale or Assignment of Mortgage Loans.**  Purchaser shall have the right to assign, sell or otherwise transfer all or any portion of the Mortgage Assets.

**10.     Amendments; Waivers.**  This Agreement may be amended from time to time only by written agreement of the Parties.  Any forbearance, failure, or delay by any of the Parties in exercising any right, power, or remedy hereunder shall not be deemed to be a waiver thereof; and any single or partial exercise by any of them of any right, power or remedy hereunder shall not preclude the further exercise thereof.  Every right, power and remedy of each Party shall continue in full force and effect until specifically waived by such Party in writing.

**11.     Severability.**  In case any one or more of the provisions contained in this Agreement should be or become invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein or therein shall in no way be affected, prejudiced or disturbed thereby.

**12.     Governing Law; Waiver of Jury Trial; Dispute Resolution.**

(a)     This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth, which is the place of execution of this Agreement, without regard to conflict of laws rules.  Each Party hereto hereby irrevocably agrees that any action or proceeding against it arising out of or in any manner relating to this Agreement may be brought in the Bankruptcy Court or any court of the Commonwealth, or in the United States District Court for the District of Puerto Rico, and by the execution and delivery of this Agreement, each Party expressly and irrevocably assents and submits to the nonexclusive jurisdiction of any such courts in any such action or proceeding. ALL PARTIES IRREVOCABLY AGREE TO WAIVE ANY RIGHTS IT MAY HAVE TO A JURY TRIAL IN ANY ACTION OR PROCEEDING AGAINST IT, ARISING OUT OF OR RELATING IN ANY MANNER TO THIS AGREEMENT.

(b)     The Parties shall use their respective best efforts to settle amicably all disputes or differences concerning the interpretation or application of any provision of this Agreement. If any such dispute or difference is not so settled within a commercially reasonable time, however, each Party shall have the right to refer it to avail itself of any remedies provided for in this Agreement.

**13.     Notices.**  All demands, notices, instructions and communications hereunder shall be in writing and shall be sent to the Parties at the addresses listed below (or such other address as may hereafter be furnished to the other Party by notice given hereunder): (a) by hand delivery,

-8-

with receipt of delivery acknowledged; (b) by registered or certified mail, return receipt requested; (c) by reputable overnight courier service, with receipt of delivery acknowledged; or (d) by facsimile or electronic communication. Any such demand, notice, instruction or communication hereunder shall be deemed to have been given on the date received or on the date delivered and refused:

| | |
|---|---|
| *If to Seller:* | Doral Financial Corporation<br>Attn: Enrique Ubarri, General Counsel<br>999 Ponce de Leon Blvd.<br>Suite 730<br>Coral Gables, FL 33134<br>Electronic Mail: Enrique.ubarri@dfcmain.com |
| *With copy to:* | Mark I. Bane<br>Ropes & Gray LLP<br>1211 Avenue of the Americas<br>New York, NY 10036-8704<br>Electronic Mail: mark.bane@ropesgray.com |
| *If to Purchaser:* | Greengift Capital Corp.<br>Attn: Armando Jiménez Seda<br>Corporate Center Bldg.<br>Suite 601<br>#33 Resolución Street<br>San Juan, PR 00920<br>Electronic Mail: armando.jiminez@jsyalaw.com |
| *With copy to:* | Pedro Lopez Adames<br>Jiménez Seda & Archilla, PSC.<br>Corporate Center Bldg.<br>Suite 601<br>#33 Resolución Street<br>San Juan, PR 00920<br>Electronic Mail: pedro.lopez@jsyalaw.com |

14. **Entire Agreement**. This Agreement, together with all exhibits and schedules hereto and thereto, contains the entire and final agreement between the parties hereto with respect to the subject matter hereof and thereof, and supersedes all prior and contemporaneous agreements between the parties, oral or written, of any nature whatsoever with respect to the subject matter hereof and thereof.

15. **Expenses and Taxes**. Except as otherwise expressly provided in this Agreement, Purchaser and Seller each shall bear its own out-of-pocket expenses and taxes in connection with the transactions contemplated by this Agreement.

16. **Termination**. This Agreement shall be terminated as follows:

55343032_2

(a)    At any time by mutual written agreement of Seller and Purchaser; or

(b)    By Seller, at its sole election, in the event of a material breach of this Agreement by Purchaser that has not been cured after 20 days written notice of such breach.



**17.    Counterpart and Facsimile Signatures.**  This Agreement may be signed in any number of counterparts with the same effect as if the signatures to each counterpart were upon a single instrument, and all such counterparts shall be deemed a single original of this Agreement. A facsimile or electronic mail transmission by one Party to the other Party of an executed Agreement (the signature page duly signed and the rest of the pages duly initialed) shall be deemed to be equivalent to delivery of an original Agreement, and the transmitting Party shall forward the original Agreement upon request of the receiving Party.

**18.    Exhibits, Schedules and Annexes.**  The exhibits, schedules and annexes to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

**19.    Further Assurances.**  Each Party shall execute and deliver to the other Party all further documents or instruments reasonably requested by any such other party in order to effect the intent of this Agreement and to obtain the full benefit of this Agreement.  Any request by any Party under this Section 22 shall be accompanied by the document proposed for signature by the Party requesting it, in form and substance satisfactory to the Party of whom the request is made and its attorneys.  The Party making the request shall bear and discharge any fees or expenses incident to the preparation, filing or recording of documents requested pursuant to this Section 22.

**20.    Headings.**  Headings are for reference only, and will not affect the interpretation or meaning of any provision of this Agreement.

**21.    Interpretation.**  The Parties hereby agree that (a) any Person interpreting or construing this Agreement shall not apply a presumption that the terms hereof shall be more strictly construed against any Person by reason of the rule of construction that a document is to be construed more strictly against the Person who itself or through its agent prepared the same, and (b) all Parties have participated in the preparation of this Agreement.

**22.    Specific Performance.**  It is understood and agreed by the Parties that money damages would not be a sufficient remedy for any breach of this Agreement by a Party and the non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach, and each Party agrees to waive any requirement for the securing or posting of a bond in connection with such remedy, in addition to any other remedy to which such non-breaching Party may be entitled, at law or in equity.

-10-

**IN WITNESS WHEREOF**, each Party has caused its respective duly authorize representative(s) to execute this Agreement as of the Execution Date.

**Seller:**

**DORAL FINANCIAL CORPORATION**

By: _____
Name: CAROL FLATON
Title: CRO

**Purchaser:**

**GREENGIFT CAPITAL CORP.**

By: _____
Armando Jiménez Seda
President

[SIGNATURE PAGE TO MORTGAGE LOAN PURCHASE AGREEMENT]

## EXHIBIT A

### Listing of Mortgage Assets



| | Equity Loan # | Doral Loan # |
|---|---|---|
| 1 | 600104 | 72363 |
| 2 | 600106 | 80410 |
| 3 | 600107 | 86398 |
| 4 | 600108 | 86624 |
| 5 | 600110 | 91298 |
| 6 | 600114 | 207981 |
| 7 | 600116 | 247254 |
| 8 | 600117 | 256914 |
| 9 | 600119 | 501377 |
| 10 | 600120 | 10000356 |
| 11 | 600123 | 20000035 |
| 12 | 600124 | 20000895 |
| 13 | 600126 | 30000586 |
| 14 | 600127 | 30018349 |
| 15 | 600130 | 30025206 |
| 16 | 600132 | 30029210 |
| 17 | 600133 | 30029602 |
| 18 | 600137 | 30044395 |
| 19 | 600141 | 30059482 |
| 20 | 600142 | 30061608 |
| 21 | 600143 | 30062331 |
| 22 | 600147 | 30073398 |
| 23 | 600156 | 50002512 |
| 24 | 600157 | 50012038 |
| 25 | 600161 | 50025107 |
| 26 | 600163 | 50026699 |
| 27 | 600166 | 50028999 |
| 28 | 600168 | 50030064 |
| 29 | 600169 | 50031084 |
| 30 | 600170 | 50031654 |
| 31 | 600171 | 50036945 |
| 32 | 600172 | 50037563 |
| 33 | 600177 | 50042423 |
| 34 | 600186 | 50046610 |
| 35 | 600192 | 70004296 |
| 36 | 600193 | 70004782 |
| 37 | 600194 | 70008465 |
| 38 | 600195 | 70008613 |
| 39 | 600202 | 70022066 |
| 40 | 600203 | 70026196 |

| | Equity Loan # | Doral Loan # |
|---|---|---|
| 41 | 600214 | 70028275 |
| 42 | 600216 | 70028549 |
| 43 | 600218 | 70029248 |
| 44 | 600225 | 80000867 |
| 45 | 600226 | 80001319 |
| 46 | 600227 | 80001555 |
| 47 | 600229 | 80008816 |
| 48 | 600230 | 80008996 |
| 49 | 600231 | 80010428 |
| 50 | 600234 | 80013108 |
| 51 | 600237 | 80017247 |
| 52 | 600241 | 80019282 |
| 53 | 600245 | 80020087 |
| 54 | 600253 | 80022734 |
| 55 | 600256 | 85000373 |
| 56 | 600257 | 300284120 |
| 57 | 600258 | 700051701 |
| 58 | 600259 | 700051705 |
| 59 | 600261 | 1000000008 |
| 60 | 600262 | 1000000009 |
| 61 | 600263 | 2200074836 |
| 62 | 600264 | 2200978070 |
| 63 | [RESERVED] | [RESERVED] |
| 64 | 600268 | 3002001680 |
| 65 | 600270 | 3002001916 |
| 66 | 600271 | 3002001925 |
| 67 | 600272 | 3002002040 |
| 68 | 600273 | 3002002053 |
| 69 | 600275 | 3002003446 |
| 70 | 600278 | 9100000381 |
| 71 | 600279 | 9100001678 |
| 72 | 600282 | 9100005544 |
| 73 | 600290 | 9500000255 |
| 74 | 600291 | 9500000257 |
| 75 | 600292 | 9500000304 |
| 76 | 600293 | 9500000379 |
| 77 | #N/A | 50033340 |
| 78 | #N/A | 50045140 |
| 79 | #N/A | 50051377 |
| 80 | #N/A | 4450017447 / 50017447 |

[EXHIBIT A TO MORTGAGE LOAN PURCHASE AGREEMENT]

## EXHIBIT B

### Form of Assignment and Assumption Agreement

**ASSIGNMENT AND ASSUMPTION AGREEMENT,** dated February [--], 2016, by and between, GREENGIFT CAPITAL CORP. ("Purchaser") and DORAL FINANCIAL CORPORATION ("Seller"):

For value received the receipt and sufficiency of which hereby are acknowledged, and of the mutual covenants herein contained, the Parties hereby agree as follows:

Seller hereby sells, transfers, conveys and assigns to Purchaser all of the right, title and interest of Seller, in to and under the Mortgage Loans (and the related Mortgage Assets) described in Schedule A attached hereto (and incorporated herein by reference) pursuant to that certain Mortgage Loan Purchase Agreement dated as of February [-], 2016 (the "Purchase Agreement") between Seller and Purchaser, and Purchaser hereby receives, accepts and assumes all of Seller's rights, title, interest and obligations in and to the Mortgage Loans (and the related Mortgage Assets).

Capitalized terms set forth herein and not defined shall have the meanings set forth in the Purchase Agreement.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed by their duly authorized officers as of the date first above written,

| **Purchaser** | **Seller** |
|---|---|
| GREENGIFT CAPITAL CORP. | DORAL FINANCIAL CORPORATION |
| a Puerto Rico Corporation | a Puerto Rico Corporation |
| | |
| By: _____ | By: _____ |
| Name: | Name: |
| Title: | Title: |
| | |
| Taxpayer | Taxpayer |
| Identification No. | Identification No. |

[EXHIBIT C TO MORTGAGE LOAN PURCHASE AGREEMENT]

55343032_2

# EXHIBIT C

# DEED OF TRANSFER

[EXHIBIT C TO MORTGAGE LOAN PURCHASE AGREEMENT]

FORM OF DEED

---On the same date of its execution, I issued the first certified copy of this Deed in San Juan, Puerto Rico, at the request of [DORAL ENTITY].------
--------------------

---I ATTEST.------------------
-



------------------------DEED NUMBER _____ (__)-------
------------------

----------------------DEED OF PURCHASE AND SALE-
------------------

---In the Municipality of San Juan, Commonwealth of Puerto Rico, this _____ (__) day of _____, two thousand sixteen (2016).-------------

------------------------------BEFORE ME----------------
------------------

---_____, Attorney-at-Law and Notary Public in and for the Commonwealth of Puerto Rico, with an office located in _____ San Juan, Puerto Rico, and residence in _____, Puerto Rico. ---------

----------------------------------APPEAR--------------------
------------------

---AS PARTY OF THE FIRST PART: _____, a _____ duly organized and existing under the laws of _____ (hereinafter, the "Buyer"), herein represented by its Authorized Representative, _____, of legal age, _____, _____ and resident of _____, Puerto Rico, who has been duly authorized to appear herein on behalf of the Buyer pursuant to a Certificate of _____

Resolutions of the Buyer, executed by _____ _____, as
_____ of the Buyer, on _____ _____ (___),
two thousand sixteen (2016), authenticated under affidavit
number ____ _____ (___) of Notary Public
_____ and duly protocolized pursuant to
Deed Number _____ (___), executed on _____
_____ (___), two thousand sixteen (2016), before
Notary Public _____, a certified copy of
which has been filed in the Registry of Faculties of the
Registry of the Property of Puerto Rico, Section of
_____ (hereinafter, the "Registry"), prior to the date
hereof.--------

---AS PARTY OF THE SECOND PART: [DORAL
ENTITY], a banking corporation duly organized and
existing under the laws of the Commonwealth of Puerto
Rico (hereinafter, the "Seller"), herein represented by its
Authorized Representative, _____, of
legal age, _____, executive and resident of
_____, Puerto Rico, who has been duly authorized to
appear herein on behalf of the Seller pursuant to a
Certificate of Resolution of the Seller executed by
_____, as _____ of the Seller, on
_____ _____ (___), two thousand sixteen (2016),
authenticated under affidavit number
_____ (_____) of Notary Public
_____, an original of which has been filed
in the Registry of Faculties of the Registry prior to the date
hereof.------------------------------

---I, the undersigned Notary Public, do hereby certify that I
am personally acquainted with the natural persons



appearing on behalf of the appearing parties, and, from their statements, I also attest as to their age, civil status, occupation and place of residence. They assure me that they have, and in my judgment they do have, the legal capacity and knowledge of the English language necessary to execute this instrument, and, therefore, they freely and of their own will and accord:----------------

---------------------------STATE---------------------------------

---FIRST: _The Property_. The Seller is the owner in fee simple title (_pleno dominio_) of certain real estate properties (each, the "Property") described in _Schedule I_ attached hereto and made a part hereof. -----------

---SECOND: _Sale and Purchase of the Property_.    The Seller has agreed with the Buyer on the sale to the Buyer of the Seller's rights and interests in the Property, in accordance with the following terms and conditions:---------------

--------------------------------

a.    _Purchase-Sale_. The Seller hereby sells to the Buyer, and the Buyer hereby purchases from the Seller, all of the Seller's rights and interests, in the Property, together with all its rights, easements, servitudes and appurtenances, without any limitation whatsoever.

b.    _The Purchase Price_. The purchase price (hereinafter, the "Purchase Price") of the Property is the purchase price set forth in _Schedule II_ attached hereto and made a part hereof, which is paid by the Buyer to the Seller in this act, and receipt of which is hereby acknowledged by the Seller. The Buyer and the Seller hereby represent, acknowledge and agree that due to the Seller having acquired the Property at a judicial sale by foreclosure or in

payment in lieu of foreclosure, and thus may have acquired the Property for consideration that exceeds the Purchase Price, due to a general deterioration of the housing market in Puerto Rico, the Purchase Price represents the current market value of the Property, and no buyer is willing to pay a higher price. Therefore, in the event that the Purchase Price is less than the last recorded value of the Property, the Buyer and the Seller herein state that it is not their intention that the sale of the Property effectuated hereby be construed as a gift or donation.

c.   Property Taxes. Property taxes due on the Property shall be apportioned as follows, all real property taxes and utilities shall be apportioned up to the date of purchase for the account of Seller and from the date of purchase and thereafter for the account of Buyer

d.   Possession. This Deed shall entitle the Buyer to enter into possession of the Property without any additional formality or request on the part of the Seller.

e.   Expenses. The notarial tariff applicable to the execution of this Deed, the cost of the Internal Revenue Stamps and Legal Assistance Stamps required for the original of this Deed shall be for the account of the Seller and the first certified copy of this Deed, as well as the recording expenses thereof, shall be as for the account of _____. The Buyer shall select the Notary Public who will draft this Deed and before whom the same will be executed by the appearing parties.---------------------------------------------

f.   Successors and Assignees. All of the terms, conditions and provisions of this paragraph **SECOND** shall apply to, and be binding upon, the successors and assignees

of the Buyer and the Seller, and all the persons claiming under or through them.---------------------------------------------

g.    <u>AS IS Purchase</u>. Seller and Buyer acknowledge that the sale of the Property is made "AS IS". The Buyer acknowledges that title to the Property was obtained by the Seller through an involuntary acquisition.---------------------

---**THIRD:** <u>Additional Documentation</u>. The parties hereto agree to execute and deliver any additional instruments and documents public or private which may be necessary to record the transactions effected hereby. -

---**FOURTH:** <u>Request to the Registrar</u>. The Honorable Registrar of the Property is respectfully requested to record the transfer of title to the Property in fee simple title (<u>*pleno dominio*</u>) in the name of the Buyer. ------

-------------ACCEPTANCE,    WARNINGS    AND EXECUTION----------------------------

---The appearing parties to this Deed hereby accept the same as drafted, since it has been drawn up in accordance with their stipulations, terms and conditions.

---I, the undersigned Notary Public, made to the appearing parties the necessary legal warnings concerning the execution of this Deed and they were fully advised by me thereon. I advised the appearing parties as to their right to read this Deed by themselves, which they did, and to have witnesses present at the execution thereof, which right they waived.

---Specifically, I advised the appearing parties with respect to: (a) the meaning and legal effects of the acts consummated pursuant to this Deed, having asked each of

the persons appearing herein whether they had any further questions and allowing each of them ample time and opportunity to understand and comprehend the meaning and legal nature and effects of their acts; (b) that any liens or encumbrances, or any other matter affecting the title to the Property, that may be filed for recordation in the Registry prior to the filing of this Deed may be legally binding and could take precedence over this Deed; (d) that if the Property subject to this transaction is located in a flood prone area, any present or future title holder or occupant thereof may be compelled by law to observe and comply with the requirements and provisions of the Flood Zone Regulations, and the appearing parties are hereby warned that failure to comply therewith may result in an unlawful act pursuant to the provisions of Section thirty (30) of Act Number Eleven (11) of March eight (8), nineteen eighty eight (1988), regarding flood zones; (e) the advisability of the appearing parties having a person with appropriate expertise conduct an investigation to determine the environmental condition of the Property; (f) the need to file an Informative Return with the Puerto Rico Department of Treasury and Change of Ownership Petitions with the Municipal Revenues Collection Center (hereinafter, the "CRIM") in connection with the execution of this Deed; (g) that real property taxes, including, without limitation, taxes assessed pursuant to Act Number Seven (7) of March nine (9), two thousand nine (2009), as amended (hereinafter, "Act Seven"), corresponding to the preceding five (5) tax years and the current tax year constitute a senior, preferred statutory lien on the Property; and (h) of the advisability of verifying the payment status of such real property taxes and

Act Seven taxes in the records of the CRIM and the Puerto Rico Department of Treasury.-------------------------------------

---I also advised the appearing parties that a title search report in relation to the Property was prepared by an independent third party and not by the undersigned Notary Public, and that the certified copy of this Deed will be filed for recordation in the Registry by an independent third party and not by the undersigned Notary Public.--------------

---In addition, I, the undersigned Notary Public, do hereby certify that, pursuant to the provisions of the Residential Lead-Based Paint Hazard Reduction Act of Nineteen Ninety Two (1992), as codified in forty two United States Code Section four thousand eight hundred fifty one *et sequitur* (42 U.S.C. § 4851 *et seq.*) (hereinafter, the "Act"), I have advised the appearing parties as follows: Every purchaser of any interest in residential real property on which a residential dwelling was built prior to nineteen seventy eight (1978) is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazard is recommended prior to purchase. To the extent

that the Act is applicable to the purchase and sale transaction consummated herein, the Act imposes on the Seller, its agents and realtors, if any, before the Buyer is to be bound by a contract for the purchase and sale of residential real property, the obligation to: (i) disclose its knowledge of the presence of lead-based paint or any other known hazard in the Property related to lead-based paint; (ii) provide a ten (10) day period to allow the Buyer to inspect the Property for possible lead-based paint hazards; and (iii) provide an information booklet ("Protect Your Family From Lead in Your Home") prepared by the Environmental Protection Agency. To the extent the Act is applicable hereto, the Act requires that a document signed by the Buyer and the Seller acknowledging compliance with the abovementioned requirements be attached to the purchase and sale contract. To the extent the Act is applicable hereto, the Seller and its agents should keep a copy of said contract and its attachments (with the disclosures stated above) for a period of not less than three (3) years. Non-compliance with the requirements of the Act exposes the Seller to possible liability. The Buyer hereby acknowledges that, to the extent the Act is applicable hereto, it has been given the opportunity to inspect the Property and that it was informed more than ten (10) days prior to the execution of this Deed of its right to assess the risk of lead-based paint in the Property. The Buyer and the Seller acknowledge and accept that, to the extent the Act is applicable hereto, they: (i) have complied with the requirements of the Act; (ii) have examined the information related to the possibility of the presence of lead-based paint in the Property; and (iii) certify that, to the best of their

knowledge, all the information they have provided in this paragraph is true and accurate. With full knowledge of the contents of the present warning, the Buyer and the Seller proceed with the execution of this Deed as hereinafter provided.------------------------------------

----Should the Property be subject to Act Number twenty one (21) of May Twenty (20), Nineteen Hundred and Eighty Seven (1987) as amended, known as the Access Control Act, and/or Act Number one hundred three (103) of April five (5) Two thousand Three (2003), as amended, known as the Horizontal Property Act, as may be applicable. Buyer hereby acknowledges being warned that it must comply with the precepts of the Regulations set forth by the Council Board or Association of Residents. Seller states that no maintenance fees or apportionment of expenditure approved prior to the date of this deed are due, and if any arise hereon, they will be for the account of Buyer.-----------------------------------------------------------------

---After having read the contents of this Deed, as stated in all preceding paragraphs, the appearing parties fully ratified and confirmed the statements contained herein as the true and exact embodiment of their stipulations, terms and conditions, whereupon the appearing parties signed this Deed before me, the undersigned Notary Public, and placed their initials on each and every page of this Deed.------------

---I, the undersigned Notary Public, do hereby certify as to everything stated or contained in this instrument.-------------

---TO ALL OF WHICH, under my signature, seal, mark and flourish, I, the undersigned Notary Public, do hereby ATTEST.-----------------------------

55343732_2

**SCHEDULE I**

---The Property is described in the Registry, in the Spanish language, as follows:-----------------------------------------------

----"_____"--------------------------------------



---The Property is recorded in the Registry at page _____ of volume _____ of _____, property number _____.-----------------------------------

---The Seller hereby states that, to its knowledge, the tax identification number assigned to the Property by the CRIM, as it appears in the CRIM's records, is _____ (_____).-----------------

---The Seller acquired the Property pursuant to Deed Number _____ (___) of _____, executed on _____ _____ (___), _____ (_____), before Notary Public _____, recorded in the Registry at page _____ of volume _____ of _____, _____ (___) inscription.-----------

1.----------------------------------The Property is subject to the following liens and encumbrances of record:----------------------------------------------
----------------------------------------------------------------------
----------------------------------------------------------------------
----------------------------------------------------------------------
----------------------------------------------------------------------

2.-(a) By its origin:

_____ _____

----(b) By itself:----------------------------------------

- _____ _____

------------------------------------------------------------
--------------------

------------------------------------------------------------
--------------------

------------------------------------------------------------
--------------------

------------------------------------------------------------
--------------------

------------------------------------------------------------
--------------------

------------------------------------------------------------
--------------------

------------------------------------------------------------
--------------------

------------------------------------------------------------
--------------------

------------------------------------------------------------
--------------------

------------------------------------------------------------
--------------------

------------------------------------------------------------
--------------------

--------------------------------------------------------------------

--------------------

--------------------------------------------------------------------

**SCHEDULE II**

---The    Purchase    Price    of    the    Property    is

_____

($_____).--------------

#954023

# EXHIBIT D

## FORM OF ESCROW DEPOSIT AGREEMENT

55343032_2

## ESCROW DEPOSIT AGREEMENT

This **ESCROW DEPOSIT AGREEMENT** (this "**Agreement**") dated as of this 18 day of February 2016 by and among **DORAL FINANCIAL CORPORATION** ("**DFC**" or "**Seller**"), a Puerto Rico corporation having an address at 999 Ponce de Leon Blvd., Suite 730, Coral Gables, FL 33134, **GREENGIFT CAPITAL CORP.** ("**Greengift**" or "**Buyer**"), a Puerto Rico corporation having an address at #33 Resolucion Streeet, Suite 601, San Juan, PR 00920 and **SIGNATURE BANK** (the "**Escrow Agent**"), a New York state-chartered commercial bank and having an office at 565 Fifth Avenue, 12th Floor, New York, New York, 10017.

This Agreement is entered into in connection with Buyer's purchase of certain assets in Seller's loan portfolio (the "**Assets**") in the chapter 11 bankruptcy case of Doral Financial Corporation, Case No. 15-10573 (the "**Chapter 11 Case**"). Buyer and Seller have entered into a Mortgage Loan Purchase Agreement dated February 17, 2016 (the "**APA**"), and the APA and the proposed sale have been noticed for approval pursuant to the procedures for sales of *de minimis* assets set forth in the *Order Approving the Motion of the Debtor for an Order Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets* entered July 23, 2015 in the Chapter 11 Case. In connection with the APA, Buyer will deposit $50,000.00 with the Escrow Agent on account of certain of Assets listed on <u>Schedule A</u> hereto (the "**Assets**").



## W I T N E S S E T H:

**WHEREAS**, Seller and Buyer have agreed that a certain sum of money shall be held in escrow upon certain terms and conditions; and

**WHEREAS**, Seller and Buyer appoint the Escrow Agent as escrow agent of such escrow subject to the terms and conditions set forth in this Agreement; and

**WHEREAS**, the Escrow Agent accepts such appointment as escrow agent subject to the terms and conditions set forth in this Agreement.

**NOW, THEREFORE, IT IS AGREED** as follows:

1.    <u>Delivery of Escrow Funds</u>.

(a)    Buyer will deliver, or shall cause to be delivered, to the Escrow Agent a wire transfer in the amount of $50,000.00 to "Doral Financial Corporation, Signature Bank as Escrow Agent" to be held in an account at Signature Bank entitled "Doral Financial Corporation, Signature Bank, as Escrow Agent" having ABA No. 026013576, Account No. 1502756776 (the "**Escrow Account**").

(b)    The collected funds deposited into the Escrow Account are referred to as the "**Escrow Funds**".

(c)    The Escrow Agent shall have no duty or responsibility to enforce the collection or demand payment of funds delivered to Escrow Agent for deposit into the Escrow Account.

2.     Release of Escrow Funds. This agreement shall be in place until Friday, March 18, 2016 at noon Eastern Time (the "**Release Date**"). If, prior to the Release Date, Buyer demonstrates to Seller that Seller does not own an interest in either the mortgage loan or the underlying real estate with respect to an Asset, in each case to the satisfaction of Buyer and Seller or as otherwise determined by the Bankruptcy Court, Buyer will be entitled to reimbursement on the Release Date of $1,562.50 per each such Asset (the "**Reimbursement Amount**")and on the Release Date, a portion of the Escrow Funds equal to the Reimbursement Amount, if any, shall be paid by the Escrow Agent to Buyer, and the remaining Escrow Funds in the Escrow Account, if any, shall be paid by the Escrow Agent to Seller, in each case in accordance with the joint instructions, in form and substance satisfactory to the Escrow Agent, received from Seller and Buyer or, in the absence of such instructions, in accordance with an order of the Bankruptcy Court or another court of competent jurisdiction.  Escrow Agent shall not distribute any of the Escrow Funds, including the Reimbursement Amount, to either of Buyer or Seller until the Release Date and until Escrow Agent has received joint written instructions or alternatively an order of the Bankruptcy Court or another court of competent jurisdiction. For the avoidance of doubt, the Escrow Agent shall not pay any Escrow Funds out of the Escrow Account without joint written instructions from Buyer and Seller, or alternatively an order of the Bankruptcy Court or another court of competent jurisdiction. The Escrow Agent shall not be required to pay any uncollected funds or any funds that are not available for withdrawal. The Escrow Agent may act in reliance upon any instructions, court orders, notices, certifications, demands, consents, authorizations, receipts, powers of attorney or other writings delivered to it without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order. The Escrow Agent may act in reliance upon any signature believed by it to be genuine and may assume that such person has been properly authorized to do so.

3.     Acceptance by Escrow Agent. The Escrow Agent hereby accepts and agrees to perform its obligations hereunder, provided that:

(a)     The names and true signatures of each individual authorized to act singly on behalf of Seller and Buyer are stated in Schedule B. The Escrow Agent may act in reliance upon any signature believed by it to be genuine, and may assume that any person who has been designated in Schedule B to give any written instructions, notice or receipt, or make any statements in connection with the provisions hereof has been duly authorized to do so. The Escrow Agent shall have no duty to make inquiry as to the genuineness, accuracy or validity of any statements or instructions or any signatures on statements or instructions. The names and true signatures of each individual authorized to act singly on behalf of Seller and Buyer are stated in Schedule B, which is attached hereto and made a part hereof. The Buyer and Seller may each remove or add one or more of its authorized signers stated on Schedule B by notifying the Escrow Agent of such change in accordance with this Agreement, which notice shall include the true signature for any new authorized signatories.

(b)     The Escrow Agent may act relative hereto in reliance upon advice of counsel in reference to any matter connected herewith. The Escrow Agent shall not be liable for any

2

mistake of fact or error of judgment or law, or for any acts or omissions of any kind, unless caused by its willful misconduct or gross negligence.

     (c)    Seller and Buyer, jointly and severally, agree to indemnify, release, and hold the Escrow Agent harmless from and against any and all claims, losses, costs, liabilities, damages, suits, demands, judgments or expenses, including, but not limited to, attorney's fees, costs and disbursements, (collectively "**Claims**") claimed against or incurred by Escrow Agent arising out of or related, directly or indirectly, to the Escrow Agreement and the Escrow Agent's performance hereunder or in connection herewith, except to the extent such Claims arise from Escrow Agent's willful misconduct or gross negligence as adjudicated by a court of competent jurisdiction.

     (d)    In the event of any disagreement between or among Seller and Buyer, or between any of them and any other person, resulting in adverse claims or demands being made to Escrow Agent in connection with the Escrow Account, or in the event that the Escrow Agent, in good faith, is in doubt as to what action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not become liable in any way or to any person for its failure or refusal to act, and the Escrow Agent shall be entitled to continue so to refrain from acting until (i) the rights of all parties shall have been fully and finally adjudicated by a court of competent jurisdiction, or (ii) all differences shall have been adjusted and all doubt resolved by agreement among all of the interested persons, and the Escrow Agent shall have been notified thereof in writing signed by all such persons. The Escrow Agent shall have the option, after thirty (30) days' notice to Seller and Buyer of its intention to do so, to file an action in interpleader requiring the parties to answer and litigate any claims and rights among themselves. The rights of the Escrow Agent under this section are cumulative of all other rights which it may have by law or otherwise.

     (e)    In the event that the Escrow Agent shall be uncertain as to its duties or rights hereunder, the Escrow Agent shall be entitled to (i) refrain from taking any action other than to keep safe the Escrow Funds until the Escrow Agent shall be directed otherwise by a court of competent jurisdiction, or (ii) deliver the Escrow Funds to a court of competent jurisdiction.

     (f)    The Escrow Agent shall have no duty, responsibility or obligation to interpret or enforce the terms of any agreement other than Escrow Agent's obligations hereunder, and the Escrow Agent shall not be required to make a request that any monies be delivered to the Escrow Account, it being agreed that the sole duties and responsibilities of the Escrow Agent shall be to the extent not prohibited by applicable law (i) to accept checks or other instruments for the payment of money delivered to the Escrow Agent for the Escrow Account and deposit said checks or instruments into the Escrow Account, and (ii) disburse or refrain from disbursing the Escrow Funds as stated herein, provided that the checks or instruments received by the Escrow Agent have been collected and are available for withdrawal.

4.    <u>Escrow Account Statements and Information.</u> The Escrow Agent agrees to send to the Buyer and/or the Seller a copy of the Escrow Account periodic statement, upon request in accordance with the Escrow Agent's regular practices for providing account statements to its

non-escrow clients and to also provide the Buyer and/or Seller, or their designee, upon request other deposit account information, including Account balances, by telephone or by computer communication, to the extent practicable. The Buyer and Seller agree to complete and sign all forms or agreements required by the Escrow Agent for that purpose. The Buyer and Seller each consents to the Escrow Agent's release of such Account information to any of the individuals designated by Buyer or Seller, which designation has been signed in accordance with Section 3(a) by any of the persons in Schedule B. Further, the Buyer and Seller have an option to receive e-mail notification of incoming and outgoing wire transfers. If this e-mail notification service is requested and subsequently approved by the Escrow Agent, both Buyer and Seller agree to provide a valid e-mail address and other information necessary to set-up this service and sign all forms and agreements required for such service. The Buyer and Seller each consent to the Escrow Agent's release of wire transfer information to the designated e-mail address(es). The Escrow Agent's liability for failure to comply with this section shall not exceed the cost of providing such information.

5.    Resignation and Termination of the Escrow Agent.  The Escrow Agent may resign at any time by giving thirty (30) days' prior written notice of such resignation to Seller and Buyer. Upon providing such notice, the Escrow Agent shall have no further obligation hereunder except to hold the Escrow Funds that it has received as of the date on which it provided the notice of resignation as depository. In such event, the Escrow Agent shall not take any action until Seller and Buyer jointly designates a banking corporation, trust company, attorney or other person as successor escrow agent. Upon receipt of such written instructions signed by Seller and Buyer, the Escrow Agent shall promptly deliver the Escrow Funds, net of any outstanding charges, to such successor escrow agent and shall thereafter have no further obligations hereunder. If such instructions are not received within thirty (30) days following the effective date of such resignation, then the Escrow Agent may deposit the Escrow Funds and any other amounts held by it pursuant to this Agreement with a clerk of a court of competent jurisdiction pending the appointment of a successor escrow agent. In either case provided for in this section, the Escrow Agent shall be relieved of all further obligations and released from all liability thereafter arising with respect to the Escrow Funds.

6.    Termination.  Seller and Buyer may terminate the appointment of the Escrow Agent hereunder upon a joint written notice to Escrow Agent specifying the date upon which such termination shall take effect. In the event of such termination, Seller and Buyer shall, within thirty (30) days of such notice, jointly appoint a successor escrow agent and the Escrow Agent shall, upon receipt of written instructions signed by both Seller and Buyer, turn over to such successor escrow agent all of the Escrow Funds; provided, however, that if Seller and Buyer fail to appoint a successor escrow agent within such thirty (30)-day period, such termination notice shall be null and void and the Escrow Agent shall continue to be bound by all of the provisions hereof. Upon receipt of the Escrow Funds, the successor escrow agent shall become the Escrow Agent hereunder and shall be bound by all of the provisions hereof and the Escrow Agent shall be relieved of all further obligations and released from all liability thereafter arising with respect to the Escrow Funds. Notwithstanding anything contained herein, the Escrow Account shall be terminated upon joint notice from the Buyer and Seller instructing Escrow Agent to close the account or upon the full disbursement of the Escrow Funds as provided herein.

4

7.    Investment. All Escrow Funds received by the Escrow Agent shall be held only in non-interest bearing bank accounts at Escrow Agent.

8.    Compensation. The Escrow Agent shall be entitled, for the duties to be performed by it hereunder, to a fee of $2,000.00, which fee shall be paid by Seller and Buyer upon the signing of this Agreement. In addition, Seller and Buyer shall be obligated to reimburse Escrow Agent for all fees, costs and expenses incurred or that become due in connection with this Agreement or the Escrow Account, including reasonable attorney's fees. Neither the modification, cancellation, termination or rescission of this Agreement nor the resignation or termination of the Escrow Agent shall affect the right of the Escrow Agent to retain the amount of any fee which has been paid, or to be reimbursed or paid any amount which has been incurred or becomes due, prior to the effective date of any such modification, cancellation, termination, resignation or rescission. To the extent the Escrow Agent has incurred any such expenses, or any such fee becomes due, prior to any closing, the Escrow Agent shall advise the Buyer and Seller and the Buyer and Seller shall direct all such amounts to be paid directly at any such closing.

9.    Notices. All notices, requests, demands and other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given if sent by hand-delivery, by facsimile followed by first-class mail, by nationally recognized overnight courier service or by prepaid registered or certified mail, return receipt requested, to the addresses set forth below.

      If to Seller:

             Doral Financial Corporation
             999 Ponce de Leon Blvd.
             Suite 730
             Coral Gables, FL 33134
             Attention: Enrique Ubarri, General Counsel
             enrique.ubarri@dfcmain.com

             With a copy to:

             Ropes & Gray LLP
             Prudential Tower
             800 Boylston Street
             Boston, MA 02199-3600
             Attention: James A. Wright III
             james.wright@ropesgray.com

      If to Buyer:

             Greengift Capital Corp.
             Attn: Armando Jiménez Seda
             Corporate Center Bldg.

Suite 601
#33 Resolución Street
San Juan, PR 00920
Electronic Mail: armando.jimenez@jsyalaw.com

With a copy to:

Pedro Lopez Adames
Jiménez Seda & Archilla, PSC.
Corporate Center Bldg.
Suite 601
#33 Resolución Street
San Juan, PR 00920
Electronic Mail: pedro.lopez@jsyalaw.com

If to Escrow Agent:

Signature Bank
565 Fifth Avenue, 12th Floor
New York, New York 10017
Attention: Thomas Kasulka, Group Director and Senior Vice President
Fax No.: (646) 822-1833

10.    General.

(a)    This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York applicable to agreements made and to be entirely performed within such State, without regard to choice of law principles, and any action brought hereunder shall be brought in the courts of the State of New York, located in the County of New York. Each party hereto irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consents to service of process by mail or in any manner permitted by applicable law and consents to the jurisdiction of said courts. EACH OF THE PARTIES HERETO HEREBY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. Each party hereto consents to the jurisdiction of the Bankruptcy Court with respect to this Agreement.

(b)    This Agreement sets forth the entire agreement and understanding of the parties in respect to the matters contained herein and supersedes all prior agreements, arrangements and understandings relating thereto.

(c)    All of the terms and conditions of this Agreement shall be binding upon, and inure to the benefit of and be enforceable by, the parties hereto, as well as their respective successors and assigns.

6

(d)    This Agreement may be amended, modified, superseded or canceled, and any of the terms or conditions hereof may be waived, only by a written instrument executed by each party hereto or, in the case of a waiver, by the party waiving compliance. The failure of any party at any time or times to require performance of any provision hereof shall in no manner affect its right at a later time to enforce the same. No waiver of any party of any condition, or of the breach of any term contained in this Agreement, whether by conduct or otherwise, in any one or more instances shall be deemed to be or construed as a further or continuing waiver of any such condition or breach or a waiver of any other condition or of the breach of any other term of this Agreement. No party may assign any rights, duties or obligations hereunder unless all other parties have given their prior written consent.

(e)    If any provision included in this Agreement proves to be invalid or unenforceable, it shall not affect the validity of the remaining provisions.

(f)    This Agreement and any modification or amendment of this Agreement may be executed in several counterparts or by separate instruments and all of such counterparts and instruments shall constitute one agreement, binding on all of the parties hereto.

11.    Form of Signature. The parties hereto agree to accept a facsimile transmission copy of their respective actual signatures as evidence of their actual signatures to this Agreement and any modification or amendment of this Agreement; *provided, however,* that each party who produces a facsimile signature agrees, by the express terms hereof, to place, promptly after transmission of his or her signature by fax, a true and correct original copy of his or her signature in overnight mail to the address of the other party.

12.    No Third-Party Beneficiaries. This Agreement is solely for the benefit of the parties and their respective successors and permitted assigns, and no other person has any right, benefit, priority or interest under or because of the existence of this Agreement.

     **IN WITNESS WHEREOF**, the parties have duly executed this Agreement as of the date first set forth above.

**GREENGIFT CAPITAL CORP.**

By: _____

    Name: *Alexandro Jimenez*
    Title: *President*

**DORAL FINANCIAL CORPORATION**


By: _____

    Name:
    Title:


**SIGNATURE BANK**


By: _____

    Name:
    Title:


By: _____

    Name:
    Title:

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement as of the date first set forth above.

**GREENGIFT CAPITAL CORP.**

By: _____
      Name:
      Title:

**DORAL FINANCIAL CORPORATION**

By: _____
      Name: CAROL FLATON
      Title: CRO

**SIGNATURE BANK**

By: _____
      Name:
      Title:

By: _____
      Name:
      Title:

**IN WITNESS WHEREOF**, the parties have duly executed this Agreement as of the date first set forth above.

**GREENGIFT CAPITAL CORP.**

By: _____
       Name:
       Title:

**DORAL FINANCIAL CORPORATION**

By: _____
       Name:
       Title:

**SIGNATURE BANK**

By: _____
       Name: ROBERT BLOCH
       Title: GROUP DIRECTOR & SVP

By: _____
       Name: CRAIG STOLOW
       Title: ASSOCIATE GROUP DIRECTOR & VP

8

## Schedule A

### ASSETS

|    | Equity Loan # | Doral Loan # |
|----|---------------|--------------|
| 1  | 600107        | 86398        |
| 2  | 600114        | 207981       |
| 3  | 600116        | 247254       |
| 4  | 600124        | 20000895     |
| 5  | 600126        | 30000586     |
| 6  | 600147        | 30073398     |
| 7  | 600157        | 50012038     |
| 8  | 600163        | 50026699     |
| 9  | 600166        | 50028999     |
| 10 | 600170        | 50031654     |
| 11 | 600177        | 50042423     |
| 12 | 600186        | 50046610     |
| 13 | 600193        | 70004782     |
| 14 | 600194        | 70008465     |
| 15 | 600195        | 70008613     |
| 16 | 600214        | 70028275     |
| 17 | 600216        | 70028549     |
| 18 | 600218        | 70029248     |
| 19 | 600230        | 80008996     |
| 20 | 600253        | 80022734     |
| 21 | 600258        | 700051701    |
| 22 | 600259        | 700051705    |
| 23 | 600261        | 1000000008   |
| 24 | 600262        | 1000000009   |
| 25 | 600271        | 3002001925   |
| 26 | 600273        | 3002002053   |
| 27 | 600278        | 9100000381   |
| 28 | 600291        | 9500000257   |
| 29 | 600293        | 9500000379   |
| 30 | #N/A          | 50033340     |
| 31 | #N/A          | 50045140     |
| 32 | #N/A          | 50051377     |

## Schedule B

The Escrow Agent is authorized to accept instructions signed or believed by the Escrow Agent to be signed by any one of the following on behalf of Buyer and Seller.

GREENGIFT CAPITAL CORP.

Name _____          True Signature _____

DORAL FINANCIAL CORPORATION

Name                                   True Signature

Enrique R. Ubarri                      _____

Carol Flaton                           _____

## **Schedule B**

The Escrow Agent is authorized to accept instructions signed or believed by the Escrow Agent to be signed by any one of the following on behalf of Buyer and Seller.

GREENGIFT CAPITAL CORP.

<u>Name</u>                                                                  <u>True Signature</u>

_____                        _____

_____                        _____

DORAL FINANCIAL CORPORATION

<u>Name</u>                                                                  True Signature

Enrique R. Ubarri                                          _____

Carol Flaton                                                  _____

**<u>EXHIBIT B</u>**

**Martinez Declaration**

ROPES & GRAY LLP
Mark I. Bane
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile:  (212) 596-9090

-and-

James A. Wright III
Meredith S. Tinkham (*pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile:  (617) 951-7050

*Counsel to the Debtors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
In re                                   :     Chapter 11
                                        :
Doral Financial Corporation, *et al.*,[1]  :     Case No. 15-10573 (SCC)
                                        :
                      Debtors.          :     Jointly Administered
-------------------------------------------------x

## DECLARATION OF SCOTT MARTINEZ
## IN SUPPORT OF SALE OF DE MINIMIS MORTGAGE ASSETS

  I, Scott Martinez, being duly sworn according to law, state the following under penalty of

perjury:

  1.  I am an employee and director of Zolfo Cooper, LLC, the direct parent of Zolfo

Cooper Management, LLC, a New Jersey limited liability company (collectively, "Zolfo

Cooper").  The information included in this declaration (the "Declaration") concerning the

Debtor is based upon my personal knowledge, information supplied to me by members of the

---

[1] The last four digits of the taxpayer identification number of the debtors are: Doral Financial Corporation (2162); Doral
Properties, Inc. (2283).

Debtor's management or its professionals, my review of relevant documents, or my opinion based upon my personal experience and knowledge of the Debtor's operations and financial condition.

2.      This Declaration is being submitted in connection with the proposed sale of certain *de minimis* mortgage loan and real estate owned assets (collectively, the "De Minimis Mortgage Assets") to Greengift Capital Corp. (the "Purchaser") pursuant to the Mortgage Loan Purchase Agreement (the "De Minimis Mortgage Asset APA"), dated as of February 17, 2016, by and between the Debtor and Purchaser.

3.      Zolfo Cooper solicited bids from potentially interested parties on the Debtor's behalf. Purchaser's bid was the highest and best offer received for the De Minimis Mortgage Assets.

4.      Based on this process, I believe the Purchase Price agreed to in the De Minimis Mortgage Asset APA represents the highest and best price available for the De Minimis Mortgage Assets.  Moreover, the sale process for the De Minimis Mortgage Assets was conducted in good faith and the De Minimis Mortgage Asset APA was negotiated at arms' length and is not the product of collusion.

5.      All parties that have expressed interest in purchasing the De Minimis Mortgage Assets will receive a notice of the proposed sale.

6.      In the best of my judgment, I believe that the sale of the De Minimis Mortgage Assets to Purchaser pursuant to the De Minimis Mortgage Asset APA is in the best interest of the Debtor's estate and will yield the greatest recovery for the Debtor's creditors.

Error! Unknown document property name.

7.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 19, 2016

_____
Scott Martinez

Error! Unknown document property name.