WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020-1095
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Brian D. Pfeiffer
Michele J. Meises

*Attorneys for the Doral Financial
Creditors' Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
| In re | : | Chapter 11 |
| | : | |
| Doral Financial Corporation | : | Case No. 15-10573 (SCC) |
| | : | |
| Debtor. | : | |
-------------------------------------------------------x

**DORAL FINANCIAL CREDITORS' TRUST'S**
**THIRD SEMI-ANNUAL STATUS REPORT FOR THE PERIOD**
**FROM OCTOBER 31, 2017 THROUGH APRIL 30, 2018**

# DORAL FINANCIAL CREDITORS' TRUST

## THIRD SEMI-ANNUAL STATUS REPORT FOR THE PERIOD FROM OCTOBER 31, 2017 THROUGH APRIL 30, 2018

**Background**

The Doral Financial Creditors' Trust (the "Trust") is a Delaware statutory trust that was formed for the benefit of the creditors of Doral Financial Corporation ("DFC" or the "Debtor"). On March 11, 2015, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). On August 10, 2016, the Bankruptcy Court entered an order confirming the *Amended Plan of Reorganization Proposed by Doral Financial Company and the Official Committee of Unsecured Creditors of Doral Financial Corporation* (the "Plan") which became effective on October 28, 2016 (the "Effective Date").

On the Effective Date, Drivetrain, LLC was appointed as the trustee (the "Trustee") of the Trust to liquidate the assets of the Trust and administer the claims filed against the Debtor. Also on the Effective Date, substantially all of the assets of the Debtor vested in the Trust pursuant to the Plan, including various causes of action (the "Causes of Action"), interest in and proceeds from a loan portfolio (the "I/O Strips"), 100% of the equity of the reorganized Doral Financial Corporation which holds certain Puerto Rican tax assets, and other miscellaneous assets (collectively, the "Trust Assets"). The Trust Assets included $5.0 million in cash earmarked to fund the startup and operational costs of the Trust.

On the Effective Date, the Trustee allowed certain claims against the Debtor (the "Allowed Claims"), the holders of which received a distribution of cash and interests in the Trust (the "Interests"). The Trustee has reserved cash and Interests on account of the remaining claims filed against the Debtor (the "Disputed Claims").

The Trustee, for U.S. federal income tax purposes, made an election pursuant to Treasury Regulation section 1.468B-9 to treat the cash and Trust Interests reserved for Disputed Claims (the "Disputed Claims Reserves") as a disputed ownership fund (the "DOF") within the meaning of that section. As a separate taxable entity, the Trust will allocate taxable income or loss to the DOF, with respect to any given taxable year for which there are Disputed Claims Reserves. As Disputed Claims are resolved, the Trustee will distribute assets from the DOF to the Trust as, when, and to the extent, such Disputed Claims either became allowed or are otherwise resolved.

The Plan provides that, for federal income tax purposes, the Trust was deemed to be formed in two steps. The contribution by the Debtor of the Trust Assets was treated first as a deemed transfer of the Trust Assets to the holders of Allowed Claims, and to the DOF who is the beneficial holder of the Disputed Claims Reserves (collectively, the "Beneficiaries"). This was followed by a deemed transfer by each Beneficiary of its interest in the Trust Assets to the Trust, in exchange for Interests. The Beneficiaries are treated as the grantors of the Trust and the Trustee will file tax returns for the Trust as a "grantor trust" pursuant to Section 1.671-4(a) of the U.S. Treasury Regulations. The Trustee will also file tax returns for the DOF. For the year-ended

December 31, 2017, the DOF had a tax liability of approximately $154k. The Trust paid estimated taxes of $100k to the IRS in December of 2017. An additional $50k of estimated tax was remitted in January of 2018 and $4k was remitted in April of 2018. The Trust also paid estimated taxes for 2018 of $370k to the IRS in April of 2018.

The Trust is organized and established as a trust, among other things, to (i) administer the Trust Assets for the benefit of the Beneficiaries, (ii) review, reconcile, and where appropriate, object to, any Disputed Claims, (iii) prosecute and settle the Causes of Action, (iv) make any distributions, as provided for under the Trust Agreement (the "Agreement") and the Plan, and (v) liquidate the Trust Assets. All costs, expenses, and obligations incurred by the Trust in administering the Plan and performing the Agreement are to be paid from the Trust Assets.

The Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation section 301.7701-4(d). The primary purpose of the Trust is to resolve any outstanding claims, liquidate the Trust Assets, and liquidate the Trust with no objective to continue or engage in the conduct of a trade or business, and the Trust shall take no action inconsistent with such qualification except to the extent reasonably necessary to preserve or enhance the liquidation value of the Trust Assets, and consistent with the liquidating purpose of the Trust.

Pursuant to the terms of the Agreement, the Trust is managed by the Trustee and decisions by the Trustee are binding upon and conclusive to the Trust and its Beneficiaries. The Trustee performs its duty as set forth in the Agreement which became effective on the Effective Date of the Plan. The Trustee has been duly appointed as a representative of the Debtor's estate pursuant to sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code and the Plan. The Trustee is responsible for establishing cash reserves to fund the ongoing operations of the Trust and for paying costs and expenses incurred by the Trust. Such cash reserves were funded from the initial funding of $5.0 million in cash and are expected to be further replenished by cash received by the Trust, including any proceeds from the Causes of Action, the liquidation of any other Trust Asset, and any cash in excess of the amount reserved for the Disputed Claims.

After establishing adequate cash reserves, the Trustee may make distributions to the Beneficiaries ("Distributions") from time to time in accordance with the terms of the Agreement and the Plan.

The Trust will be dissolved no later than five years from the Effective Date; provided, however, that the Bankruptcy Court, upon motion by a party in interest, on notice with an opportunity for a hearing, may extend the term of the Trust for a finite period if (i) such extension is necessary to the purpose of the Trust, (ii) the Trustee receives an opinion of counsel or a ruling from the Internal Revenue Service stating that such extension would not adversely affect the status of the Trust as a liquidating trust for U.S. federal income tax purposes, and (iii) such extension is obtained within the six month period prior to the Trust's fifth anniversary or the end of the immediately preceding extension period, as applicable.

Upon dissolution of the Trust, any remaining Trust Assets, with the exception of the Causes of Action, will be distributed to the Beneficiaries in accordance with the Plan and Article 5 of the Agreement, provided that de minimis amounts (less than $10,000) will be payable to charity.

After the termination of the Trust and for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until the Trustee's duties have been fully performed. Prior to the final distribution of all of the remaining Trust Assets, the Trustee shall be entitled to reserve from such assets any and all amounts required to provide for the Trustee's own compensation, costs and expenses in accordance with the Agreement until such time as the winding up of the Trust is completed.

**Current Activities**

The following is a summary of certain material developments regarding the Trust for the period October 31, 2017 through April 30, 2018:[1]

A. Distributions

- On October 20, 2017, the Creditors' Trustee announced that the Trust would make an aggregate cash distribution of $5.0 million to holders of Interests on November 16, 2017. Of the $5.0 million declared distribution amount, $1,329,627 was held in reserve for the benefit of the holders of Disputed Claims.

- On April 16, 2018, the Creditors' Trustee announced that the Trust would make an aggregate cash distribution of $11.0 million to holders of Interests on April 26, 2018. Of the $11.0 million declared distribution amount, $2,102,727 was held in reserve for the benefit of the holders of Disputed Claims.

B. Claim Reconciliation

- After a Disputed Claim becomes an Allowed Claim, the holder of such Allowed Claim receives all payments and distributions to which would previously have been made to such holder if it were a holder of an Allowed Claim at the Effective Date.[2] From October 31, 2017 through April 30, 2018, the Trust resolved 33 Disputed Claims and issued Subsequently Allowed Claims Distributions totaling an aggregate of $1,782,069. There were excess reserves related to Disputed Claims totaling an aggregate of $4,828,851. As of April 30, 2018 the Trust held reserves of $17,648,884 for the remaining Disputed Claims.

- The Disputed Claims resolved in April 2018 received their Subsequently Allowed Claims Distribution on May 15, 2018 in the amount of $13,194.

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Plan. A copy of the Plan can be found on the Bankruptcy Court's docket at docket entry number 632, or at http://cases.gcginc.com/dor/key.php.
[2] With respect to when a Disputed Claim becomes an Allowed Claim, the Trust has scheduled distributions to Subsequently Allowed Claims on or about the 15th of every month.

3

- After resolution of the Disputed Claims discussed above, and after the May 15, 2018 Distribution, there are 28 Disputed Claims that remain unresolved, and the Trust is holding reserves equal to $17,102.386 with respect to such Disputed Claims.

C. Resolved Affirmative Litigation Claims

- In December 2017, the Creditors' Trustee resolved the Trust's claim against the estate of debtor Mario Samuel Levis, a chapter 11 debtor in a bankruptcy case pending in the U.S. Bankruptcy Court for the District of Puerto Rico, in exchange for a cash payment of $1.8 million.

- In February 2018, the Creditors' Trustee resolved the Trust's preference claim against a prepetition professional for DFC, in exchange for a cash payment of $985,000.

- In March 2018, the Creditors' Trustee received the proceeds of a mutually acceptable pre-suit settlement with a third party on a confidential basis.

D. DFC Tax Assets

- During the period from May 1, 2017 to present, the Creditors' Trustee continued to evaluate the tax-related assets and claims held by DFC, including with respect to the impact of the bankruptcy case commenced by the Commonwealth of Puerto Rico under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act on such assets and claims. The Trustee is serving on the Official Committee of Unsecured Creditors in this Title III bankruptcy case and has filed a claim on behalf of DFC.

- In July 2017, the Trust received $939,817 in tax refunds from the Internal Revenue Service (the "IRS"). The Creditor's Trustee continues to review the circumstances surrounding these tax refunds and has engaged in discussions with the IRS regarding the same.

**Pending Affirmative Causes of Action**

Pursuant to the Plan, the Trust was vested with all claims and Causes of Action related to the Debtor. The following describes certain potentially material Causes of Action of the Trust that remain outstanding.

- FirstBank Litigation - the Trust is the successor to claims filed by DFC against FirstBank Puerto Rico ("FirstBank") in the Superior Court of San Juan (Case No. KAC 2009-1321 (803)). DFC's complaint alleges damage for an unquantified number of millions of dollars resulting from, among other things, tortious interference, contract to the detriment of a third party, unfair competition, and damages under Article 1802 of the Puerto Rico Civil Code relating to FirstBank's employment of a former DFC employee, Calixto García-Vélez. DFC has alleged that FirstBank hired Mr. García-Vélez in contravention of the non-compete and confidentiality clauses of his employment agreement with DFC. There has been discovery exchanged in the FirstBank litigation. DFC's claims against First Bank remain pending.

- Professional Integrated Services Corp. Litigation - the Trust is the successor to certain counterclaims filed by DFC in a litigation pending in the Puerto Rico Court of First Instance

4

(Case No. KDP 2010-1693 (806)). The plaintiffs in that suit filed claims against DFC (among others) for damages for breach of contract and tort. The claims against DFC were subsequently dismissed. The only matter remaining pending in the litigation is DFC's counter-claim against one of the plaintiffs, Lesbia Blanco, for violation of a contract with DFC. DFC has alleged damages of $1.4 million. The matter remains pending and trial is to be scheduled.

➢ Inversiones Cocoher, S.E. Litigation - the Trust is the successor to certain counterclaims filed by DFC in a litigation pending in the Puerto Rico Court of First Instance (Case No. KAC 2013-0560 (806)). The plaintiffs in that suit filed claims against DFC (among others) for damages for breach of contract and tort. The Creditors' Trust filed a motion of reference requesting the court to allow the voluntary dismissal of the case without prejudice in order to continue the causes of action in the United States Bankruptcy Court for the Southern District of New York.

**Financial Summary**

The following activity has occurred at the Trust for the 6 months ended April 30, 2018:

|  | Cash |
|---|---|
| Balance at October 31, 2017 | $ 34,577,612 |
| Additions | 12,371,343 |
| Investment Income [a] | 111,021 |
| Distributions [b] | (14,349,715) |
| Operating Costs [c] | (5,349,815) |
| Balance at April 30, 2018 | $27,360,446 |

[a] Investment income consists of interest received on account of (i) DOF accounts of $63,100, (ii) allowed claims account of $7, and (iii) operating account of $47,914.
[b] Distributions consist of (i) an Allowed Claims distribution of $3,670,373 on November 16, 2017, (ii) an Allowed Claims distribution of $8,897,273 on April 26, 2018, (iii) and a Subsequently Allowed Claims distribution for the six months from November 1, 2017 to April 30, 2018 of $1,782,069.
[c] Operating costs consist of payments made on account of (i) administrative expenses of $1,150,368, (ii) non-legal professional expenses of $13,000, and (iii) legal expenses of $4,186,447.[3]

---

[3] Legal expenses include payments to counsel retained on a contingency basis upon resolution of certain of the affirmative Causes of Action.

Dated: May 24, 2018

                                            Doral Financial Creditors' Trust
                                            By: Drivetrain, LLC

                                            By: _____
                                            Alan J. Carr
                                            Authorized Representative
                                            630 Third Avenue, 21st Floor
                                            New York, NY 10017